Exhibit A

*TITLE COURT*

Recording Requested By: HomeComings Financial Network, Inc.

*NETWORK, INC.*

*NETWORK INC.*

Return To:   HOMECOMINGS FINANCIAL NETWORK, INC
ONE MERIDIAN CROSSING, STE 100
MINNEAPOLIS, MN 55423
Loan Number: 041-488187-0

Prepared By:   HomeComings Financial Network
620 Newport Center Drive, Suite
Newport Beach, CA 92660

*2211839*

Ventura, County Recorder
RICHARD D. DEAN
DOC- 2002-0260124-00
Check Number  120853
REQD BY TITLE COURT
Thursday, OCT 24, 2002 11:51:00
Ttl Pd   $61.00      Nbr-0000908153
MAA/C3/1-19

————[Space Above This Line For Recording Data]————

# DEED OF TRUST

MIN 100062604148818703

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   OCTOBER 11TH, 2002
together with all Riders to this document.
**(B) "Borrower"** is
PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is   HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE

CALIFORNIA-Single Family-**Fannie Mae/Freddie Mac** UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0005)
Page 1 of 15          Initials
VMP MORTGAGE FORMS  (800)521-7291

Lender's address is   620 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660
**(D) "Trustee"** is  AMERICAN TITLE

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated OCTOBER 11TH, 2002
The Note states that Borrower owes Lender   THREE HUNDRED THOUSAND SEVEN HUNDRED AND NO/100                                                                                                 Dollars
(U.S. $   300,700.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than        NOVEMBER 1ST, 2009        .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                                    of  VENTURA                                                 :
     [Type of Recording Jurisdiction]                                    [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number  169-0-263-245                        which currently has the address of
6393 CALLE BODEGA                                                                ,                          [Street]
CAMARILLO                                                 [City], California          93012     [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

MFCA7770 (10/00)   041-488187-0
  -6A(CA) (0005                              Page 3 of 15          Initials       Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or **(d)** Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (b) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be



in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable



attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: 

Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.



**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____            _____ (Seal)
                                     PETER ZEPPEIRO            -Borrower


_____            _____ (Seal)
                                                              -Borrower


_____ (Seal)     _____ (Seal)
                -Borrower                                     -Borrower


_____ (Seal)     _____ (Seal)
                -Borrower                                     -Borrower


_____ (Seal)     _____ (Seal)
                -Borrower                                     -Borrower

State of California
County of *Ventura*

}ss.

On *October 15, 2002* 2002 before me, *Benita A. Colitti, Notary Public*

personally appeared

PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



BENITA A. COLITTI
COMM. # 1318973
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. SEPT. 24, 2005

*Benita A. Colitti* _____ (Seal)

# BALLOON RIDER
## (CONDITIONAL RIGHT TO REFINANCE)

THIS BALLOON RIDER is made this   11TH        day of OCTOBER, 2002        ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to
secure Borrower's Note to
HOMECOMINGS FINANCIAL NETWORK, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
6393 CALLE BODEGA
CAMARILLO, CA 93012

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand Lender may transfer the Note, Security Instrument, and this Rider. Lender or anyone
who takes the Note, the Security Instrument, and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

## 1. CONDITIONAL RIGHT TO REFINANCE

At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I will be able to
obtain a new loan ("New Loan") with a new Maturity Date of   NOVEMBER 1ST, 2032        ,
and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if
all the conditions provided in Section 2 and 5 below are met (the "Conditional Refinancing Option"). If
those conditions are not met, I understand that the Note Holder is under no obligation to refinance or
modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own
resources or find a lender willing to lend me the money to repay the Note.

## 2. CONDITIONS TO OPTION

If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met
as of the Maturity Date. These conditions are: (a) I must still be the owner of the property subject to the

---

MULTISTATE BALLOON RIDER - Single Family - Fannie Mae Uniform Instrument
Amended for California            MFCA8754 - (12/01) / 041-488187-0

VMP-872R(CA) (0109)

Page 1 of 3                Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Form 3180 1/01 (rev. 9/01)

Security Instrument (the "Property"); (b) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (c) the New Note Rate cannot be more than five percentage points above the Note Rate; and (d) I must make a written request to the Note Holder as provided in Section 5 below.

## 3. CALCULATING THE NEW NOTE RATE

The New Note Rate will be a fixed rate of interest equal to Fannie Mae's required net yield for 30-year fixed-rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

## 4. CALCULATING THE NEW PAYMENT AMOUNT

Provided the New Note Rate as calculated in Section 3 above is not greater than five percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

## 5. EXERCISING THE CONDITIONAL REFINANCING OPTION

The Note Holder will notify me at least 90 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title, and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon Fannie Mae's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and a date,

 

time, and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
PETER ZEPPEIRO                    -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                              -Borrower

_____ (Seal)          _____ (Seal)
                                  -Borrower                              -Borrower

*[Sign Original Only]*

MFCA8754 · (12/01) · 041 488187-0
-872R(CA) (0109)                    Page 3 of 3

Form 3180 1/01
(rev. 9/01)

Escrow No. 75709 MCW
Title Order No. 02211839

# EXHIBIT ONE

PARCEL 1:

That portion of Lot 1037 of Tract No. 2381-7, in the City of Camarillo, County of Ventura, State of California, as per Map recorded in Book 75, Pages 86 to 91 inclusive, of Maps, in the Office of the County Recorder of said County, shown as Lot 1038-A on that certain Lot Line Adjustment recorded November 30, 1978 as File No. 131993, in Book 5271, Page 941 to 947, inclusive of Official Records.

Except all oil, mineral, gas and other hydrocarbon substances below a depth of 500 feet below the surface or subsurface within said 500 feet.

PARCEL 2:

Those portions of Lot 36 and 65 of the Rancho Calleguas, in the City of Camarillo, COunty of Ventura, State of California, shown on the Map recorded in Book 17, Page 16 of Miscellaneous Records, in the Office of the County Recorder of said COunty, described as follows:

Beginning at the intersection of the 33rd course recited in the Deed of Trust recorded May 17, 1966 in Book 2988, Page 421 of Official Records, in the Office of the County Recorder of said County with the Southeasterly boundary of the 50.00 feet wide strip described in the Deed recorded March 15, 1916, in Book 150, Page 43 of Deeds, records of said County; thence along the line which passes through said intersection and is radial to the portion of the relocated centerline of Santa Rosa Road shown as a curve having a radius of 8,000.00 feet and a length of 211.46 feet on the Map of Tract No. 2381-7, in said City, County and State, recorded in Book 75, Pages 86 to 91 inclusive of Miscellaneous Records.

1st: North 35°19'19" West 51.42 feet to a curve having a radius of 7,949.00 feet, which is concave Southeasterly and is concentric with and distant 51.00 feet Southeasterly, measured radially from said curve having a radius of 6,000.00 feet; thence Southwesterly along said curve,

2nd: Through a central angle of 00°35'15" an arc distance of 81.51 feet; thence tangent to said last mentioned curve and along a line parallels with and distant Southeasterly 51.00 feet, measured at right angles from said relocated centerline of Santa Rosa Road,

3rd: South 54°05'26" West 234.97 feet to said Southeasterly boundary of the 50.00 foot wide strip described in the Deed recorded March 15, 1916 in Book 150, Page 43 of Deeds; thence along said Southeasterly boundary,

4th: North 63°24'34" East 320.23 feet to the Point of Beginning.

Exhibit B

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING

[AND WHEN RECORDED MAIL TO]
Green Tree Servicing LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

GreenTree # 62053729
GMAC # 414881870
FNMA # 1683604501
Effective Date 02/01/2013

```
20130530-00097591-0 1/1
Ventura County Clerk and Recorder
MARK A. LUNN
05/30/2013 01:10:00 PM
721576 $25.00 CE
```

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned,**GMAC MORTGAGE, LLC, SUCCESSOR BY MERGER TO GMAC MORTGAGE CORPORATION, WHOSE ADDRESS IS 1100 VIRGINIA DR, FORT WASHINGTON, PA, 19034-3200, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **GREEN TREE SERVICING LLC, WHOSE ADDRESS IS 7360 SOUTH KYRENE RD, T314, TEMPE, AZ 85283 (800)643-0202, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **PETER ZEPPEIRO** and recorded on 10/24/2002 as Instrument # 2002-0260124-00, in Book , Page in the office of the VENTURA County Recorder, CA.

Property is commonly known as: 6393 CALLE BODEGA, CAMARILLO, CA 93012.

Dated on ___5__/__16__/2013 (MM/DD/YYYY)
GMAC MORTGAGE, LLC, SUCCESSOR BY MERGER TO GMAC MORTGAGE CORPORATION, by GREEN TREE SERVICING LLC, its Attorney-in-Fact

By: _Jessica Sheetz_____

Jessica Sheetz
**VICE PRESIDENT**

## ACKNOWLEDGEMENT

STATE OF FLORIDA
COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on ___5__/__16__/2013 (MM/DD/YYYY), by Jessica Sheetz as VICE PRESIDENT for GREEN TREE SERVICING LLC as Attorney-in-Fact for GMAC MORTGAGE, LLC, SUCCESSOR BY MERGER TO GMAC MORTGAGE CORPORATION, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Nicole Baldwin_____ EE 222285
Nicole Baldwin
Notary Public - State of FLORIDA
Commission expires: 08/05/2016


Nicole Baldwin
Notary Public State of Florida
My Commission # EE 222285
Expires August 5, 2016

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
GTGMA 19838731 -@ FNMA GMAC 2013 CJ4983231   T1513050812   [C] FORM5\FRMCA1

Exhibit C

requested by title court

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

100257945

**20100428-00063990-0   1/2**
Ventura County Clerk and Recorder
James B. Becker, Assistant
04/28/2010 08:00:00 AM
410406 $21.00 ZA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. :  **GM-216815-C**      Loan No.: 0414881870

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

## IMPORTANT NOTICE
## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,
and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$15,416.55**  as of  **4/26/2010**, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things. (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact,
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
**C/O ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**(818) 260-1600 phone**

TS NO.: GM-216815-C                    LOAN NO.: 0414881870

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/11/2002** , executed by **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC. A CORPORATION**, as beneficiary, recorded **10/24/2002**, as Instrument No. **2002-0260124-00**, in Book , Page ,  of Official Records in the Office of the Recorder of **Ventura** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$300,700.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

 Installment of Principal and Interest plus impounds and/or advances which became due on 11/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

        That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  4/26/2010

                        ETS Services, LLC as Agent for Beneficiary


                        BY: _____

                        Irma Erickson
                        TRUSTEE SALE OFFICER

Exhibit D

RECORDING REQUESTED BY
ETS Services, LLC

AND WHEN RECORDED MAIL TO:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

T.S. No. GM-216815-C
Loan No. 0414881870

100257445

**20100730-00111696-0 1/2**
Ventura County Clerk and Recorder
MARK A. LUNN
07/30/2010 08:00:00 AM
436739 $21.00 ZA

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/11/2002. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR: **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**
Recorded **10/24/2002** as Instrument No. **2002-0260124-00** in Book , page  of
Official Records in the office of the Recorder of **Ventura** County, California,
Date of Sale: **8/26/2010** at **11:00 AM**
Place of Sale:       **At the main entrance to the Government Center Hall of Justice, 800 South Victoria Avenue, Ventura, California**
Property Address is purported to be:       **6393 CALLE BODEGA CAMARILLO, California 93012**

APN #:  **169-0-263-245**

The total amount secured by said instrument as of the time of initial publication of this notice is **$282,062.00**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

T.S. No. **GM-216815-C**
Loan No. **0414881870**

Date: **7/28/2010**

**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**
**Sale Line: 714-730-2727**

_____

**Christine Gomez-Schwab, TRUSTEE SALE OFFICER**

Exhibit E

reʠuested by title court

Recording requested by:

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
1241 E. Dyer Road, Suite 250
Santa Ana, CA  92705
APN 169-0-263-245

File No. 7042.29574
Property: 6393 CALLE BODEGA, CAMARILLO, CA

**20131024-00177050-0 1/4**
Ventura County Clerk and Recorder
MARK A. LUNN
10/24/2013 09:00:00 AM
764959 $34.00 VA

Title Order No. 100257445
MIN No. 100062604148818703

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

***ATTENTION RECORDER***: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

## IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION. You
may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is **$278,825.73** as of **10/22/2013**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

File No: 7042.29574
NOTICE OF DEFAULT AND ELECTION TO SELL

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Green Tree Servicing LLC**
**C/O Northwest Trustee Services, Inc.**
**1241 E. Dyer Road, Suite 250, Santa Ana, CA 92705**
**Telephone (714) 277-4888**
**Pay-Off Request Line (866) 387-NWTS**

        If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

        NOTICE IS HEREBY GIVEN:   That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/11/2002**, executed by **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as Trustor(s), to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC.**, as Beneficiary, recorded **10/24/2002**, as Instrument No. **2002-0260124**, of Official Records in the Office of the Recorder of **VENTURA** County, California, describing land therein **as more fully described in said Deed of Trust.**

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of **$300,700.00**; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The unpaid principal balance of $260,899.23 which became all due and payable on 11/01/2009, together with interest due thereon from 10/01/2009 pursuant to the terms as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents.**

**A copy of CA Civil Code Section §2923.55 or §2923.5 declaration is attached hereto and incorporated herein by reference.**

**File No: 7042.29574**
NOTICE OF DEFAULT AND ELECTION TO SELL

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  10/22/2013          **Northwest Trustee Services, Inc., as Trustee**

By:

Jerry Steinhaus, Authorized Signatory

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this notice does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

# Declaration of Mortgage Servicer Pursuant to
# Civil Code § 2923.55(c)

Borrower(s):      Zeppeiro, Peter
Property Address:      6393 CALLE BODEGA
           CAMARILLO, CA 93012
T.S. No.:      7042.29574

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐   The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

☒   Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☐   No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

☐   The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 10/11/2013

Green Tree Servicing LLC, Mortgage Servicer

By:   Gretchen Waggener
     Foreclosure Supervisor

Exhibit F

requested by title court

Recording requested by:

When recorded mail to:
**Northwest Trustee Services, Inc.**
**1241 E. Dyer Road, Suite 250**
**Santa Ana, CA 92705**

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
**20131101-00181046-0 1/1**
Ventura County Clerk and Recorder
MARK A. LUNN
11/01/2013 08:00:00 AM
767190 $25.00 CE

Space above this line for recorder's use only

| TS No. 7042.29574 | Title No. 100257445 | MIN No.100062604148818703 |
| APN 169-0-263-245 | Situs: 6393 CALLE BODEGA | Situs City: CAMARILLO |

## Rescission of Notice of Default and Election To Sell
## Under Deed of Trust

**NOTICE IS HEREBY GIVEN:** That Northwest Trustee Services, Inc. is duly appointed Trustee under the Deed of Trust executed by PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY as Trustor, in which MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC. is named as Beneficiary and AMERICAN TITLE as Trustee and recorded 10/24/2002 as instrument No. 2002-0260124, of Official Records of VENTURA County, California; describing land therein as: As more fully described in the above referenced deed of trust.

Said obligations including one note for the sum of $300,700.00

Whereas, the present Beneficiary under that certain Deed of Trust hereinabove described, hereto delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and Whereas, Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described; and Whereas, a Notice of Default was recorded on the day in the book and page set forth below:

Notice was recorded on 10/24/2013 in the office of the Recorder of VENTURA, California, as Instrument No. 20131024-00177050-0, of Official Records.

**NOW, THEREFORE, NOTICE IS HEREBY GIVEN** that the present Beneficiary, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; it being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach or default-past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right.

Remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given.

Dated: 10/31/13    **Northwest Trustee Services, Inc., as Agent for the Beneficiary**

Candice Yoo, Authorized Signatory

Exhibit G

Recording requested by:

ServiceLink / Simplifile

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
2121 Alton Parkway, Suite 110
Irvine, CA  92606

20171013-00133233-0 1/4
Ventura County Clerk and Recorder
MARK A. LUNN
10/13/2017 10:51:19 AM
1259458  $33.00  VA

Electronically Recorded in Official Records,
County of Ventura

APN 169-0-263-245

File No. 7042.29574
Property: 6393 CALLE BODEGA,
CAMARILLO, CA 93012

Title Order No. 100257445

# IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

_ATTENTION RECORDER_: THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.**  You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).  This amount is **$417,700.07 as of 10/12/2017**, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

**File No: 7042.29574**
NOTICE OF DEFAULT AND ELECTION TO SELL

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

>    **Ditech Financial LLC FKA Green Tree Servicing LLC**
>    **C/O Northwest Trustee Services, Inc.**
>    **2121 Alton Parkway, Suite 110, Irvine, CA 92606**
>    **Telephone (714) 277-4888**
>    **Pay-Off Request Line (866) 387-NWTS**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:   That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/11/2002**, executed by **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC.**, as Beneficiary, recorded **10/24/2002**, as Instrument No. **2002-0260124-00**, of Official Records in the Office of the Recorder of **VENTURA** County, California, describing land therein **as more fully described in said Deed of Trust.**

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of **$300,700.00**; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The unpaid principal balance of $263,961.55 which became all due and payable on 11/01/2009, together with interest due thereon from 10/01/2009 pursuant to the terms as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents.**

**A copy of CA Civil Code Section §2923.55 or §2923.5 declaration is attached hereto and incorporated herein by reference.**

**File No: 7042.29574**
NOTICE OF DEFAULT AND ELECTION TO SELL

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 10/12/2017          **Northwest Trustee Services, Inc., as Trustee**

**By:** _____

Candice Yoo, Authorized Signatory

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this notice does not constitute an attempt to collect a debt or to impose personal liability for such obligation. However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

## Declaration of Mortgage Servicer Pursuant to
## Civil Code § 2923.55(c)

Borrower(s):          Zeppeiro, Peter
Property Address:     6393 CALLE BODEGA
                      CAMARILLO, CA  93012
T.S. No.:             7042.29574

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares
that:

☐   The mortgage servicer has contacted the borrower pursuant to California Civil Code §
    2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower
    to avoid foreclosure".  Thirty (30) days, or more, have passed since the initial contact was
    made.

☒   Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the
    mortgage servicer has been unable to contact the borrower "to assess the borrower's financial
    situation and explore options for the borrower to avoid foreclosure".  Thirty (30) days, or more,
    have passed since these due diligence efforts were satisfied.

☐   No contact was required by the mortgage servicer because the individual(s) did not meet the
    definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

☐   The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by
    a first mortgage or first deed of trust that secures a loan, or that encumbers real property,
    described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence,
which the mortgage servicer has reviewed to substantiate the borrower's default and the right to
foreclose, including the borrower's loan status and loan information.

Dated:  10/11/2013

Green Tree Servicing LLC, Mortgage Servicer

By:  Gretchen Waggener
     Foreclosure Supervisor

Exhibit H

1   LAW OFFICES OF PATRICIA RODRIGUEZ
2   Patricia Rodriguez Esq., SBN 270639
    739 East Walnut Street, Suite 204
3   Pasadena, California 91101
    Office Phone: (626) 888-5206
4   Fax: (626) 844-6550
    prod@attorneyprod.com
5   Attorney for Plaintiff
6   PETER ZEPPEIRO

FILED
CLERK, U.S. DISTRICT COURT

JUN 20 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

7           UNITED STATES DISTRICT COURT

8           CENTRAL DISTRICT OF CALIFORNIA

9
                                          Case No. CV12-05357ABC(RZx)
10  PETER ZEPPEIRO                    )
                                      )
11              Plaintiff,            )   VERIFIED COMPLAINT FOR
                                      )
12      vs.                           )   1.   QUIET TITLE;
                                      )   2.   BREACH OF CONTRACT
13  GMAC MORTGAGE, LLC;               )   3.   VIOLATION OF CALIFORNIA
    HOMECOMINGS FINANCIAL LLC. f/k/a  )        CIVIL CODE § 2932.5;
14  HOMECOMINGS FINANCIAL             )   4.   LACK OF STANDING TO
    NETWORK, INC.; EXECUTIVE          )        FORECLOSE;
15  TRUSTEE SERVICES, LLC; FEDERAL    )   5.   VIOLATION OF 15 U.S.C. §1641(g)
    NATIONAL MORTGAGE ASSOCIATION     )        – TRUTH IN LENDING ACT
16  aka FANNIE MAE as TRUSTEE FOR     )        (TILA)
17  FIXED TO FLOATING RATE NON-       )   6.   CANCELLATION OF WRITTEN
    CUMULATIVE PREFERRED STOCK        )        INSTRUMENT [CA CIVIL CODE
18  SERIES 1; MORTGAGE ELECTRONIC     )        §3412];
19  REGISTRATION SYSTEMS, INC., aka   )   7.   VIOLATION OF BUSINESS &
    MERS; DOES 1 THROUGH 10,          )        PROFESSIONS CODE §17200 ET
20  INCLUSIVE                         )        SEQ AND CALIFORNIA PENAL
                                      )        CODE §§115.5 & 532(f)(a)(4);
21              Defendants.           )   8.   INTENTIONAL INFLICTION OF
22                                    )        EMOTIONAL DISTRESS
23                                    )
                                      )
24                                    )   DEMAND FOR JURY TRIAL
                                      )
25                                    )

26
         COMES NOW Peter Zeppeiro, (hereinafter "Plaintiff") complaining of the Defendants,
27  and each of them, as follows:
28

                                    1
                            VERIFIED COMPLAINT

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the claims of this action based on 28 U.S.C. §§1331, 1343, and 42 U.S.C. §1983 which confer original jurisdiction on federal district courts to address the deprivation of rights secured by federal law. This Court also has supplemental jurisdiction over the pendant state law claims because they form part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. §1367.

2. The Property, which is the subject of this suit, is located within the County of Ventura, State of California. Therefore, venue properly lies in this District, pursuant to 12 U.S.C. §2614 and 28 U.S.C. §1391(b).

## INTRODUCTION

3. This is an action brought by Peter Zeppeiro (hereinafter "Plaintiff") for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

4. Plaintiff disputes the title and ownership of the real property in question (hereinafter referred to as the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Home, and, thus, do not have lawful ownership or a security interest in the Home which is described in detail herein below.

5. Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the his original Promissory Note and Deed of Trust, resulting in imperfect security interests and claims.

**VERIFIED COMPLAINT**

6. Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Home. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

7. Plaintiff alleges that an actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of his rights with regard to the Home and the corresponding Promissory Note and Deed of Trust.

8. Plaintiff also seeks redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a.   The alteration and revision of the Deed of Trust and Grant Deed without the knowledge and/or consent of Plaintiff or the Notary;

    b.   An invalid and unperfected security interest in the Home hereinafter described;

    c.   An incomplete and ineffectual perfection of a security interest in the Home;

    d.   Violations of California Business and Professions Code §17200 (Unfair Business Practices) and California Penal Code §115.5; and

    e.   A void or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

**VERIFIED COMPLAINT**

## THE PARTIES

9. Plaintiff is now, and at all times relevant to this action, a resident of the County of Ventura, State of California.  Plaintiff is the borrower and obligor under the Note and/or Deed of Trust.

10. Defendant, GMAC MORTGAGE, LLC ("GMAC"), Plaintiff is informed and believes, and thereon alleges, is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 1100 Virginia Drive, Fort Washington, PA 19034. Plaintiff is further informed and believes, and thereon alleges, that GMAC is the present purported Master Servicer of the mortgage herein and/or is a purported participant in the imperfect securitization of the Note and/or the Deed of Trust dated October 11, 2002, herein (Exhibit "A"), as more particularly described in this Complaint.

11. Defendant HOMECOMINGS FINANCIAL, LLC. (hereinafter "HOMECOMINGS FINANCIAL"), formerly known as Homecomings Financial Network, Inc., Plaintiff is informed and believes, and thereon alleges is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 8400 Normandale Lake Blvd., Ste 350, Bloomington, MN 55437, and is the original lender of the Note.

12. Defendant, EXECUTIVE TRUSTEE SERVICES, LLC (hereinafter "ETS"), Plaintiff is informed and believes, and thereon alleges, is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 2255 North Ontario Street, Suite 400, Burbank, CA 91504 and is the purported Foreclosure Trustee of the mortgage herein and/or a purported participant in the imperfect securitization of the Note

VERIFIED COMPLAINT

1    and/or the Deed of Trust dated October 11, 2002, herein, as more particularly described in this

2    Complaint.

3        13. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION aka Fannie Mae

4    ("FANNIE MAE") as Trustee for Fixed to Floating Rate Non-Cumulative Preferred Stock

5    
6    Series 1 ("Series 1"), Plaintiff is informed and believes, and thereon alleges, is a national

7    banking association, doing business in the County of Ventura, State of California, whose last

8    known address of its corporate headquarters at 3900 Wisconsin Avenue, N.W. Washington,

9    D.C. 20016 and is the purported Trustee for the Trust and/or a purported participant in the

10   imperfect securitization of the Note and/or the Deed of Trust dated October 11, 2002, herein, as

11   
12   more particularly described in this Complaint.

13       14. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc. aka

14   MERS (hereinafter "MERS"), Plaintiff is informed and believe, and thereon alleges, is a

15   corporation duly organized and existing under the laws of Delaware, whose last known address

16   
17   is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org.

18   MERS is doing business in the County of Ventura, State of California.  Plaintiff is further

19   informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary

20   under the Deed of Trust herein dated October 11, 2002, and/or is a purported participant in the

21   
22   imperfect securitization of the Note and/or the Deed of Trust, as more particularly described in

23   this Complaint.

24       15. The Home commonly, known as 6393 Calle Bodega, Camarillo, County of Ventura,

25   California 93012 (the "Property" or "Home"), is further described as Assessor's Parcel Number

26   169-0-263-245. The legal description of the Home is:

27

28

Parcel 1:

"LOT 1038 OF TRACT NO. 2381-7, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 75, PAGES 86 TO 91 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN IN LOT 1038-A ON THAT CERTAIN LOT LINE ADUSTMENT RECORDED NOVEMBER 30, 1978 AS FILE NO. 131993, IN BOOK 5271, PAGE 941 TO 947, INCLUSIVE OF OFFICIAL RECORDS."

Parcel 2:

"LOT 36 AND 65 OF THE RANCHO CALLEGUAS, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, SHOWN ON THE MAP RECORDED IN BOOK 17, PAGE 16 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY..."

16. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as DOES 1 through 10, inclusive, as each fictitiously named Defendant is in some manner liable to the Plaintiff, or claims some right, title, or interest in the Home.  Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

**VERIFIED COMPLAINT**

17. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## DOCUMENTS

18. The documents pertinent to this case which have been recorded in the public record for the Home are as follows:

a.   A *Deed of Trust* dated October 11, 2002, recorded on October 24, 2002, in the Ventura County Recorder's office as Instrument No. 2002-0260124-00, referencing loan amount of $300,700.00. A true and correct copy thereof is attached hereto, marked Exhibit "A" and is incorporated herein by reference;

b.   A *Notice of Default and Election to Sell Under Deed of Trust* ("Notice of Default") recorded on April 28, 2010 in the Ventura County Recorder's Office as Instrument No. 20100428-00063990-0, referencing ETS Services, LLC ("ETS") as Trustee on behalf of the beneficiary. A true and correct copy thereof is attached hereto, marked Exhibit "B" and is incorporated herein by reference;

c.   A *Substitution of Trustee* dated April 26, 2010 and recorded on April 28, 2010, in the Ventura County Recorder's Office as Instrument No. 20100428-00063989-0. This document purports to substitute ETS as Trustee under said Deed of Trust. A true and correct copy thereof is attached hereto, marked Exhibit "C" and is incorporated herein by reference;

7

**VERIFIED COMPLAINT**

d. A ***Notice of Trustee's Sale*** recorded on July 30, 2010, in the Ventura County Recorder's Office as Instrument No. 20100730-00111696-0, indicating that a Trustee Sale will take place on August 26, 2010. The Document is signed by a purported representative of ETS and identifies ETS as a "debt collector." A true and correct copy thereof is attached hereto, marked Exhibit "D" and is incorporated herein by reference;

## FACTUAL ALLEGATIONS

19. On or about March 16, 1995, the Property was vested in Jovita Zeppeiro's ("Jovita") name as a "married woman as her sole and separate property." A true and correct copy thereof is attached hereto, marked Exhibit "E".

20. On or about September 6, 2002, incident to a loan transaction, Defendants were to deliver to escrow a Grant Deed in which Jovita, "a married woman as her sole and separate property" was to convey title to Peter Zeppeiro as "a married man as his sole and separate property." Jovita executed this Grant Deed before a notary on September 6, 2002 at Kinko's in Camarillo, California. After the Grant Deed was notarized, it was sent via FedEx to escrow. A true and correct copy thereof is attached hereto, marked Exhibit "F".

21. Subsequently, following the notarization of the Grant Deed on September 6, 2002, Plaintiff was advised by the Defendants that the Grant Deed had to be revised and that the September 6, 2002, Grant Deed would be returned to Plaintiff. Plaintiff was told that Defendants would send out *their own notary* to the Plaintiff's residence on October 15, 2002 to obtain new signatures for the documents.

22. On or about October 15, 2002, Defendants drafted a replacement Grant Deed that had vesting listed as "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants" to

8

**VERIFIED COMPLAINT**

"Peter Zeppeiro, a married man as his sole and separate property." A true and correct copy thereof is attached hereto, marked Exhibit "G." Title was *never* vested in this manner as "joint tenants" but was rather held *solely* in the name of Jovita.

23. On or about October 15, 2002, Plaintiff was advised by Defendants to sign a Trust Deed and the newly revised Grant Deed. A true and correct copy thereof is attached hereto, marked Exhibit "H" and Exhibit "G". The Trust Deed was dated October 11, 2002 and did not include a legal description for the Property. At some point after signing the Trust Deed and delivering it to the escrow company, Defendants altered the Trust Deed by adding a legal description to the document. Not only did Defendants add a legal description to the document; they added the *wrong legal description* by using the neighbor's lot number instead. This alteration to the Trust Deed was done *without the knowledge or consent* of the Plaintiff and before delivery to the Plaintiff.

24. Subsequently, the revised Grant Deed was delivered to escrow. This second and revised Grant Deed was *also altered* to reflect that the dates of notarization took place on October 11, 2002, when in fact, the notarization took place on October 15, 2002. This was intentionally altered to match the pre-dated Trust Deed, which reflected the date of October 11, 2002.  In addition to the date being altered, the notary's initials were forged as well, which allegedly and falsely confirmed that the changes were being made by the Notary. The Grant Deed was *altered without the knowledge or consent* of the Plaintiff or the Notary. This is confirmed by the Notary's sworn statement. A true and correct copy of the Notary's sworn statement is attached hereto, marked Exhibit "I" and "J".

25. As per sworn statements by the Notary, Benita A. Colitti, Commission Number 1318973, Ms. Colitti at no time, changed, authorized, or had knowledge of the changes made

9

**VERIFIED COMPLAINT**

to the Deed. In addition, per her Notary log, the signatories were not present on 11th of October; instead, they were present before her on the 15th of October. Also, Ms. Colitti confirms that she did not place her initials on the document confirming that changes were made. She further states that she does not enter dates on documents in numeric format; nor does she ever notarize post dated or ante dated documents.

26. Moreover, at some point after the close of escrow and after the recording of the October 15, 2002 altered document on October 24, 2002 and before the September 6, 2002 Grant Deed was recorded on November 12, 2002, the original September 6, 2002 Grant Deed was altered by typing "xxxxxx" across the original vesting listed the Grantee as "Peter Zeppeiro, a Married Man as His Sole and Separate Property." The vesting was changed to "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants." The Grant Deed was altered without the knowledge or consent of the Plaintiff and was recorded contrary to the direct wishes of the parties. It was previously agreed by all parties that this Grant Deed would be returned to Plaintiff and replaced in escrow by the October 15, 2002 Grant Deed.

27. On or about November 12, 2002, three weeks after the close of escrow, the altered version of the September 6, 2002 Grant Deed was recorded under Title Number 02211839 and Escrow Number 75709-MCW.

28. All three documents, mentioned above, bear the same Title Number of 02211839 and Escrow Number of 75709-MCW, thereby confirming that all three of these *forged* and *altered* documents are part of *one single transaction*.

29. The Deed of Trust in this case gives the appearance of being a certified copy of the original recorded Deed. However, the purported certification of the Deed is defective; it states only "I hereby certify that this is a true and exact copy of the Original."

- 10
VERIFIED COMPLAINT

30. In addition, the original lender for this loan was HOMECOMINGS FINANCIAL, as evidenced by the attached Deed of Trust (Exhibit "A"). The original Trustee under the Deed of Trust was AMERICAN TITLE. The original beneficiary and nominee under the Deed of Trust was MERS.

31. Plaintiff is informed and believes, and thereon alleges, that this loan was securitized, with the Note not being properly transferred to Defendant, FANNIE MAE, acting as the Trustee for the Securitized Trust.

32. Plaintiff is informed and believes, and thereon alleges, that the purchase mortgage on the Home, the debt or obligation evidenced by the Note and the Deed of Trust executed by Plaintiff in favor of the original lender, HOMECOMINGS FINANCIAL, and other Defendants, regarding the Home, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the Pooling and Servicing Agreement ("PSA") of the entities making and receiving the purported assignments to this trust.

33. Plaintiff alleges that the PSA requires that each Note or Deed of Trust had to be endorsed and assigned, respectively, to the trust and executed by multiple intervening parties before it reached the Trust. Here, neither the Note nor the Deed of Trust was assigned to the Securitized Trust by the closing date. Therefore, under the PSA, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

34. Plaintiff further alleges that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void, as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.

**VERIFIED COMPLAINT**

35. Plaintiff also alleges that the Note was secured by a Deed of Trust recorded October 24, 2002, in the Ventura County Recorder's office as Instrument No. 2002-0260124-00 (Exhibit "A"). Plaintiff alleges that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

36. Plaintiff is informed and believes, and thereon alleges that Defendant ETS is not the authorized beneficiary under the Deed of Trust.

37. Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for SERIES 1, the Note was duly endorsed, transferred and delivered to SERIES 1, including all intervening transfers. Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to SERIES 1, including all intervening assignments.

38. Plaintiff further alleges that any documents that purport to transfer any interest in the NOTE to SERIES 1 after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

39. Plaintiff is further informed and believes, and thereon alleges, that the purported assignments and transfers of the debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Home was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of the Deed of Trust does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Home.

**VERIFIED COMPLAINT**

40. Plaintiff is also informed and believes, and thereon alleges, that at all times herein mentioned, any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

41. As set forth hereinabove, Defendants, and each of them, violated the express terms of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

42. Plaintiff is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor[1] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on the Home herein.

43. Plaintiff is informed and believe, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiff further alleges, on information and belief, that the PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to SERIES 1, which Mortgage Files include the original Deeds of Trust, herein.

---

[1] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

**VERIFIED COMPLAINT**

44. Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

45. The splitting or separation of title, ownership and interest in Plaintiff's Note and Deed of Trust of which the original lender owner and beneficiary of the Deed of Trust;

46. When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale.  Therefore, "True Sales" could not and did not occur;

47. The failure to assign and transfer the beneficial interest in the Deed of Trust to FANNIE MAE in accordance with the PSA of the Defendants, as Securitization Participants;

48. The failure to endorse, assign and transfer the Note and/or mortgage to Defendant, Fannie Mae as Trustee for SERIES 1, in accordance with the PSA;

49. No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

50. Defendants, and each of them, violated the pertinent terms of the PSA.

51. Plaintiff is informed and believe, and thereon alleges, that this unlawful, improper and oppressive method of attempting to securitize the Note and SERIES 1 has caused the value of the Home to significantly decrease and has, in effect, caused Plaintiff to lose either all of or a substantial part of the equity he would have created in the Home after making payments for many years (see discussion herein below).

---

14

**VERIFIED COMPLAINT**

52. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Home; and that all Defendants are estopped and precluded from asserting an unsecured claim against the property.

## FIRST CAUSE OF ACTION:
## QUIET TITLE
## (AGAINST ALL DEFENDANTS)

53. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

54. Defendants, and each of them, claim some right, title, estate, lien or interest in or to the subject Property adverse to Plaintiff's respective interests therein, and said claim or claims constitute a cloud on Plaintiff's title thereto.

55. Plaintiff is informed and believes that due to the fact that the September 6, 2002 Deed was altered by Defendants prior to delivery to the Plaintiff and without the knowledge or consent of the Plaintiff, this renders the Deed null and void *ab initio* and without effect as a matter of law.

56. Plaintiff is informed and believes that due to the fact that the October 15, 2002 Deed was altered by Defendants prior to delivery to the Plaintiff and without the knowledge or consent of the Plaintiff, this renders the Deed null and void *ab initio* and without effect as a matter of law.  The October 15, 2002 Deed was altered by attaching a legal description to the document that was not attached at the time of signing, without the knowledge or consent of the Plaintiff.

57. Plaintiff is informed and believes that Plaintiff did not have proper vesting to the Property due to the altered and wholly void Grant Deeds. Plaintiff held no title to the Property

15

at the time the Trust Deed was effective or at any time prior to the Trust Deeds recordation due to the void Grant Deeds.  Therefore, the Trust Deed conveyed non-existent title and is void.

58. Defendants' claims are without any right whatsoever, and Defendants have no right, title, estate, lien or interest in or to the subject Property, or any part of portion thereof adverse to Plaintiff's respective interests therein or otherwise.

**SECOND CAUSE OF ACTION:**
**BREACH OF CONTRACT**
**(AGAINST HOMECOMINGS FINANCIAL and GMAC)**

59. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

60. Plaintiff is informed and believe, and thereon alleges that HOMECOMINGS FINANCIAL breached the loan agreement by securitizing the loan and bundling it in with other loans and selling the same as an investment to third party investors, who are not disclosed nor otherwise known or knowable to the Plaintiff.

61. Plaintiff is informed and believe, and thereon alleges that HOMECOMINGS FINANCIAL further breached the loan agreement by selling the Plaintiff's loan to third parties who are immune to defenses to foreclosure and other contractual rights and remedies that the Plaintiff may have against the originator of the loan and would be able to seek redress from directly.  Selling the Plaintiff's loan as an investment package, also created confusion and uncertainty as to who the actual owner of the note is and who if anyone, is able to enforce the note, and whether any the actual owner had properly designated and authorized any third party to collect and enforce the loan on its/their behalf, and thereby, severely compromised and cut-off the Plaintiff's ability to negotiate a loan modification or seek other loan default resolution directly with the party with a contractual interest in the loan.  The selling off of the Plaintiff's

loan caused a breach of the loan agreement as such selling off to unknown and undisclosed third parties, adversely affected the Plaintiff' contractual rights.   GMAC also breached the loan agreement, by enforcing a contract on behalf of those without a legal interest in the note as a security instrument and hold any interest if any, in the note as an investment only.   GMAC knew or should have known that it had no legal right to attempt to collect on a note that had been converted to an investment and retained no right of enforcement based on such conversion by the original lender, which is now a subsidiary of GMAC.

62. Plaintiff is informed and believe, and thereon alleges that as a direct and consequential result of the selling off the his loan as an investment product to third party investors, the Plaintiff has been caused to suffer economic damages, mental anguish and trauma, damage to his credit and other consequential and incidental damages proximately caused by the Defendants.

### THIRD CAUSE OF ACTION:
### LACK OF STANDING TO FORECLOSE
### (AGAINST GMAC, ETS, and MERS)

63. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

64. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Home because Defendants, and each of them, have failed to perfect any security interest in the Home.  Thus, the purported power of sale by the above-specified Defendants, and each of them, no longer applies.  Plaintiff further contends that the above specified Defendants, and each of them, do

not have the right to foreclose on the Home because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

65. Plaintiff is informed and believes and thereon alleges that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks in the middle were paid in full.

66. Plaintiffs request that this Court find that the purported power of sale contained in the Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them.  Plaintiff further requests that that any attempted sale of the Home pending this action is "unlawful and void".

## FOURTH CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA CIVIL CODE § 2932.5
## (AGAINST GMAC, MERS)

67. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

68. California Civil Code § 2932.5 provides: Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes

**VERIFIED COMPLAINT**

entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assigned if the assignment is duly acknowledged and recorded.

69. Plaintiff is informed and believes, and thereon alleges that § 2932.5 requires the recordation of an assignment of the beneficial interest in a deed of trust *prior* to foreclosure. Defendants, and each of them, recorded both the Substitution of Trustee and Notice of Default simultaneously on April 28, 2010. A true and correct copy is attached hereto as Exhibit C and Exhibit D.  California Civil Code § 2932.5 requires the assignment of the beneficial interest in a deed of trust be recorded prior to foreclosure, not simultaneously with the initiation of foreclosure proceedings.

70. As a proximate result of Defendants' action, Plaintiff has been damaged in an amount not yet ascertained, to be proven at trial.

**FIFTH CAUSE OF ACTION:**
**VIOLATION OF 15 U.S.C. §1641(g)**
**(AS AGAINST DEFENDANT FANNIE MAE)**

71. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

72. The new subsection (g) added to §131 of TILA by §404 of the **Helping Families Save Their Homes Act of 2009** provides:

    i.  (g) NOTICE OF NEW CREDITOR-

    ii.  IN GENERAL – In addition to other disclosures required by this title, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including-

    b.  the identity, address, telephone number of the new creditor;
    c.  the date of transfer;
    d.  how to reach an agent or party having authority to act on
        a.  behalf of the new creditor;

19

**VERIFIED COMPLAINT**

e.   the location of the place where transfer of ownership of the
      a.   debt is recorded; and

f.   any other relevant information regarding the new creditor.

     i.   Failure to comply with the requirements of this new subsection 131(g) of

     ii.   TILA may result in civil liability for actual damages, legal fees, and

     iii.   statutory damages under §130(a) of TILA.

73. Plaintiff is informed and believes, and thereon alleges, that Homecomings Financial Network, Inc. was the original lender of the Note.

74. Plaintiff is informed and believes, and thereon alleges, that the Note was purportedly assigned to Fannie Mae.

75. Plaintiff is informed and believes, and thereon alleges, that Section 131(g) of TILA applies to Fannie Mae as the purported assignee of Plaintiff's Note.

76. Plaintiff is informed and believes, and thereon alleges, that Section 131(g) of TILA requires Fannie Mae to perform and comply with the requirements of the statute, or otherwise face statutory and civil penalties and damages.

77. Plaintiff is informed and believes, and thereon alleges that Fannie Mae failed to notify Plaintiff within thirty (30) days after the date on which it was allegedly assigned the Note.

78. Plaintiff is informed and believes, and thereon alleges, that he did not receive notice as required under Section 131(g) of TILA.

79. Plaintiff is informed and believes, and thereon alleges, that as a result of Fannie Mae's violation, the Home was foreclosed upon and he has paid attorney's fees to defend against the fraudulent foreclosure.

80. Plaintiff is informed and believes, and thereon alleges, that Fannie Mae is subject to statutory damages, civil liability, attorney's fees and actual damages.

## SIXTH CAUSE OF ACTION:
## CANCELLATION OF WRITTEN INSTRUMENT [CA CIVIL CODE §3412]
## (AGAINST ALL DEFENDANTS)

81. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

82. On or about October 15, 2002, as alleged hereinabove, Plaintiff executed a series of written instruments, including but not limited to a Note and a Deed.

83. The Deed of Trust is void and/or voidable for the reasons set forth hereinabove.

84. If left outstanding, the Deed of Trust shall cause serious injury to Plaintiff, including but not limited to damage to his credit as well as obligations on a debt not owed to Defendants.

85. Plaintiff is, therefore, entitled to have his Deed of Trust (Exhibit "A") adjudged void and/or voidable and cancelled, pursuant to California Civil Code §3412.

## SEVENTH CAUSE OF ACTION:
## UNFAIR BUSINESS PRACTICES IN VIOLATION OF CA BUSINESS & PROFESSIONS CODE §17200 ET SEQ AND CA PENAL CODE §§115.5 & 532(f)(a)(4) (AGAINST ALL DEFENDANTS)

86. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

### RECENT DEVELOPMENTS AND DOCUMENT FRAUD

87. On September 24, 2010, California Attorney General, Edmund G. Brown, Jr. (aka Jerry Brown) ("AG"), directed ALLY Financial, Inc., which owns GMAC, Mortgage LLC, to stop foreclosures in California until it proves it is complying with State law.

88. On October 1, 2010, the AG similarly requested that J.P. Morgan Chase stop foreclosures in California until it proves it is complying with State law.

89. Since then, Bank of America has halted foreclosures in 23 judicial foreclosure States.

VERIFIED COMPLAINT

90. On or about October 11, 2010, BAC announced that it is temporarily halting foreclosures nationwide.

91. The impetus of these necessary but drastic measures stems from allegations of document fraud on the part of the banks and their servicers. This epidemic is not limited to the banks listed above, but is an industry wide problem.

92. During the securitization era, Banks and the resulting trusts, in the rush to securitized mortgages and sell them to investors, routinely ignored the critical step of obtaining mortgage assignments from the original lenders to the securities companies to the trusts.

93. Now, years later, when the companies "servicing" the trusts need to foreclose, there are no documents available to document the proper chain of title because none were originally created. As a result, banks are creating the missing documents or outsourcing the documents to companies like Lender Processing Services to produce the needed assignments. This practice was admitted by deposed bank executives such as GMAC's Jeffrey Stephen who admitted in sworn deposition testimony to signing more than 500 documents a day and up to 10,000 documents a month related to foreclosures without reviewing them.

94. Due to the strict timelines and guidelines to complete a foreclosure, banks are also fabricating other documents to comply with California's foreclosure guidelines.

95. The impact of these allegations is so cogent that Old Republic National Title

96. Company will no longer insure the title on homes foreclosed by J.P. Morgan Chase or GMAC, Mortgage LLC.

**VERIFIED COMPLAINT**

97.    As further proof of the unlawful business practices, other state legislatures have taken steps to make the process more transparent (see Arizona State Senate Bill 1259, requiring non-originating foreclosure lenders to produce full chain of title to verify ownership).[2]

98.    Other states have taken the lead to void foreclosure sales by parties who lack standing to foreclose. *See, e.g., U.S. Bank Nat. Ass'n v. Ibanez* (2011) 941 N.E.2d 40.  Most recently, an Alabama Circuit recognized the legal ramifications regarding the failure of banks and their trustees to properly transfer Notes and Deeds of Trusts.  In *Phyllis Horace v. La Salle Bank National Association, Et Al*, 57-cv-2008-00362.00, the Alabama Circuit Court not only sided with the homeowner on this exact issue; the court issued an order **permanently enjoining** the defendant trust, LaSalle Bank National Association, from foreclosing on the plaintiff's house because LaSalle failed under New York law and its own Pooling and Servicing Agreement to properly transfer the plaintiff's mortgage note on the plaintiff's home.

99.    In permanently forestalling any foreclosure on the home by defendant, the court did not mince words: "First, the Court is surprised to the point of astonishment that the defendant (LaSalle Bank National Association) did not comply with the terms of its own Pooling and Servicing Agreement and further did not comply with New York Law in attempting to obtain assignment of plaintiff Horace's note and mortgage.  Second, plaintiff Horace is a third party beneficiary of the Pooling and Servicing Agreement created by the defendant trust (LaSalle Bank National Association).  Indeed without such Pooling and Servicing Agreements, plaintiff Horace and other mortgagors similarly situated would never have been able to obtain financing."

---

[2]http://www.azleg.gov/legtext/50leg/1r/bills/sb1259s.pdf

23
**VERIFIED COMPLAINT**

100. Plaintiff is informed and believe, and thereon alleges, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code §17200 and the Unfair and Deceptive Acts and Practices statutes.

111. The above specified Defendants, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, California Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in California in violation of California *Penal Code* §115.5. The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practices.

112. Plaintiff is informed and believe, and therefore alleges that Defendant MERS lacked authority to execute an assignment of the Deed of Trust from the original beneficiary to Defendant.

113. Plaintiff is informed and believe, and thereon alleges that Defendant MERS at all relevant times had knowledge that no such authority was ever bestowed upon it by the original lender, GMAC, yet MERS still caused to be recorded the false documents with the county recorder in violation of California *Penal Code* §115.5(a). Further, the assignment recorded is signed by an individual purporting to be the "Assistant Secretary" of MERS. Plaintiff believes and thereupon alleges that this individual did not have the authority or capacity to sign on behalf of MERS to cause such substitutions or assignments. As such, Plaintiff is informed and believes, and thereon alleges that certain misrepresentations, including

**VERIFIED COMPLAINT**

sworn statements, were made to the notary public to cause the notary public to perform an improper notorial act on a document in violation of California *Penal Code* §115.5(b).

114.   In addition, as specified above in paragraphs 18- 27, Defendants altered the Trust Deed without *the knowledge or consent* of the Plaintiff or of the Notary. Defendants not only altered the legal description of the Property, they changed the date of the Deed and forged the initials of the Notary. The Deed of Trust in this case gives the appearance of being a certified copy of the original recorded Deed. However, the purported certification of the Deed is defective; it states only "I hereby certify that this is a true and exact copy of the Original."

115.   The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above.   Further, the above-specified Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

116.   Plaintiff is informed and believe, and thereon alleges, that Defendants knowingly recorded fraudulent documents with the Ventura County Recorder's Office with the intent to defraud Plaintiff in violation of CA *Penal Code* §532(f)(a)(4) and to institute wrongful foreclosure proceedings against their Home.

117.   Pursuant to Sections 17200 et seq. of the California *Business and Professions Code*, unfair business practices include any unlawful, unfair, misleading or fraudulent business practice.   The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provisions of §§17200 et seq of the California *Business and Professions Code*.

118.   As a direct and proximate result of the unfair business practices of the above

**VERIFIED COMPLAINT**

specified Defendants, and each of them, as herein alleged, Plaintiff has incurred damages in that the Plaintiff's Home is now subject to foreclosure at the hands of the above specified Defendants, and each of them, all by reason of which Plaintiff has been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

119.   As a further direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, Plaintiff is entitled to an order or preliminary injunction prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Home.

### EIGHT CAUSE OF ACTION:
### INTENTIONAL INFLICTIO OF EMOTIONAL DISTRESS
### (AS AGAINST ALL DEFENDANTS)

120.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

121.   The actions of Defendants, as set forth herein, have resulted in Plaintiff being threatened with the loss of his Home.

122.   This outcome has been created without any right or privilege on the part of the Defendants, and, as such, their actions constitute outrageous and/or reckless conduct on the part of the Defendants.

123.   Defendants intentionally, knowingly and recklessly misrepresented to Plaintiff that the Defendants were entitled to exercise the power of sale provision contained in the Deed of Trust. In fact, Defendants were not entitled to do so and have no legal, equitable, or actual beneficial interest whatsoever in the Property.

**VERIFIED COMPLAINT**

124.   Defendants' conduct – fraudulently attempting to foreclose on a property in which they have no right, title, or interest – is so outrageous and extreme that it exceeds all bounds of that which is usually tolerated in a civilized community.

125.   Such conduct was undertaken with the specific intent of inflicting emotional distress on Plaintiff, such that they would be so emotionally distressed and debilitated that they would be unable to exercise their legal rights, the right to title of their home, their right to cure the alleged default, right to verify the alleged debt that Defendants are attempting to collect, and right to clear title to their Property such that said title will regain its marketability and value.

126.   Defendants were attempting to collect on a debt to which they have no legal, equitable, or pecuniary interest in. This type of conduct is outrageous. Defendants are fraudulently foreclosing on their home which they have no monetary or pecuniary interest. This type of conduct is outrageous.

127.   At the time Defendants began their fraudulent foreclosure proceedings, Defendants were not acting in good faith while attempting to collect on the subject debt. Defendants, and each of them, committed the acts set forth above with complete; utter and reckless disregard of the probability of causing Homeowners to suffer severe emotional distress.

128.   As an actual and proximate cause of Defendants' attempt to fraudulently foreclose on Plaintiff's home, Plaintiff has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression.

129.   Plaintiff did not default in the manner stated in the Notice of Default, yet because of Defendants 'outrageous conduct, Plaintiff has been living under the constant emotional nightmare of losing their home and becoming homeless.

**VERIFIED COMPLAINT**

130.   As a proximate cause of Defendants' conduct, Plaintiff has experienced several sleepless nights, severe depression, lack of appetite, and loss of productivity at his place of employment.

131.   The conduct of Defendants, and each of them, as herein described, was so vile, baseless, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## JURY DEMAND

132.   Plaintiff requests a jury for all triable issues.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

1.   For Compensatory Damages in an amount to be determined by proof at trial;

2.   For Special Damages in an amount to be determined by proof at trial;

3.   For General Damages in an amount to be determined by proof at trial;

4.   For Punitive Damages as allowed by law;

5.   For Restitution as allowed by law;

6.   For Attorney's Fees and Costs of this action;

7.   For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.   Plaintiff is the prevailing parties;

    b.   All three Deeds be declared void due to the alteration and revisions of the Deeds without the consent or knowledge of the Plaintiff;

**VERIFIED COMPLAINT**

c.  The Trustees of the Trusts have no enforceable secured or unsecured claim against the Home;

d.  The Sponsor has no enforceable secured or unsecured claim against the Home;

e.  The Depositor has no enforceable secured or unsecured claim against the Home;

f.  The Mortgage Originator has no enforceable secured or unsecured claim against the Home.

g.  No other party, whether known or unknown, has an enforceable secured or unsecured claim against the Home;

h.  Any efforts of the Defendants to assign and deliver the Note to the Trustees of the Trusts after the closing date thereof be declared void and a legal nullity, in willful violation of New York trust law and of relevant portions of the PSA;

8.  For Injunctive Relief including but not limited to;

a.  Preliminary and Permanent Injunction enjoining any and all Trustee Sales which may be scheduled by the Defendants herein;

b.  An Order prohibiting Defendants, and each of them, from filing an unlawful detainer action or any other action against the Plaintiff;

9.  For Quiet Title against all Defendants whereby legal title and possession of the Property is transferred to the Plaintiff;

10.  For Cancellation of the DEED OF TRUST pursuant to California Civil Code §3412 herein;

11.  For any prejudgment or other interest according to law; and

12.  Any other and further relief that the Court considers just and proper.

**VERIFIED COMPLAINT**

1    DATED: June ⎨4, 2012                   LAW OFFICES OF PATRICIA RODRIGUEZ

2

3                                           _____
                                            Patricia Rodriguez, Esq.
4                                           Attorney for Plaintiff
                                            Peter Zeppeiro
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    30

## VERIFICATION

I, Peter Zeppeiro, am the Plaintiff in this action. I am informed and believe and on that ground alleges that matters stated herein are true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on _JUNE 14th 2012_ in _Santa Clarita_, California.

_____
Peter Zeppeiro

31
**VERIFIED COMPLAINT**

# EXIBIT "A"

*THE COURT*

Recording Requested By: HomeComings Financial Network, Inc
*NETWORK, INC .*

Return To    HOMECOMINGS FINANCIAL NETWORK, INC
            ONE MERIDIAN CROSSING, STE 100
            MINNEAPOLIS, MN 55423
            Loan Number: 041-486187-v

Prepared By    HomeComings Financial Network
            520 Newport Center Drive, Suite
            Newport Beach, CA 92660

Ventura, County Recorder
RICHARD D. DEAN
DOC- 2002-0260124-00
Check Number  120953
RECD BY TITLE COURT
Thursday, OCT 24, 2002 11.51:58
Ttl Pd    $61.00    Nbr-0000508153
                            MAA/C3/1-19

221839    ──────(Space Above This Line For Recording Data)──────

# DEED OF TRUST

MIN 10006260414801870?

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    OCTOBER 11TH, 2002
together with all Riders to this document.
(B) "Borrower" is
PETER GEPPERIED, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is  HOMECOMINGS FINANCIAL NETWORK, INC

Lender is a    CORPORATION
organized and existing under the laws of    DELAWARE

CALIFORNIA Single Family Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005 1/01
MFCA 7770 (0P00) ∙ 041-486187-0
(ψ) -6A(CA) (0006)
Page 1 of 15        Initials ___

VMP MORTGAGE FORMS - (800)521-7291



EXHIBIT 3

Lender's address is  620 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660
(D) "Trustee" is  AMERICAN TITLE

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated OCTOBER 11TH, 2005
The Note states that Borrower owes Lender  THREE HUNDRED THOUSAND SEVEN HUNDRED AND
00/100                                                                      Dollars
(U.S. $   300,700.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   NOVEMBER 1ST, 2035

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

MFCA7370 (1040) / (41-488182-0)
⊕-6A(CA) (0005)                          Page 2 of 15                          Form 3005   1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                                of VENTURA

[Type of Recording Jurisdiction]                         [Name of Recording Jurisdiction]

Legal Description attached hereto and made a part hereof

Parcel ID Number:  169-0-263-245                          which currently has the address of
8393 CALLE BODEGA                                                             [Street]
CAMARILLO                                       [City], California    93012    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

MFCA7720 (0808) / (01) 488187-0                                          
MFICA1 3000                                Page 3 of 18                              Form 3005   1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2 all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

  

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to, (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

MFCA3778 (10/00) / IM1-488187-0
GA(CA) 0008

Page 7 of 15



Form 3005   1/01

attorneys' fees, to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds. Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFCA7770 (1000)  / 981 483187-0
1840, SAICAL  (0000)

Page 12 of 15

Initials ___

Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA



requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

MFCA7710 (1bXo) + 041-458|8740
BA(CA) (9095)

Form 3005   1/01

time, and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)        _____ (Seal)
PETER ZEPPERNI              Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                            Borrower                                    -Borrower

_____ (Seal)        _____ (Seal)
                            Borrower                                    Borrower

_____ (Seal)        _____ (Seal)
                            Borrower                                    Borrower

*[Sign Original Only]*

DFCA0754  (12/01) : C41-4801870
-872R(CA) (0108)                        Page 3 of 3                Form 3180 1/01
                                                                   (Rev. 9/01)

Escrow No. 78709-MGW
Title Order No. 02211839

# EXHIBIT ONE

PARCEL 1:

That portion of Lot 1037 of Tract No. 2381-7, in the City of Camarillo, County of Ventura, State of California, as per Map recorded in Book 75, Pages 86 to 91 inclusive, of Maps, in the Office of the County Recorder of said County, shown as Lot 1038-A on thatcertain Lot Line Adjustment recorded November 30, 1978 as File No. 131993, in Book 5271, Page 941 to 947, inclusive of Official Records.

Except all oil, mineral, gas and other hydrocarbon substances below a depth of 500 feet below the surface of subsurface within said 500 feet

PARCEL 2:

Those portions of Lot 36 and 66 of the Rancho Callegues, in the City of Camarillo, County of Ventura, State of California, shown on the Map recorded in Book 17, Page 16 of Miscellaneous Records, in the Office of the County Recorder of said County, described as follows:

Beginning at the intersection of the 33rd course recited in the Deed of Trust recorded May 17, 1966 in Book 2988, Page 421 of Official Records, in the Office of the County Recorder of said County with the Southeasterly boundary of the 50.00 feet wide strip described in the Deed recorded March 15, 1915, in Book 150, Page 43 of Deeds, records of said County; thence along the line which passes through said intersection and is radial to the portion of the relocated centerline of Santa Rosa Road shown as a curve having a radius of 8,000.00 feet and a length of 211.46 feet on the Map of Tract No. 2381-7, in said City, County and State, recorded in Book 75, Pages 86 to 91 inclusive of Miscellaneous Records.

1st: North 35°19'19" West 51.42 feet to a curve having a radius of 7,949.00 feet, which is concave Southeasterly and is concentric with and distant 51.00 feet Southeasterly, measured radially from said curve having a radius of 6,000.00 feet; thence Southwesterly along said curve,

2nd: Through a central angle of 00°35'16" an arc distance of 81.51 feet, thence tangent to said last mentioned curve and along a line parallel with and distant Southeasterly 51.00 feet, measured at right angles from said relocated centerline of Santa Rosa Road,

3rd: South 54°05'26" West 234.97 feet to said Southeasterly boundary of the 50.00 foot wide strip described in the Deed recorded March 15, 1816 in Book 150, Page 43 of Deeds; thence along said Southeasterly boundary

4th: North 63°24'34" East 320.23 feet to the Point of Beginning.

This is a true certified copy of the original public record if it bears the seal, imprinted in purple ink, of the County Clerk and Recorder.

MARK A. LUNN
County Clerk and Recorder
Ventura County, California



# EXIBIT "B"

requested by title court

**RECORDING REQUESTED BY:**

LSI TITLE COMPANY, INC.

**WHEN RECORDED MAIL TO:**
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

100257405



20100428-00063990-0  1/2
Ventura County Clerk and Recorder
James B. Becker, Assistant
04/28/2010 08:00:00 AM
410406 $21.00 ZA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No. : GM-216815-C        Loan No.: 0414881870

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

### IMPORTANT NOTICE
### IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,

and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$15,416.55** as of **4/26/2010,**  and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor. To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**
C/O ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600 phone

TS NO.: GM-216815-C          LOAN NO.: 0414881870

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

## Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That **Executive Trustee Services, LLC dba ETS Services, LLC** is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **10/11/2002** , executed by **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC. A CORPORATION**, as beneficiary, recorded **10/24/2002**, as Instrument No. **2002-0260124-00**, in Book , Page ,  of Official Records in the Office of the Recorder of **Ventura** County, California describing land therein as:

AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

including **ONE NOTE FOR THE ORIGINAL** sum of **$300,700.00** ; that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

Installment of Principal and Interest plus impounds and/or advances which became due on 11/1/2009 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  4/26/2010

ETS Services, LLC as Agent for Beneficiary

BY:

Irma Erickson
TRUSTEE SALE OFFICER

# EXIBIT "C"

RECORDING REQUESTED BY:

LSI TITLE COMPANY, INC.

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
(818) 260-1600

*100 257445*

TS NO : GM-216815-C
LOAN NO : 0414881870

20100428-00063989-0 1/1
Ventura County Clerk and Recorder
James B. Becker, Assistant
04/28/2010 08:00:00 AM
410406 $18.00 ZA

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SUBSTITUTION OF TRUSTEE

**WHEREAS, PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY** was the original Trustor, **AMERICAN TITLE** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC. A CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **10/11/2002** and recorded on **10/24/2002** as Instrument No. **2002-0260124-00**, in Book , Page of Official Records of **Ventura** County, California; and

**WHEREAS,** the undersigned is the present Beneficiary under said Deed of Trust, and

**WHEREAS,** the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

**NOW, THEREFORE,** the undersigned desires to substitute **Executive Trustee Services, LLC dba ETS Services, LLC,** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

**Dated : 4/26/2010**

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

**DONNA FITTON, ASSISTANT SECRETARY**

State of California} ss.
County of Los Angeles }

On **4/26/2010** before me, **Dee C. Ortega** Notary Public, personally appeared **Donna Fitton** who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
**Dee C. Ortega**

DEE C. ORTEGA
Commission # 1672751
Notary Public - California
Los Angeles County
My Comm. Expires Jun 5, 2010

# EXIBIT "D"

RECORDING REQUESTED BY
**ETS Services, LLC**

AND WHEN RECORDED MAIL TO:
**ETS Services, LLC**
**2255 North Ontario Street, Suite 400**
**Burbank, California 91504-3120**

T.S. No. GM-216815-C
Loan No. 0414881870
100257445

20100730-00111696-0 1/2
Ventura County Clerk and Recorder
MARK A. LUNN
07/30/2010 09:00:00 AM
436739 $21.00 ZA

SPACE ABOVE THIS LINE FOR RECORDER'S Use

# NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 10/11/2002. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, will be held by the duly appointed trustee. The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to satisfy the obligation secured by said Deed of Trust. The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein.

TRUSTOR:**PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY**
Recorded **10/24/2002** as Instrument No. **2002-0260124-00** in Book , page  of
Official Records in the office of the Recorder of **Ventura** County, California,
Date of Sale:**8/26/2010 at 11:00 AM**
Place of Sale:     **At the main entrance to the Government Center Hall of Justice, 800 South**
                   **Victoria Avenue, Ventura, California**
Property Address is purported to be:     **6393 CALLE BODEGA**
                                         **CAMARILLO, California 93012**

APN #:  **169-0-263-245**

The total amount secured by said instrument as of the time of initial publication of this notice is **$282,062.00**, which includes the total amount of the unpaid balance (including accrued and unpaid interest) and reasonable estimated costs, expenses, and advances at the time of initial publication of this notice.

Pursuant to California Civil Code §2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:

[ 1 ] The mortgage loan servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date the notice of sale is filed;
[ 2 ] The timeframe for giving notice of sale specified in subdivision (a) of Section 2923.52 does not apply pursuant to Section 2923.52 or 2923.55.

T.S. No. GM-216815-C
Loan No. 0414881870

Date: 7/28/2010

ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120
Sale Line: 714-730-2727

Christine Gomez-Schwab, TRUSTEE SALE OFFICER

# EXIBIT "E"

ANO WHEN RECORDED MAIL THIS DEED AND, UNLESS OTHERWISE SHOWN BELOW, MAIL TAX STATEMENTS TO

NAME   JOVITA ZEPPEIRO
STREET  6393 Calle Bodega
ADDRESS
CITY    Camarillo, CA 93010
STATE
ZIP

95-030685

Recorded
Official Records
County of
Ventura
Richard D. Dean
Recorder
8:00am 16-Mar-95

| Rec Fee | 9.00 |
| DOC | 209.00 |
| SUR | 10.00 |
| A.R. | 228.00 |

LINC   .CC   2

THIS SPACE FOR RECORDING USE ONLY

Escrow No. 6940063    Title Order No. 9401275    Assessor's Parcel No. 169-0-263-245

# Grant Deed

The undersigned declares that the DOCUMENTARY TRANSFER TAX IS $209.00    CITY TAX IS $0.00

[X] Computed on the full value of the interest of property conveyed, or is
[ ] Computed on the full value less the value of liens and encumbrances remaining thereon at the time of sale, OR
[ ] transfer is exempt from tax for the following reason:   (none)
[ ] Unincorporated Area: [X] City of   CAMARILLO   , and
FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

DANIEL S. DRABANT, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

hereby GRANT(S) to

JOVITA ZEPPEIRO, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

all that real property situated in the CITY OF CAMARILLO, COUNTY OF Ventura, STATE OF CALIFORNIA, described as:

SEE LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT 'A' AND MADE A HEREOF

commonly known as: 6393 Calle Bodega, Camarillo, CA  93010
Street Address

Dated  March 07, 1995

STATE OF CALIFORNIA
COUNTY OF   Ventura   } SS.

On 3-7-95  before me, ELIZABETH J. TRACY
a notary public, personally appeared DANIEL S. DRABANT

DANIEL S. DRABANT

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or entity upon behalf of which the person(s) acted, executed the instrument.

Signature of notary  Elizabeth J. Tracy

ELIZABETH J. TRACY
COMM. # 982593
Notary Public — California
VENTURA COUNTY
My Comm. Expires MAR 29, 1996

Mail Tax
Statements to:
Street Address        MAIL TAX STATEMENTS AS DIRECTED ABOVE        City and State        Zip Code

EXHIBIT 1C

SAID LAND IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THAT PORTION OF LOT 1038 OF TRACT NO. 2381-7, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 75, PAGES 86 TO 91, INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN AS LOT 1038-A ON THAT CERTAIN LOT LINE ADJUSTMENT RECORDED NOVEMBER 30, 1978, AS DOCUMENT NO. 131993, IN BOOK 5271, PAGE 941 TO 947, INCLUSIVE, OF OFFICIAL RECORDS.

EXCEPT ALL OIL, MINERAL, GAS AND OTHER HYDROCARBON SUBSTANCES BELOW A DEPT OF 500 FEET BELOW THE SURFACE OF SAID LAND, BUT WITHOUT THE RIGHT OF ENTRY TO SUCH SURFACE OR SUBSURFACE WITHIN SAID 500 FEET.

PARCEL 2:

THOSE PORTIONS OF LOT 36 AND 65 OF THE RANCHO CALLEGUAS, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, SHOWN ON THE MAP RECORDED IN BOOK 17, PAGE 16 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE 33RD COURSE RECITED IN THE DEED OF TRUST RECORDED MAY 17, 1966 IN BOOK 2988, PAGE 421 OF OFFICIAL RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY WITH THE SOUTHEASTERLY BOUNDARY OF THE 50.00 FEET WIDE STRIP DESCRIBED IN THE DEED RECORDED MARCH 15, 1916, IN BOOK 150, PAGE 43 OF DEEDS, RECORDS OF SAID COUNTY; THENCE ALONG THE LINE WHICH PASSES THROUGH SAID INTERSECTION AND IS RADIAL TO THE PORTION OF THE RELOCATED CENTERLINE OF SANTA ROSA ROAD SHOWN AS A CURVE HAVING A RADIUS OF 8,000.00 FEET AND A LENGTH OF 211.46 FEET ON THE MAP OF TRACT NO. 2381-7, IN SAID CITY, COUNTY AND STATE, RECORDED IN BOOK 75, PAGES 86 TO 91 INCLUSIVE OF MISCELLANEOUS RECORDS;

1ST:  NORTH 35° 19' 19" WEST 51.42 FEET TO A CURVE HAVING A RADIUS OF 7,949.00 FEET, WHICH IS CONCAVE SOUTHEASTERLY AND IS CONCENTRIC WITH AND DISTANT 51.00 FEET SOUTHEASTERLY, MEASURED RADIALLY, FROM SAID CURVE HAVING A RADIUS OF 8,000.00 FEET; THENCE SOUTHWESTERLY ALONG SAID CURVE,

2ND:  THROUGH A CENTRAL ANGLE OF 00° 35' 15" , AN ARC DISTANCE OF 81.51 FEET; THENCE TANGENT TO SAID LAST MENTIONED CURVE AND ALONG A LINE PARALLELS WITH AND DISTANT SOUTHEASTERLY  51.00 FEET, MEASURED AT RIGHT ANGLES FROM SAID RELOCATED CENTERLINE OF SANTA ROSA ROAD,

3RD:  SOUTH 54° 05' 26" WEST 234.97 FEET TO SAID SOUTHEASTERLY BOUNDARY OF THE 50.00 FOOT WIDE STRIP DESCRIBED IN THE DEED RECORDED MARCH 15, 1916, IN BOOK 150, PAGE 43 OF DEEDS; THENCE ALONG SAID SOUTHEASTERLY BOUNDARY,

4TH:  NORTH 63° 24' 34" EAST 320.23 FEET TO THE POINT OF BEGINNING.

This is a true certified copy of the original public record if it bears the seal, imprinted in purple ink, of the County Clerk and Recorder

MARK A. LUNN
County Clerk and Recorder
Ventura County, California

# EXIBIT "F"

RECORDING REQUESTED BY:
American Title Company
Escrow No. 75709-MCW
Title Order No. 02211839

When Recorded Mail Document
and Tax Statement To:
Peter Zeppeiro
6393 Calle Bodega
Camarillo, CA 93017

APN: 169-0-263-245

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## GRANT DEED

The undersigned grantor(s) declare(s)
Documentary transfer tax is $ _____    City Transfer Tax Is $ _____
 [   ] computed on full value of property conveyed, or
 [   ] computed on full value less value of liens or encumbrances remaining at time of sale,
 [   ] Unincorporated Area    City of Camarillo

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,   Jovita Zeppeiro, A Married Woman as Her Sole and Separate Property

hereby GRANT(S) to   Peter Zeppeiro, A Married Man, as His Sole and Separate Property

the following described real property in the City of Camarillo,
County of Ventura,  State of California:
SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

DATED: August 29, 2002

STATE OF CALIFORNIA
COUNTY OF _VENTURA_
ON _9/6/02_ _____ before me,
_Stephan Snoer_____ personally appeared
_Peter Zeppeiro_
_Jovita Zeppeiro_
personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _____

Jovita Zeppeiro

Peter Zeppeiro

STEPHAN SNOER
1214265
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Comm. Expires
MARCH 28, 2003

MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev. 7/96)    GRANT DEED

## EXHIBIT 1A

RECORDING REQUESTED BY:

Escrow No. 75709-MCW
Title Order No. 02211839

When Recorded Mail Document
and Tax Statement To:

Peter Zeppeiro
6393 Calle Bodega
Camarillo, CA 93012

2211839

APN: 169-0-263-245

Ventura, County Recorder
RICHARD D. DEAN
DOC- 2002-0280567-00

Check Number  136751
REQD BY TITLE COURT
Tuesday, NOV 12, 2002 08:59:41
Ttl Pd    $20.00         Nbr-0000930972
                                        IHE/C3/1-2

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**GRANT DEED**

ADDING SPOUSE TO TITLE

The undersigned grantor(s) declare(s)
Documentary transfer tax is $            City Transfer Tax is $
{   } computed on full value of property conveyed, or
{   } computed on full value less value of liens or encumbrances remaining at time of sale.
{   } Unincorporated Area     City of Camarillo

**FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,**   Jovita Zeppeiro, A Married Woman
as Her Sole and Separate Property

hereby GRANT(S) to   ~~Peter Zeppeiro, A Married Man, as His Sole and Separate Property~~

    Jovita Zeppeiro and Peter Zeppeiro wife and husband as Joint Tenants
the following described real property in the City of Camarillo,
County of Ventura, State of California:

~~SEE EXHIBIT ONE ATTACHED HERETO AND MADE A PART HEREOF

DATED: August 29, 2002

STATE OF CALIFORNIA
COUNTY OF   Ventura
ON   9/6/02                           before me,
Stephan Snider            personally appeared
      Peter Zeppeiro
      Jovita Zeppeiro
personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose
name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that
by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature

Jovita Zeppeiro

Peter Zeppeiro

STEPHAN SNIDER
1214255
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
My Comm Expires
MARCH 28, 2003

MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev 7/96)                          GRANT DEED

EXHIBIT 1B

Order No. 2211839

# EXHIBIT "ONE"

PARCEL 1:

That portion of Lot 1037 of Tract No. 2381-7, in the City of Camarillo, County of Ventura, State of California, as per Map recorded in Book 75, Pages 86 to 91 inclusive, of Maps, in the Office of the County Recorder of said County, shown as Lot 1038-A on that certain Lot Line Adjustment recorded November 30, 1978 as File No. 131993, in Book 5271, Page 941 to 947, inclusive of Official Records.

Except all oil, mineral, gas and other hydrocarbon substances below a depth of 500 feet below the surface or subsurface within said 500 feet.

PARCEL 2:

Those portions of Lot 36 and 65 of the Rancho Calleguas, in the City of Camarillo, COunty of Ventura, State of California, shown on the Map recorded in Book 17, Page 16 of Miscellaneous Records, in the Office of the County Recorder of said COunty, described as follows:

Beginning at the intersection of the 33rd course recited in the Deed of Trust recorded May 17, 1966 in Book 2988, Page 421 of Official Records, in the Office of the County Recorder of said County with the Southeasterly boundary of the 50.00 feet wide strip described in the Deed recorded March 15, 1916, in Book 150, Page 43 of Deeds, records of said County; thence along the line which passes through said intersection and is radial to the portion of the relocated centerline of Santa Rosa Road shown as a curve having a radius of 8,000.00 feet and a length of 211.46 feet on the Map of Tract No. 2381-7, in said City, County and State, recorded in Book 75, Pages 86 to 91 inclusive of Miscellaneous Records.

1st:  North 35°19'19" West 51.42 feet to a curve having a radius of 7,949.00 feet, which is concave Southeasterly and is concentric with and distant 51.00 feet Southeasterly, measured radially from said curve having a radius of 6,000.00 feet; thence Southwesterly along said curve,

2nd:  Through a central angle of 00°35'15" an arc distance of 81.51 feet; thence tangent to said last mentioned curve and along a line parallels with and distant Southeasterly 51.00 feet, measured at right angles from said relocated centerline of Santa Rosa Road,

3rd:  South 64°05'26" West 234.97 feet to said Southeasterly boundary of the 50.00 foot wide strip described in the Deed recorded March 15, 1916 in Book 150, Page 43 of Deeds; thence along said Southeasterly boundary,

4th:  North 63°24'34" East 320.23 feet to the Point of Beginning.

Assessor's Parcel No: 169-0-263-245

This is a true certified copy of the
digital public record if it bears the
seal, imprinted in purple ink, of the
County Clerk and Recorder.

March A, 2018
County Clerk and Recorder
Ventura County, California

# EXIBIT "G"

Escrow No. 75709-MCN
Title Order No. 2211839
APN: 169-0-263-245

MRA/C3/1-2

**GRANT DEED**

The undersigned grantor(s) declare(s)
Documentary transfer tax is $__0__   City tax $__0__
[   ] computed on full value of property conveyed, or
[   ] computed on full value less value of liens or encumbrances remaining at time of sale.
[   ] Unincorporated Area   City of __Camarillo__

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants

hereby GRANT(S) to   Peter Zeppeiro, a married man as his sole and separate property

the following described real property in the City of   Camarillo
County of   Ventura                                                     State of California:

See Exhibit "ONE" attached hereto and made apart hereof.

DATED: _10/5/12_

STATE OF CALIFORNIA
COUNTY OF   Ventura
ON _10-11-2002_                 before me,
THE UNDERSIGNED              personally appeared
Jovita Zeppeiro

personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s)
whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s) or the entity upon
behalf of which the person(s) acted, executed the
instrument.

Witness my hand and official seal.

Signature _Benita A. Coletti_

Jovita Zeppeiro

JOVITA ZEPPEIRO

BENITA A. COLETTI
COMM. # 1289272
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. SEPT. 24, 2005

MAIL TAX STATEMENT AS DIRECTED ABOVE

ATD-13 (Rev 4/94)                        GRANT DEED

CAL ATTORNEY GENERAL
CAG #2007060253
SEE CHAIN TITLE

EX 8
pg 2

P-04 000302

p: Assessor's Parcel 169-26 - VN:2002 00260123

State of California
County of Ventura

On October 15, 2002    2002 before me, Benita A. Colitti, Notary Public

personally appeared

PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Benita A. Colitti                    (Seal)

BENITA A. COLITTI
COMM. # 1316773
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. SEPT. 24, 2005

MFCA7770 (10/00) / 041-488187-0
VMP -6A(CA) (0005)                    Page 16 of 16         Initials                Form 3005   1/01

REFER TO COURTS R22 349 VENTURA CTY SUPERIOR COURT   EV 8
SEE CHAIN TITLE A - TITLE & ESCROW NOTE TO HUD DEED    F94
TITLE - PASS NOTARD                                  SECURITY-??
                                                     FRAUD

# EXHIBIT ONE

1038 of Tract No. 2381-7, in the City of Camarillo, County of Ventura, State of California, As Per Map Recorded ... Book 75, Pages 86 to 91, Inclusive, of Maps in the Office of the County Recorder of said County, Shown as Lot 1038-A on that certain Lot line adjustment Recorded November 30, 1976, as Document NO. 131993, in Book 5271, Page 941 to 947, Inclusive, of Official Records.

State of California
County of *Ventura*

On *October 15, 2002*   2002 before me, *Benita A. Colitti, Notary Public* personally appeared

PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY



personally known to me

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Benita A. Colitti*   (Seal)

BENITA A. COLITTI
COMM. # 1318973
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. SEPT. 24, 2005

MFCA7770 (10/00) / 041-488187-0
-5A(CA) (0005)

Page 15 of 15

Initials: _____

Form 3005  1/01

# BALLOON RIDER
### (CONDITIONAL RIGHT TO REFINANCE)

THIS BALLOON RIDER is made this 11TH        day of OCTOBER, 2002                     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to
HOMECOMINGS FINANCIAL NETWORK, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
6393 CALLE BODEGA
CAMARILLO, CA 93012

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand Lender may transfer the Note, Security Instrument, and this Rider. Lender or anyone who takes the Note, the Security Instrument, and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

## 1. CONDITIONAL RIGHT TO REFINANCE

At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of    NOVEMBER 1ST, 2032                  , and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Section 2 and 5 below are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

## 2. CONDITIONS TO OPTION

If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (a) I must still be the owner of the property subject to the

MULTISTATE BALLOON RIDER - Single Family - Fannie Mae Uniform Instrument        Form 3180 1/01 (rev. 9/01)
Amended for California        MFCA8764 - (12/01) / 041-488187-0
VMP-872R(CA) (0109)
Page 1 of 3        Initials: 
VMP MORTGAGE FORMS - (800)521-7291

Security Instrument (the "Property"); (b) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (c) the New Note Rate cannot be more than five percentage points above the Note Rate; and (d) I must make a written request to the Note Holder as provided in Section 5 below.

**3. CALCULATING THE NEW NOTE RATE**

The New Note Rate will be a fixed rate of interest equal to Fannie Mae's required net yield for 30-year fixed-rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

**4. CALCULATING THE NEW PAYMENT AMOUNT**

Provided the New Note Rate as calculated in Section 3 above is not greater than five percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

**5. EXERCISING THE CONDITIONAL REFINANCING OPTION**

The Note Holder will notify me at least 90 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title, and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon Fannie Mae's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and a date,

MFCA8754 - (12/01) / 041-488187-0
VMP-872R(CA) (0106)

Page 2 of 3

Initials: 

Form 3180 1/01
(rev. 9/01)

▼

time, and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
PETER ZEPPEIRO                    -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                          -Borrower

_____ (Seal)          _____ (Seal)
                                      -Borrower                                                          -Borrower

*[Sign Original Only]*

MFCA8754 - (12/01) / 041-488187-0                                    **Form 3180 1/01**
VMP-872R(CA) (0109)                          Page 3 of 3                **(rev. 9/01)**

This is a true certified copy of the
original public record if it bears the
seal, imprinted in purple ink, of the
County Clerk and Recorder.

MARK A. LUNN
County Clerk and Recorder
Ventura County, California

EXIBIT "H"

Recording Requested By: HomeComings Financial Network, Inc.
*NETWORK, INC.*
*NETWORK INC.*

Return To:   HOMECOMINGS FINANCIAL NETWORK, INC
             ONE MERIDIAN CROSSING, STE 100
             MINNEAPOLIS, MN 55423
             Loan Number: 041-488187-0

Ventura, County Recorder
RICHARD D. DEAN
DOC- 2002-0260124-00
Check Number 120953
READ BY TITLE COURT
Thursday, OCT 24, 2002 11:51:00
Ttl Pd  $61.00      Nbr-0002986153
                    MAA/C3/1-19

Prepared By:   HomeComings Financial Network
               620 Newport Center Drive, Suite
               Newport Beach, CA 92660

2211839

[Space Above This Line For Recording Data]

# DEED OF TRUST

MIN 100062604148818703

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 11TH, 2002   together with all Riders to this document.

(B) "Borrower" is
PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

Borrower is the trustor under this Security Instrument.

(C) "Lender" is   HOMECOMINGS FINANCIAL NETWORK, INC.

Lender is a   CORPORATION
organized and existing under the laws of   DELAWARE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01
MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0006)
Page 1 of 15      Initials:
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is  620 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660
**(D) "Trustee" is  AMERICAN TITLE**

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

**(F) "Note"** means the promissory note signed by Borrower and dated OCTOBER 11TH, 2002
The Note states that Borrower owes Lender  THREE HUNDRED THOUSAND SEVEN HUNDRED AND NO/100                                                                                            Dollars
(U.S. $  300,700.00           ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      NOVEMBER 1ST, 2009      .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0006)

Page 2 of 15

Initials:

Form 3005  1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                           of   VENTURA
          [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
Legal description attached hereto and made a part hereof

Parcel ID Number:  169-0-263-245                         which currently has the address of
6393 CALLE BODEGA                                                                      [Street]
CAMARILLO                                           [City], California     93012   [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0005)                                 Page 3 of 15                     Initials: [signature]       Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

MFCA7770 (10/00)  /  041-488187-0
-6A(CA) (0005)

Page 4 of 15

Initials: _____

Form 3005   1/01

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

MFCA7770 (10/00)  /  041-488187-0
    -6A(CA) (0005)                         Page 8 of 15              Initials: _____         Form 3005   1/01

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0005)

Page 10 of 15

Initials: _____

Form 3005   1/01

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

MFCA7770 (10/00) / 041-488187-0  
-6A(CA) (0005)

Page 11 of 15

Initials: 

Form 3005  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

MFCA7770 (10/00) / 041-488187-0

‑6A(CA) (0005)

Page 13 of 15

Initials: _____

Form 3005  1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                 PETER ZEPPEIRO              -Borrower


_____          _____ (Seal)
                                                            -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower


_____ (Seal)   _____ (Seal)
                -Borrower                                   -Borrower


MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0005)                      Page 14 of 15              Form 3005   1/01

State of California
County of *Ventura*

On *October 15, 2002* 2002 before me, *Benita A. Coletti, Notary Public*

personally appeared

PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPERATE PROPERTY

~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

BENITA A. COLITTI
COMM. # 1318273
NOTARY PUBLIC-CALIFORNIA
VENTURA COUNTY
COMM. EXP. SEPT. 24, 2005

MFCA7770 (10/00) / 041-488187-0
-6A(CA) (0005)

Page 15 of 15

Initials: _____

Form 3005   1/01

# BALLOON RIDER
### (CONDITIONAL RIGHT TO REFINANCE)

THIS BALLOON RIDER is made this 11TH day of OCTOBER, 2002, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to
HOMECOMINGS FINANCIAL NETWORK, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:
6393 CALLE BODEGA
CAMARILLO, CA 93012

[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand Lender may transfer the Note, Security Instrument, and this Rider. Lender or anyone who takes the Note, the Security Instrument, and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

1. CONDITIONAL RIGHT TO REFINANCE
   At the Maturity Date of the Note and Security Instrument (the "Maturity Date"), I will be able to obtain a new loan ("New Loan") with a new Maturity Date of NOVEMBER 1ST, 2032, and with an interest rate equal to the "New Note Rate" determined in accordance with Section 3 below if all the conditions provided in Section 2 and 5 below are met (the "Conditional Refinancing Option"). If those conditions are not met, I understand that the Note Holder is under no obligation to refinance or modify the Note, or to extend the Maturity Date, and that I will have to repay the Note from my own resources or find a lender willing to lend me the money to repay the Note.

2. CONDITIONS TO OPTION
   If I want to exercise the Conditional Refinancing Option at maturity, certain conditions must be met as of the Maturity Date. These conditions are: (a) I must still be the owner of the property subject to the

MULTISTATE BALLOON RIDER - Single Family - Fannie Mae Uniform Instrument      Form 3180 1/01 (rev. 9/01)
Amended for California              MFCA8764 - (12/01) / 041-498187-0

&-872R(CA) (0109)
Page 1 of 3
VMP MORTGAGE FORMS - (800)521-7291

Initials: 

Security Instrument (the "Property"); (b) I must be current in my monthly payments and cannot have been more than 30 days late on any of the 12 scheduled monthly payments immediately preceding the Maturity Date; (c) the New Note Rate cannot be more than five percentage points above the Note Rate; and (d) I must make a written request to the Note Holder as provided in Section 5 below.

**3. CALCULATING THE NEW NOTE RATE**

The New Note Rate will be a fixed rate of interest equal to Fannie Mae's required net yield for 30-year fixed-rate mortgages subject to a 60-day mandatory delivery commitment, plus one-half of one percentage point (0.5%), rounded to the nearest one-eighth of one percentage point (0.125%) (the "New Note Rate"). The required net yield shall be the applicable net yield in effect on the date and time of day that the Note Holder receives notice of my election to exercise the Conditional Refinancing Option. If this required net yield is not available, the Note Holder will determine the New Note Rate by using comparable information.

**4. CALCULATING THE NEW PAYMENT AMOUNT**

Provided the New Note Rate as calculated in Section 3 above is not greater than five percentage points above the Note Rate and all other conditions required in Section 2 above are satisfied, the Note Holder will determine the amount of the monthly payment that will be sufficient to repay in full (a) the unpaid principal, plus (b) accrued but unpaid interest, plus (c) all other sums I will owe under the Note and Security Instrument on the Maturity Date (assuming my monthly payments then are current, as required under Section 2 above), over the term of the New Note at the New Note Rate in equal monthly payments. The result of this calculation will be the amount of my new principal and interest payment every month until the New Note is fully paid.

**5. EXERCISING THE CONDITIONAL REFINANCING OPTION**

The Note Holder will notify me at least 90 calendar days in advance of the Maturity Date and advise me of the principal, accrued but unpaid interest, and all other sums I am expected to owe on the Maturity Date. The Note Holder also will advise me that I may exercise the Conditional Refinancing Option if the conditions in Section 2 above are met. The Note Holder will provide my payment record information, together with the name, title, and address of the person representing the Note Holder that I must notify in order to exercise the Conditional Refinancing Option. If I meet the conditions of Section 2 above, I may exercise the Conditional Refinancing Option by notifying the Note Holder no later than 45 calendar days prior to the Maturity Date. The Note Holder will calculate the fixed New Note Rate based upon Fannie Mae's applicable published required net yield in effect on the date and time of day notification is received by the Note Holder and as calculated in Section 3 above. I will then have 30 calendar days to provide the Note Holder with acceptable proof of my required ownership. Before the Maturity Date, the Note Holder will advise me of the new interest rate (the New Note Rate), new monthly payment amount, and a date.

time, and place at which I must appear to sign any documents required to complete the required refinancing. I understand the Note Holder will charge me a $250 processing fee and the costs associated with updating the title insurance policy, if any.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

_____ (Seal)          _____ (Seal)
PETER ZEPPEIRO            -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

_____ (Seal)          _____ (Seal)
                          -Borrower                                -Borrower

*[Sign Original Only]*

MFCA8754 - (12/01) / 041-488187-0                    Form 3180 1/01
      -872R(CA) (0109)          Page 3 of 3          (rev. 9/01)

Title Order No. 02211839

# EXHIBIT ONE

**PARCEL 1:**

That portion of Lot 1037 of Tract No. 2381-7, in the City of Camarillo, County of Ventura, State of California, as per Map recorded in Book 75, Pages 86 to 91 inclusive, of Maps, in the Office of the County Recorder of said County, shown as Lot 1038-A on that certain Lot Line Adjustment recorded November 30, 1978 as File No. 131993, in Book 5271, Page 941 to 947, inclusive of Official Records.

Except all oil, mineral, gas and other hydrocarbon substances below a depth of 500 feet below the surface or subsurface within said 500 feet.

**PARCEL 2:**

Those portions of Lot 36 and 65 of the Rancho Calleguas, in the City of Camarillo, COunty of Ventura, State of California, shown on the Map recorded in Book 17, Page 16 of Miscellaneous Records, in the Office of the County Recorder of said COunty, described as follows:

Beginning at the intersection of the 33rd course recited in the Deed of Trust recorded May 17, 1966 in Book 2988, Page 421 of Official Records, in the Office of the County Recorder of said County with the Southeasterly boundary of the 50.00 feet wide strip described in the Deed recorded March 15, 1916, in Book 150, Page 43 of Deeds, records of said County; thence along the line which passes through said intersection and is radial to the portion of the relocated centerline of Santa Rosa Road shown as a curve having a radius of 8,000.00 feet and a length of 211.46 feet on the Map of Tract No. 2381-7, in said City, County and State, recorded in Book 75, Pages 86 to 91 inclusive of Miscellaneous Records.

1st: North 35°19'19" West 51.42 feet to a curve having a radius of 7,949.00 feet, which is concave Southeasterly and is concentric with and distant 51.00 feet Southeasterly, measured radially from said curve having a radius of 6,000.00 feet; thence Southwesterly along said curve,

2nd: Through a central angle of 00°35'15" an arc distance of 81.51 feet; thence tangent to said last mentioned curve and along a line parallels with and distant Southeasterly 51.00 feet, measured at right angles from said relocated centerline of Santa Rosa Road,

3rd: South 54°05'26" West 234.97 feet to said Southeasterly boundary of the 50.00 foot wide strip described in the Deed recorded March 15, 1916 in Book 150, Page 43 of Deeds; thence along said Southeasterly boundary,

4th: North 63°24'34" East 320.23 feet to the Point of Beginning.

# EXIBIT "I"

Sep ( 1 05 10:29a     Ronald M  Colitti                          805-658-6728              p.1



# BENITA A. COLITTI

1136 Colina Vista
Ventura, CA 93003
(805) 642-4189
FAX (805) 658-6728

## DECLARATION OF FACT

On October 15, 2002, I was the notary at a signing that took place at 6393 Calle Bodega, Camarillo, CA 93012.

Present were Mr. Doug Zeppeiro, his son, Peter Zeppeiro, and his daughter-in-law, Jovita Zeppeira.  Peter and Jovita Zeppeiro were the signers on these documents.  When I arrived at 5:15 p.m., the appointed time for the signing, Mr. Doug Zeppeiro informed me that there was a need for haste as he wanted to catch the UPS pickup in Westlake at 6:00 p.m.

Among the documents I notarized that day were a Declaration of Abandonment of Homestead, signed by both Peter and Jovita Zeppeiro; a Grant Deed, signed by Jovita Zeppeiro; and a Deed of Trust signed by Peter Zeppeiro.  All the documents were signed in front of me, and the notarizations on all documents were dated October 15, 2002.

I explained to Peter and Jovita Zeppeiro that by signing the Declaration of Abandonment of Homestead, they would be abandoning their homestead on the property.  I explained to Jovita Zeppeiro that by signing the Grant Deed, she would be giving up her right to the property to her husband, Peter Zeppeiro.

Mr. Doug Zeppeiro was present for the entire signing process, and he left with the documents when I left.  It is my usual procedure to deliver documents to either UPS or FedEx; however Mr. Doug Zeppeiro requested that he take the documents since he was concerned that they might not otherwise make the 6:00 p.m. pickup time in Westlake.

This declaration of fact is made under penalty of perjury this 31st day August, 2005.

_____
Benita A. Colitti

## EXHIBIT 5

# EXIBIT "J"

805-658-6728                                                p.1



BENITA A. COLITTI

(805) 642-4189
FAX (805)658-6728

# FAX

| To: | Douglas Zippeiro | From: | Benita Colitti |
|---|---|---|---|
| At: | | | |
| Fax: | 805-497-7579 | Pages: | Cover only |
| Phone: | | Date: | June 30, 2005 |
| Re: | Notarization on October 15, 2002 | | |

Mr. Zeppeiro:

Thank you for faxing me your request for copy of the notarizations I performed on October 15, 2002. That copy is attached. Please note that the notary journal records information across two pages.

Thank you also for sending me a copy of the grant deed that I notarized. There are several problems with the copy that you sent.

#1.    The document is dated October 15, 2002. I do not notarize documents that are post-dated so I would not have notarized this particular document before the October 15, 2002 date.

#2.    On any documents that I notarize I do not use the numerals for the month, I always write out the month. In other words I would not have written 10/11/2002, but rather Oct. 11, 2002, or October 11, 2002.

#3.    The initials on the document are not my initials.

Please keep me advised in finding out who altered the grant deed. Forging my initials and changing the official date on a notarized document is a serious offense and if it can be determined who is responsible for doing this, I intend to take action against them.

CONFIDENTIAL

1136 Colina Vista, Ventura, CA 93003

EXHIBIT 6

Name & Address:
Law Offices of Patricia Rodriguez
Patricia Rodriguez
739 E. Walnut St., Suite 204
Pasadena, CA 91101

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PETER ZEPPEIRO

PLAINTIFF(S)

v.

GMAC Mortgage LLC., Homecomings Financial LLC.
f/k/a Homcomings Financial Network, Inc.Executive Trustee Services, LLC; Federal National
Mortgage Association akak Fannie Mae as Trustee for Fixed to Floating Rate Non-Cumulative
Preferred Stock Series 1; Mortgage Electronic Registration Systems, Inc aka MERS:
Does 1 through 10 inclusive

Defendants

CASE NUMBER

CV12-05357 ADC (DZx)

**SUMMONS**

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Patricia Rodriguez_____, whose address is _739 E. Walnut St., Suite 204, Pasadena, CA 91101_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUN 2 0 2012

Clerk, U.S. District Court

Dated: _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (10/11)                                   SUMMONS

Name & Address:
Law Offices of Patricia Rodriguez
Patricia Rodriguez
739 E. Walnut St., Suite 204
Pasadena, CA 91101

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

PETER ZEPPEIRO

PLAINTIFF(S)

v.

CASE NUMBER

CV12-05357 Abc(pzx)

GMAC Mortgage LLC., Homecomings Financial LLC.
f/k/a Homecomings Financial Network, Inc.Executive Trustee Services, LLC; Federal National
Mortgage Association akak Fannie Mae as Trustee for Fixed to Floating Rate Non-Cumulative
Preferred Stock Series 1; Mortgage Electronic Registration Systems, Inc aka MERS;
Does 1 through 10 inclusive

Defendants

**SUMMONS**

TO:   DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Patricia Rodriguez_____, whose address is _739 E. Walnut St., Suite 204, Pasadena, CA 91101_____ . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

JUN 2 0 2012

Dated: _____

Clerk, U.S. District Court

By: _____
**JULIE PRADO**
Deputy Clerk

*(Seal of the Court)*

1154

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

**CIVIL COVER SHEET**

**I (a) PLAINTIFFS** (Check box if you are representing yourself □)
Peter Zeppeiro

**DEFENDANTS**
GMAC Mortgage LLC., Homecomings Financial LLC. f/k/a Homcomings Financial Network, Inc.Executive Trustee Services, LLC; Federal National Mortgage Association akak Fannie Mae as Trustee for Fixed to Floating Rate Non-Cumulative Preferred Stock Series 1; Mortgage Electroni Registration Systems, Inc aka MERS; Does 1 through 10 inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Law Offices of Patricia Rodriguez
739 E. Walnut St., Suite 204, Pasadena, CA 91101
(626) 888-5206

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

□ 1 U.S. Government Plaintiff    ☑ 3 Federal Question (U.S. Government Not a Party)

□ 2 U.S. Government Defendant    □ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | □ 1 | □ 1 | Incorporated or Principal Place of Business in this State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   □ 2 Removed from State Court   □ 3 Remanded from Appellate Court   □ 4 Reinstated or Reopened   □ 5 Transferred from another district (specify):   □ 6 Multi-District Litigation   □ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** □ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** □ Yes ☑ No    □ **MONEY DEMANDED IN COMPLAINT:** $ to be determined at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
15 USC 1641(g)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| □ 400 State Reapportionment | □ 110 Insurance | □ 310 Airplane | □ 370 Other Fraud | □ 510 Motions to Vacate Sentence Habeas Corpus | □ 710 Fair Labor Standards Act |
| □ 410 Antitrust | □ 120 Marine | □ 315 Airplane Product Liability | □ 371 Truth in Lending | □ 530 General | □ 720 Labor/Mgmt. Relations |
| □ 430 Banks and Banking | □ 130 Miller Act | □ 320 Assault, Libel & Slander | □ 380 Other Personal Property Damage | □ 535 Death Penalty | □ 730 Labor/Mgmt. Reporting & Disclosure Act |
| □ 450 Commerce/ICC Rates/etc. | □ 140 Negotiable Instrument | □ 330 Fed. Employers' Liability | □ 385 Property Damage Product Liability | □ 540 Mandamus/ Other | □ 740 Railway Labor Act |
| □ 460 Deportation | □ 150 Recovery of Overpayment & Enforcement of Judgment | □ 340 Marine | **BANKRUPTCY** | □ 550 Civil Rights | □ 790 Other Labor Litigation |
| □ 470 Racketeer Influenced and Corrupt Organizations | | □ 345 Marine Product Liability | □ 422 Appeal 28 USC 158 | □ 555 Prison Condition | □ 791 Empl. Ret. Inc. Security Act |
| □ 480 Consumer Credit | □ 151 Medicare Act | □ 350 Motor Vehicle | □ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| □ 490 Cable/Sat TV | □ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | □ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | □ 610 Agriculture | □ 820 Copyrights |
| □ 810 Selective Service | | □ 360 Other Personal Injury | □ 441 Voting | □ 620 Other Food & Drug | □ 830 Patent |
| □ 850 Securities/Commodities/ Exchange | □ 153 Recovery of Overpayment of Veteran's Benefits | □ 362 Personal Injury- Med Malpractice | □ 442 Employment | □ 625 Drug Related Seizure of Property 21 USC 881 | □ 840 Trademark |
| □ 875 Customer Challenge 12 USC 3410 | □ 160 Stockholders' Suits | □ 365 Personal Injury- Product Liability | □ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| □ 890 Other Statutory Actions | □ 190 Other Contract | □ 368 Asbestos Personal Injury Product Liability | □ 444 Welfare | □ 630 Liquor Laws | □ 861 HIA (1395ff) |
| □ 891 Agricultural Act | □ 195 Contract Product Liability | | □ 445 American with Disabilities - Employment | □ 640 R.R. & Truck | □ 862 Black Lung (923) |
| □ 892 Economic Stabilization Act | □ 196 Franchise | **REAL PROPERTY** | | □ 650 Airline Regs | □ 863 DIWC/DIWW (405(g)) |
| □ 893 Environmental Matters | □ 210 Land Condemnation | | □ 446 American with Disabilities - Other | □ 660 Occupational Safety /Health | □ 864 SSID Title XVI |
| □ 894 Energy Allocation Act | □ 220 Foreclosure | **IMMIGRATION** | | □ 690 Other | □ 865 RSI (405(g)) |
| □ 895 Freedom of Info. Act | □ 230 Rent Lease & Ejectment | □ 462 Naturalization Application | □ 440 Other Civil Rights | | **FEDERAL TAX SUITS** |
| □ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | □ 240 Torts to Land | □ 463 Habeas Corpus- Alien Detainee | | | □ 870 Taxes (U.S. Plaintiff or Defendant) |
| □ 950 Constitutionality of State Statutes | □ 245 Tort Product Liability | □ 465 Other Immigration Actions | | | □ 871 IRS-Third Party 26 USC 7609 |
| | ☑ 290 All Other Real Property | | | | |

CV12 05357

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)    CIVIL COVER SHEET    Page 1 of 2

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
　　　　　　　　　　　　　　☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
　　　　　　　　　　　　　　☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
　　　　　　　　　　　　　　☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura County | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☑  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Ventura | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Patti Pin (SJO)_    Date June 15, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Audrey B. Collins and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV12- 5357 ABC  (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

Exhibit I

1  LAW OFFICES OF PATRICIA RODRIGUEZ
2  Patricia Rodriguez Esq., SBN 270639
   739 East Walnut Street, Suite 204
3  Pasadena, California 91101
   Office Phone: (626) 888-5206
4  Fax: (626) 844-6550

5  Attorney for Plaintiff
6  PETER ZEPPEIRO

FILED
CLERK, U.S. DISTRICT COURT

OCT 2 6 2012

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

7              **UNITED STATES DISTRICT COURT**

8       **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

9  PETER ZEPPEIRO                          ) Case No. 12-CV-05357 ABC (RZx)
                                           ) Hon. Audrey B. Collins
10              Plaintiff,                  ) Crtm. 680
                                           )
11       vs.                               ) **VERIFIED FIRST AMENDED**
                                           ) **COMPLAINT FOR:**
12  GMAC MORTGAGE, LLC;                    )
   HOMECOMINGS FINANCIAL LLC. f/k/a        ) 1.   QUIET TITLE
13  HOMECOMINGS FINANCIAL                  ) 2.   BREACH OF CONTRACT
   NETWORK, INC.; EXECUTIVE               ) 3.   LACK OF STANDING
14  TRUSTEE SERVICES, LLC; FEDERAL         ) 4.   VIOLATION OF 15 U.S.C. §1641(g) –
15  NATIONAL MORTGAGE ASSOCIATION          )      TRUTH IN LENDING ACT (TILA)
   aka FANNIE MAE as TRUSTEE FOR          ) 5.   CANCELLATION OF WRITTEN
16  FIXED TO FLOATING RATE NON-            )      INSTRUMENT [CA CIVIL CODE
   CUMULATIVE PREFERRED STOCK             )      §3412];
17  SERIES 1; MORTGAGE ELECTRONIC          ) 6.   VIOLATION OF BUSINESS &
   REGISTRATION SYSTEMS, INC., aka        )      PROFESSIONS CODE §17200 ET
18  MERS; DOES 1 THROUGH 10,               )      SEQ AND CALIFORNIA PENAL
19  INCLUSIVE                              )      CODE §§115.5 & 532(f)(a)(4);
                                           )
20              Defendants.                )
                                           )
21                                         ) **DEMAND FOR JURY TRIAL**
                                           )
22                                         )
                                           )
23                                         )
                                           )
24                                         )

25
26       COMES NOW Peter Zeppeiro (hereinafter "Plaintiff") complaining of the Defendants,
   and each of them, as follows:
27

28

                                     1
                    **VERIFIED FIRST AMENDED COMPLAINT**

24  and Deed of Trust, resulting in imperfect security interests and claims.

establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

7. Plaintiff alleges that an actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of his rights with regard to the Home and the corresponding Promissory Note and Deed of Trust.

8. Plaintiff also seeks redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

    a.  The alteration and revision of the Deed of Trust and Grant Deeds without the knowledge and/or consent of Plaintiff or the Notary;

    b.  An invalid and unperfected security interest in the Home hereinafter described;

    c.  An incomplete and ineffectual perfection of a security interest in the Home;

    d.  Violations of California Business and Professions Code §17200 (Unfair Business Practices) and California Penal Code §115.5; and

    e.  A void or voidable Deed of Trust due to improper securitization, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

## THE PARTIES

9. Plaintiff is now, and at all times relevant to this action, a resident of the County of Ventura, State of California. Plaintiff is the borrower and obligor under the Note and Deed of Trust that are the subject of this action. Plaintiff currently resides in the Home and has lived there at all times since 1994.

10. Defendant, GMAC MORTGAGE, LLC ("GMAC"), Plaintiff is informed and believes, and thereon alleges, is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 1100 Virginia Drive, Fort Washington, PA 19034. Plaintiff is further informed and believes, and thereon alleges, that GMAC is the present purported Master Servicer of the mortgage herein and/or is a purported

3

**VERIFIED FIRST AMENDED COMPLAINT**

participant in the imperfect securitization of the Note and/or the Deed of Trust dated October 11, 2002, herein (Exhibit "A"), as more particularly described in this Complaint.

11. Defendant HOMECOMINGS FINANCIAL, LLC. (hereinafter "HOMECOMINGS FINANCIAL"), formerly known as Homecomings Financial Network, Inc., Plaintiff is informed and believes, and thereon alleges is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 8400 Normandale Lake Blvd., Ste 350, Bloomington, MN 55437, and is the original lender of the Note.

12. Defendant, EXECUTIVE TRUSTEE SERVICES, LLC (hereinafter "ETS"), Plaintiff is informed and believes, and thereon alleges, is a Delaware Limited Liability Company, doing business in the County of Ventura, State of California, whose last known address is 2255 North Ontario Street, Suite 400, Burbank, CA 91504 and is the purported Foreclosure Trustee of the mortgage herein and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust dated October 11, 2002, herein, as more particularly described in this Complaint.

13. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION aka Fannie Mae ("FANNIE MAE") as Trustee for Fixed to Floating Rate Non-Cumulative Preferred Stock Series 1 ("Series 1"), Plaintiff is informed and believes, and thereon alleges, is a national banking association, doing business in the County of Ventura, State of California, whose last known address of its corporate headquarters at 3900 Wisconsin Avenue, N.W. Washington, D.C. 20016 and is the purported Trustee for the Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust dated October 11, 2002, herein, as more particularly described in this Complaint.

14. Defendant, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, Inc. aka MERS (hereinafter "MERS"), Plaintiff is informed and believe, and thereon alleges, is a corporation duly organized and existing under the laws of Delaware, whose last known address

is 1818 Library Street, Suite 300, Reston, Virginia 20190; website: http://www.mersinc.org. MERS is doing business in the County of Ventura, State of California. Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Deed of Trust herein dated October 11, 2002, and/or is a purported participant in the imperfect securitization of the Note and/or the Deed of Trust, as more particularly described in this Complaint.

15. The Home commonly, known as 6393 Calle Bodega, Camarillo, County of Ventura, California 93012 (the "Property" or "Home"), is further described as Assessor's Parcel Number 169-0-263-245. The legal description of the Home is:

Parcel 1:
"LOT 1038 OF TRACT NO. 2381-7, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 75, PAGES 86 TO 91 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN IN LOT 1038-A ON THAT CERTAIN LOT LINE ADUSTMENT RECORDED NOVEMBER 30, 1978 AS FILE NO. 131993, IN BOOK 5271, PAGE 941 TO 947, INCLUSIVE OF OFFICIAL RECORDS."

Parcel 2:
"LOT 36 AND 65 OF THE RANCHO CALLEGUAS, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, SHOWN ON THE MAP RECORDED IN BOOK 17, PAGE 16 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY..."

16. Plaintiff does not know the true names, capacities, or basis for liability of Defendants sued herein as DOES 1 through 10, inclusive, as each fictitiously named Defendant is in some manner liable to the Plaintiff, or claims some right, title, or interest in the Home. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the

5

**VERIFIED FIRST AMENDED COMPLAINT**

injuries and damages to Plaintiff so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

17. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

## DOCUMENTS

18. The documents pertinent to this case which have been recorded in the public record for the Home are as follows:

a.  A *Grant Deed* recorded on March 16, 1995 in the Ventura County Recorder's office as Instrument No. 95-030685 conveying title to Jovita Zeppeiro. A true and correct copy thereof is attached hereto, marked Exhibit "A" and is incorporated herein by reference;

b.  An *Unaltered Grant Deed* notarized on September 6, 2002 conveying title from Jovita Zeppeiro to Peter Zeppeiro. A true and correct copy thereof is attached hereto, marked Exhibit "B" and is incorporated herein by reference;

c.  A *Grant Deed* notarized on September 6, 2002 and recorded on November 12, 2002 in the Ventura County Recorder's office as Instrument No. 2002-0280567, which appears to convey title from Jovita Zeppeiro to "Jovita Zeppeiro and Peter Zeppeiro wife and husband as Joint Tenants." A true and correct copy thereof is attached hereto, marked Exhibit "C" and is incorporated herein by reference;

d.  A *Grant Deed* dated October 15, 2002 and recorded on October 24, 2002 which appears to convey title from "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants" to Peter Zeppeiro, a married man as his sole and separate property. A true and correct copy thereof is attached hereto, marked Exhibit "D" and is incorporated herein by reference;

e.  A *Balloon Note* dated October 11, 2002 in the amount of $300,700.00, referencing the Lender Homecomings Financial Network, Inc., and *Amendment to Escrow Instructions* from American Title Company. A true and correct copy thereof is attached hereto, marked Exhibit "E" and is incorporated herein by reference;

6

f.    A **Deed of Trust** dated October 11, 2002, recorded on October 24, 2002, in the Ventura County Recorder's office as Instrument No. 2002-0260124-00, referencing loan amount of $300,700.00. A true and correct copy thereof is attached hereto, marked Exhibit "F" and is incorporated herein by reference;

g.    A **Quitclaim Deed** recorded on October 30, 2002 in the Ventura County Recorder's office as Instrument No. 2002-0266608 in which Plaintiff conveys title to Mary and Douglas Zeppeiro. A true and correct copy thereof is attached hereto, marked Exhibit "G" and is incorporated herein by reference;

h.    A **Notice of Default and Election to Sell Under Deed of Trust** ("Notice of Default") recorded on April 28, 2010 in the Ventura County Recorder's Office as Instrument No. 20100428-00063990-0, referencing ETS Services, LLC ("ETS") as Trustee on behalf of the beneficiary, MERS. A true and correct copy thereof is attached hereto, marked Exhibit "H" and is incorporated herein by reference;

i.    A **Substitution of Trustee** dated April 26, 2010 and recorded on April 28, 2010, in the Ventura County Recorder's Office as Instrument No. 20100428-00063989-0. This document purports to substitute ETS as Trustee under said Deed of Trust. A true and correct copy thereof is attached hereto, marked Exhibit "I" and is incorporated herein by reference;

j.    A **Notice of Trustee's Sale** recorded on July 30, 2010, in the Ventura County Recorder's Office as Instrument No. 20100730-00111696-0, indicating that a Trustee Sale will take place on August 26, 2010. The Document is signed by a purported representative of ETS and identifies ETS as a "debt collector." A true and correct copy thereof is attached hereto, marked Exhibit "J" and is incorporated herein by reference;

k.    A **Quitclaim Deed** recorded on May 18, 2012 in the Ventura County Recorder's Office as Instrument No. 20120518-00090514-0 in which Mary and Douglas Zeppeiro convey 1/3 interest to Peter Zeppeiro. A true and correct copy thereof is attached hereto, marked Exhibit "K" and is incorporated herein by reference.

## FACTUAL ALLEGATIONS

19. On or about March 16, 1995, the Property was vested in Jovita Zeppeiro's ("Jovita") name as a "married woman as her sole and separate property." A true and correct copy thereof is attached hereto, marked Exhibit "A".

20. On or about September 6, 2002, incident to a loan transaction, Defendants were to deliver to escrow a Grant Deed in which Jovita, "a married woman as her sole and separate

7

property" was to convey title to Peter Zeppeiro as "a married man as his sole and separate property." Jovita executed this Grant Deed before a notary on September 6, 2002 at Kinko's in Camarillo, California. (hereinafter, "Grant Deed 1"). After Grant Deed 1 was notarized, it was sent via FedEx to escrow. A true and correct copy thereof is attached hereto, marked Exhibit "B".

21. Subsequently, following the notarization of Grant Deed 1 on September 6, 2002, Plaintiff was advised HOMECOMINGS FINANCIAL and its agents that Grant Deed 1, which had already been signed and notarized, had to be revised and that the September 6, 2002 Grant Deed would be returned to Plaintiff unrecorded. Plaintiff was told that Defendant HOMECOMINGS FINANCIAL would send out *their own notary* to the Plaintiff's residence on October 15, 2002 to obtain new signatures for the documents.

22. On or about October 15, 2002, Defendants drafted a replacement Grant Deed that had vesting listed as "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants" to "Peter Zeppeiro, a married man as his sole and separate property." (hereinafter, "Grant Deed 2"). A true and correct copy thereof is attached hereto, marked Exhibit "D." Title was *never* vested in this manner as "joint tenants" but was rather held *solely* in the name of Jovita.

23. On or about October 14, 2002, Plaintiff was advised via phone by agents of HOMECOMINGS FINANCIAL to sign a Trust Deed and the newly revised Grant Deed. True and correct copies are attached hereto, marked Exhibit "D" and Exhibit "F". The Trust Deed was dated October 11, 2002 and did not include a legal description for the Property. The Trust Deed was notarized on October 15, 2002.

24. At some point after signing the Trust Deed and delivering it to the escrow company, Defendants altered the Trust Deed by adding a legal description to the document. Not only did Defendants add a legal description to the document; they added the *wrong legal description* by using the neighbor's lot number instead. This alteration to the Trust Deed was done *without the knowledge or consent* of the Plaintiff and before delivery to the Plaintiff.

**VERIFIED FIRST AMENDED COMPLAINT**

25. Subsequently, the revised Grant Deed (Grant Deed 2) was delivered to escrow. This second and revised Grant Deed was *also altered* to reflect that the dates of notarization took place on October 11, 2002, when in fact, the notarization took place on October 15, 2002. This was intentionally altered and backdated to match the pre-dated Trust Deed, which reflected the date of October 11, 2002. In addition to the date being altered, the notary's initials were forged as well, which allegedly and falsely confirmed that the changes were being made by the Notary. The Grant Deed was *altered without the knowledge or consent* of the Plaintiff or the Notary. This is confirmed by the Notary's sworn statement. A true and correct copy of the Notary's sworn statement is attached hereto, marked Exhibits "L" and "M".

26. As per sworn statements by the Notary, Benita A. Colitti, Commission Number 1318973, Ms. Colitti at no time, changed, authorized, or had knowledge of the changes made to the Deed. In addition, per her Notary log, the signatories were not present on 11th of October; instead, they were present before her on the 15th of October. Also, Ms. Colitti confirms that she did not place her initials on the document confirming that changes were made. She further states that she does not enter dates on documents in numeric format; nor does she ever notarize post dated or ante dated documents.

27. Moreover, at some point after the close of escrow and after the recording of the October 15, 2002 altered document on October 24, 2002 and before the September 6, 2002 Grant Deed was recorded on November 12, 2002, the original September 6, 2002 Grant Deed was altered by typing "xxxxxx" across the original vesting listed the Grantee as "Peter Zeppeiro, a Married Man as His Sole and Separate Property." The vesting was changed to "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants." The Grant Deed was altered without the knowledge or consent of the Plaintiff and was recorded contrary to the direct wishes of the parties. It was previously agreed by all parties that this Grant Deed would be returned to Plaintiff and replaced in escrow by the October 15, 2002 Grant Deed.

28. On or about November 12, 2002, three weeks after the close of escrow, the altered version of the September 6, 2002 Grant Deed was recorded under Title Number 02211839 and Escrow Number 75709-MCW. (Exhibit "C").

29. All three documents, mentioned above, bear the same Title Number of 02211839 and Escrow Number of 75709-MCW, thereby confirming that all three of these *forged* and *altered* documents are part of *one single transaction*.

30. The Deed of Trust in this case gives the appearance of being a certified copy of the original recorded Deed. However, the purported certification of the Deed is defective; it states only "I hereby certify that this is a true and exact copy of the Original."

31. In addition, the original lender for this loan was HOMECOMINGS FINANCIAL, as evidenced by the attached Deed of Trust (Exhibit "F"). The original Trustee under the Deed of Trust was AMERICAN TITLE. The original beneficiary and nominee under the Deed of Trust was MERS.

32. Plaintiff, relying on the Grant Deed and Deed of Trust that he signed and believed to be valid, Plaintiff executed a Quitclaim Deed to Mary and Douglas Zeppeiro, which was recorded on October 30, 2002. A true and correct copy of the Quitclaim Deed is attached hereto, marked Exhibits "G".

33. On May 17, 2012, Mary and Douglas Zeppeiro executed a Quitclaim Deed, reverting 1/3 interest in the Home back to Plaintiff. A true and correct copy of this Quitclaim Deed is attached hereto, marked Exhibits "K".

## FACTUAL ALLEGATIONS REGARDING THE TRUST

34. Plaintiff, a homeowner, disputes the title and ownership of the real property in question ("the Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note (the "Note") and Deed of Trust (the

10

"Deed" or "DOT") related to the Home, and, thus, do not have lawful ownership or a security interest in the Home as further described herein below.

35. Plaintiff further alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the borrower's original Note and the Deed, resulting in imperfect security interests and claims.

36. Plaintiff alleges that an actual controversy has arisen and now exists between Plaintiff and Defendants, and each of them. Plaintiff desires a judicial determination and declaration of his rights with regard to the Home and the corresponding Note and Deed.

37. Plaintiff is informed and believes, and thereon alleges, that this loan was securitized, with the Note not being properly transferred to Defendant, FANNIE MAE, acting as the Trustee for the Securitized Trust.

38. Plaintiff alleges that Defendant FANNIE MAE violated 15 U.S.C. § 1641(g).

39. Plaintiff alleges that if GMAC Mortgage claims to be a creditor, and not just a servicer of the loan, then GMAC also violated 15 U.S.C. § 1641(g).

40. Plaintiff's information and belief is based on (1) a securitization analysis report and review of the Home's county records; (2) direct written and oral communication with Defendants; (3) his counsel's research, experience, and extensive review of case law, correspondence, news articles, and publicly available securitization documents and practices; and (4) FANNIE MAE's filings with the SEC including FANNIE MAE's 8K and Offering Circular.

41. Plaintiff is informed and believes that after the origination and funding of the Loan, HOMECOMINGS FINANCIAL transferred Plaintiff's Note to FANNIE MAE. The Note was then sold to an investment trust and became part of, or was subject to a Pooling and Servicing Agreement, a Collateralized Debt Obligation, a Mortgage-Backed Security, a Mortgage Pass-Through Certificate, a Credit Default Swap, the Real Estate Mortgage Investment Conduit ("REMIC") rules, and an Investment Trust, specifically the SERIES 1 TRUST. Although the

transaction occurred, the transfer of interest failed to comply with the terms of the Pooling and Servicing Agreement ("PSA"), the governing document of the Trust, creating the instant situation where the security is not actually backed by any mortgages at all.

42. An essential aspect of the mortgage securitization process is that the Trust must obtain good title to the loans comprising the pool for that certificate offering. This is a prerequisite for the Trustee of the Securitized Trust in order to legally enforce the mortgage loans in case of default. As part of the process, the promissory note and the deed of trust must be validly transferred to the Trust. In this case, the original lender failed to record a transfer of the beneficial interest to FANNIE MAE, as Trustee for the SERIES 1 TRUST, on or before the "closing date". The "closing date" is the date by which all of the Notes and Mortgages must be transferred into the Trust. The failure to do so results in the Note and Mortgages not being part of the TRUST Res.

43. Since FANNIE MAE's security offerings are exempted from SEC registration requirements, the "closing date" is unknown to Plaintiff and the date upon which FANNIE MAE acquired an interest can only be determined through discovery.

44. Plaintiff further alleges that even if the Deed of Trust had been transferred into the Trust by the closing date, the transaction is still void, as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.

45. Plaintiff further alleges that no documents or records can be produced that demonstrate that prior to the closing date for SERIES 1, the Note was duly endorsed, transferred and delivered to SERIES 1, including all intervening transfers.  Nor can any documents or records be produced that demonstrate that prior to the closing date, the Deed of Trust was duly assigned, transferred and delivered to SERIES 1, including all intervening assignments.

---

12

**VERIFIED FIRST AMENDED COMPLAINT**

46. Plaintiff further alleges that any documents that purport to transfer any interest in the NOTE to SERIES 1 after the Trust closing date are void as a matter of law, pursuant to New York trust law and relevant portions of the PSA.

47. Plaintiff is further informed and believes, and thereon alleges, that the purported assignments and transfers of the debt or obligation did not comply with New York law, and/or other laws and statutes, and, thus, do not constitute valid and enforceable "True Sales." Any security interest in the Home was, thus, never perfected. The alleged holder of the Note is not the beneficiary of the Deed of Trust. The alleged beneficiary of the Deed of Trust does not have the requisite title, perfected security interest or standing to proceed; and/or is not the real party in interest with regard to any action taken or to be taken against the Home.

48. Plaintiff is also informed and believes, and thereon alleges, that at all times herein mentioned, any assignment of a Deed of Trust without proper transfer of the obligation that it secures is a legal nullity.

49. Plaintiff also alleges that as of the date of the filing of this Complaint, the Deed of Trust had not been legally assigned to any other party or entity.

50. The only known Assignment is from MERS to GMAC Mortgage, recorded nearly ten (10) years after the origination of the loan. Upon information and belief, MERS did not have any rights to assign in 2012 after the loan was securitized and sold off to investors of the FANNIE MAE Trust. As a result, GMAC's efforts to foreclose on the Home are without right. Upon information and belief, GMAC has only servicing rights, if any, and is merely a third-party stranger to the loan transaction, falsely claiming to be the lawful creditor.

51. Plaintiff is informed and believes and thereon alleges that GMAC was acting as the Beneficiary of the DOT in 2012. It could not have been the Beneficiary because the loan was sold to FANNIE MAE. GMAC purported to act as the beneficiary and creditor and failed to disclose the true owner of the loan. Plaintiff relied on GMAC's representations and had no

**VERIFIED FIRST AMENDED COMPLAINT**

reason to believe that FANNIE MAE owned his loan as there is no record of an assignment to FANNIE MAE.

52. Plaintiff is informed and believes, and thereon alleges, that Defendant MERS lacks the authority under its corporate charter to foreclose on a mortgage, or to own or transfer an interest in a securitized mortgage because MERS' charter limits MERS' powers and duties to functioning as an electronic registration system of certain types of securities. MERS could not be both the nominee and the Beneficiary under the DOT.

53. As set forth hereinabove, Defendants, and each of them, violated the express terms of the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase Agreement, is the operative securitization document created by the finance and securitization industry to memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party to the securitization transaction to each other, and is a public document on file with the SEC. More specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to achieve their specific objectives.

54. Plaintiff is further informed and believes, and thereon alleges, that as a result of the PSA and other documents signed under oath in relation thereto, the Mortgage Originator, sponsor and Depositor[1] are estopped from claiming any interest in the Note that is allegedly secured by the Deed of Trust on the Home herein.

55. Plaintiff is informed and believe, and thereon alleges, that the Note in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Mortgage Originator to the Sponsor or to the Depositor nor from the Depositor to the Trustee for the Securitized Trust. Plaintiff further alleges, on information and belief, that the

---

[1] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

**VERIFIED FIRST AMENDED COMPLAINT**

PSA herein provides that the Mortgage Files of the Mortgages were to be delivered to SERIES 1, which Mortgage Files include the original Deeds of Trust, herein.

56. Based upon the foregoing, Plaintiff is further informed and believes, and thereon alleges, that the following deficiencies exist, in the "True Sale" and securitization process as to this Deed of Trust which renders invalid any security interest in the Plaintiff's mortgage, including, but not limited to:

      a.    The splitting or separation of title, ownership and interest in Plaintiff's Note and Deed of Trust of which the original lender owner and beneficiary of the Deed of Trust;

      b.    When the loan was sold to each intervening entity, there were no Assignments of the Deed of Trust to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

      c.    The failure to assign and transfer the beneficial interest in the Deed of Trust to FANNIE MAE in accordance with the PSA of the Defendants, as Securitization Participants;

      d.    The failure to endorse, assign and transfer the Note and/or mortgage to Defendant, Fannie Mae as Trustee for SERIES 1, in accordance with the PSA;

      e.    No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no true sales occurred as required under the PSA filed with the SEC; and

      f.    Defendants, and each of them, violated the pertinent terms of the PSA.

57. Plaintiff is informed and believe, and thereon alleges, that this unlawful, improper and oppressive method of attempting to securitize the Note and SERIES 1 has caused the value of the Home to significantly decrease and has, in effect, caused Plaintiff to lose either all of or a substantial part of the equity he would have created in the Home after making payments for many years (see discussion herein below).

**VERIFIED FIRST AMENDED COMPLAINT**

58. Plaintiff, therefore, alleges, upon information and belief, that none of the parties to the securitization transaction, nor any of the Defendants in this case, hold a perfected and secured claim in the Home; and that all Defendants are estopped and precluded from asserting an unsecured claim against the property.

59. In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiff seek an Order enjoining the Defendants from carrying out a foreclosure sale of the Home and Declaratory Relief as to whether the DOT secured any obligation of Plaintiff such that GMAC or ETS can foreclose or whether GMAC may collect Plaintiff's mortgage payments.

60. Plaintiff alleges that Defendants, and each of them, engaged in violations of California and federal law, including, but not limited to, 15 U.S.C. § 1641(g) and sections of the *Commercial Code*, as described herein.

61. Plaintiff alleges that Defendants are attempting to take advantage of the complex structured financial system to defraud yet another homeowner, commit fraud on the Court, and mislead Plaintiff into believing that Defendants are entitled to foreclose on his Home.

62. Plaintiff is informed and believes and thereon alleges that the Trust issued the investment bonds in the mortgage-backed Trust identified herein. Plaintiff further alleges that in order for the Defendants to have had a valid and enforceable security interest against the Property, the Defendants must prove that they received an endorsement of the Note. Absent such proof, Plaintiff alleges that neither MERS nor GMAC had standing to declare default and initiate foreclose on the Home. Moreover, under the rules governing securitization transactions, any assignments of the Deed of Trust beyond the specified closing date for the Trust are void.

63. Plaintiff is informed and believes and thereon alleges that the Note in this case was never actually transferred and delivered by HOMECOMINGS FINANCIAL to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust pursuant to the requirements of the PSA. Moreover, Plaintiff's Loan that was allegedly transferred to the Trust

16

**VERIFIED FIRST AMENDED COMPLAINT**

pursuant to the PSA was not listed in any of the documents filed by the Trust and available to the public at www.edgar.gov. Accordingly, Plaintiff alleges that the Note in this case was never lawfully negotiated and endorsed to the Trust.

64. Based upon information and belief, there are no valid Assignments to FANNIE MAE. Any documents that purport to transfer any interest in the Note to the SERIES 1 TRUST after the Closing Date are void as a matter of law.

65. The recorded "Assignment" is a fraudulent lien claim, and the execution, filing and recordation of the document was created for the purpose of facilitating and aiding and abetting the illegal, deceptive and unlawful foreclosure and collection of Plaintiff's mortgage payments.

66. Plaintiff further alleges that any amount allegedly owed under the Note is subject to equitable offset by the damages owed to Plaintiff from Defendants.

67. Plaintiff is further informed and believes that generally, if the Deed of Trust and the Note are not together with the same entity, there can be no enforcement of the Note. The Deed of Trust enforces the Note, and provides the capability for the lender to foreclose on the property. Thus, if the Deed of Trust and the Note are separated on foreclosure cannot occur; the Note cannot be enforced by the Deed of Trust if each contains a different mortgagee/beneficiary; and, if the Deed of Trust is not itself a legally enforceable instrument, there can be no valid foreclosure on the homeowners' property.

68. The gravamen of Plaintiff's complaint is that Defendants are attempting to foreclose without any legal authority or standing to do so, and in violation of State and Federal laws which were specifically enacted to protect consumers such as Plaintiff from the type of abusive, deceptive, and unfair conduct in which Defendants engaged, which are detailed herein, by failing to follow the procedures prescribed by such laws to foreclose property. Defendants' unlawful conduct caused Plaintiffs damages in an amount to be proven at trial.

///

///

17

**VERIFIED FIRST AMENDED COMPLAINT**

**FIRST CAUSE OF ACTION:**
**QUIET TITLE**
**(AGAINST ALL DEFENDANTS)**

69.     Plaintiff is the legal owner of 1/3 interest in the real property that is commonly known as 6393 Calle Bodega, Camarillo, County of Ventura, California 93012 [APN 169-0-263-245] and further described as:

Parcel 1:

"LOT 1038 OF TRACT NO. 2381-7, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 75, PAGES 86 TO 91 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, SHOWN IN LOT 1038-A ON THAT CERTAIN LOT LINE ADJUSTMENT RECORDED NOVEMBER 30, 1978 AS FILE NO. 131993, IN BOOK 5271, PAGE 941 TO 947, INCLUSIVE OF OFFICIAL RECORDS."

Parcel 2:

"LOT 36 AND 65 OF THE RANCHO CALLEGUAS, IN THE CITY OF CAMARILLO, COUNTY OF VENTURA, STATE OF CALIFORNIA, SHOWN ON THE MAP RECORDED IN BOOK 17, PAGE 16 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY…"

70. Defendants, and each of them, claim some right, title, estate, lien or interest in or to the subject Property adverse to Plaintiff's respective interests therein, and said claim or claims constitute a cloud on Plaintiff's title thereto.

71. Plaintiff seeks to quiet title against the claims of Defendants, and anyone else claiming interest in the property.

72. Defendants and any successors or assignees have no right to title or interest in the property and no right to entertain any rights of ownership including rights of possession.

73. Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff and that Defendants and each of them be declared to have no lien, estate, right, title or interest in the Subject Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right, title or interest in the Subject Property.

18

74. Plaintiff desires and is entitled to a judicial declaration that Plaintiff is the owner of the Property and that Defendants have no interest in the property adverse to Plaintiff's.

75. Plaintiff obtained title to the Home on or about August 29, 2002 pursuant to a Grant Deed from Jovita Zeppeiro. (Exhibit "B"). This Grant Deed is valid and Plaintiff is only disputing the subsequent alterations to this Deed and the October 15, 2002 Deed which serve only to cloud title.

76. Pursuant to this initial and lawful transfer of interest, Plaintiff obtained a loan in the amount of $300,700 evidenced by the Note (Exhibit "E"). The Note was intended to be secured by a Deed of Trust (Exhibit "F") however as further described below, the Deed is void on its face. Therefore Defendants claim to title is unsecured.

77. While Plaintiff retained possession and interest, he transferred title through a Quitclaim Deed to Mary and Douglas Zeppeiro on or about October 30, 2002. (Exhibit "G"). Plaintiff's 1/3 ownership interest reverted back to him on or about May 18, 2012. (Exhibit "K").

78. Plaintiff is informed and believes that due to the fact that the September 6, 2002 Deed (Exhibit "C") was altered by Defendants prior to delivery to the Plaintiff and without the knowledge or consent of the Plaintiff, this renders the Deed null and void *ab initio* and without effect as a matter of law.

79. Plaintiff is informed and believes that due to the fact that the October 15, 2002 Deed (Exhibit "D") was altered on its face by Defendants prior to delivery to the Plaintiff and without the knowledge or consent of the Plaintiff, this renders the Deed null and void *ab initio* and without effect as a matter of law.

80. Plaintiff is informed and believes that the Trust Deed recorded on October 24, 2002 was altered without the knowledge or consent of the Plaintiff. The Trust Deed was altered by attaching a legal description to the document that was not attached at the time of signing, said description was erroneous in that it refers to a parcel of land designated as "Lot 1037" instead

19

of "Lot 1038" which is the correct description of the property. (Exhibit "F"). As a result, the Deed is void on its face and the Note is therefore unsecured.

81. Plaintiff seeks determination of title as of May 18, 2012.

82. Plaintiff is informed and believes that Defendant's interest in the Home, if any, is unsecured as only the Promissory Note remains valid.

83. As a result, Defendants have no right, title, estate, lien or interest in or to the subject Property, or any part of portion thereof adverse to Plaintiff's respective interest therein or otherwise.

84. Based upon current case law, there is no obligation to tender the past amount due in an action such as this to prevent a sale, as opposed to attempts to unwind a sale. *See Silvia-Pearson v. BAC Home Loans Servicing, LP,* No. C11-01491, 2011 WL 2633406 (finding no basis for the tender rule where plaintiff challenges a pending foreclosure). *See also Tang v. Bank of America, N.A.* No . SACV-11-2048 DOC (DTBx), 2012 WL 960373, at *6 (C.D. Cal. Mar. 19, 2012) ["applying the tender rule to pending foreclosures would prevent any examination of irregularities in the foreclosure process, thus immunizing even deliberate disregard for statutory requirements"]; *Riggins v. Bank of America, N.A.* No. SACV-12-00033 DOC (MLGx). Therefore, there should be no bond or tender ordered.

85. There is also no obligation to tender where, as here, an exception to the tender rule applies. *Lona v. Citibank, N.A.,* 2011 WL 6391584.

86. Plaintiff is exempt from the tender requirement because the Trust Deed is void on its face.

87. Plaintiff is exempt from the tender requirement because his claims constitute a set-off against his debt, in that any money paid to the servicer that was not delivered to the true creditor would constitute an unjust enrichment by Defendants who unlawfully received payment under the void Deed.

88. It would be inequitable to require tender where Defendants stand to benefit from their own wrong. Tender is inequitable as it would affirm the Trust Deed which is void on its face.

## SECOND CAUSE OF ACTION:
## BREACH OF CONTRACT
## (AGAINST HOMECOMINGS FINANCIAL and GMAC)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

90. Plaintiff is informed and believes, and thereon alleges that HOMECOMINGS FINANCIAL breached the loan agreement by securitizing the loan and bundling it in with other loans and selling the same as an investment to third party investors, who are not disclosed nor otherwise known or knowable to the Plaintiff.

91. Plaintiff is informed and believes, and thereon alleges that HOMECOMINGS FINANCIAL further breached the loan agreement by selling the Plaintiff's loan to third parties who are immune to defenses to foreclosure and other contractual rights and remedies that the Plaintiff may have against the originator of the loan and would be able to seek redress from directly. Selling the Plaintiff's loan as an investment package, also created confusion and uncertainty as to who the actual owner of the note is and who if anyone, is able to enforce the note, and whether any the actual owner had properly designated and authorized any third party to collect and enforce the loan on its/their behalf, and thereby, severely compromised and cut-off the Plaintiff's ability to negotiate a loan modification or seek other loan default resolution directly with the party with a contractual interest in the loan. The selling off of the Plaintiff's loan caused a breach of the loan agreement as such selling off to unknown and undisclosed third parties, adversely affected the Plaintiff ' contractual rights. GMAC also breached the loan agreement, by enforcing a contract on behalf of those without a legal interest in the note as a security instrument and hold any interest if any, in the note as an investment only. GMAC knew or should have known that it had no legal right to attempt to collect on a note that had

**VERIFIED FIRST AMENDED COMPLAINT**

been converted to an investment and retained no right of enforcement based on such conversion by the original lender, which is now a subsidiary of GMAC.

92. Plaintiff is informed and believes, and thereon alleges that as a direct and consequential result of the selling off the loan as an investment product to third party investors, the Plaintiff has been caused to suffer economic damages, mental anguish and trauma, damage to his credit and other consequential and incidental damages proximately caused by the Defendants.

### THIRD CAUSE OF ACTION:
### LACK OF STANDING TO FORECLOSE
### (AGAINST GMAC and ETS)

93. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

94. An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the Home because Defendants, and each of them, have failed to perfect any security interest in the Home. Thus, the purported power of sale by the above-specified Defendants, and each of them, no longer applies. Plaintiff further contends that the above specified Defendants, and each of them, do not have the right to foreclose on the Home because said Defendants, and each of them, did not properly comply with the terms of Defendants' own securitization requirements and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

95. Plaintiff is informed and believes and thereon alleges that the only individual who has standing to foreclose is the holder of the note because they have a beneficial interest. The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks in the middle were paid in full.

96. Plaintiffs request that this Court find that the purported power of sale contained in the Note and Deed of Trust has no force and effect at this time, because Defendants' actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them.

97. In the instant action, the promissory note was split from the Deed of Trust. The Note was transferred to FANNIE MAE, while the Deed of Trust was transferred to GMAC. The Note was divided up and sold as certificates to investors; therefore, the only individuals who can lawfully commence foreclosure on this property are those certificate holders of the securitized trust.

98. Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying Note, is void under California law. Therefore, Defendant GMAC cannot establish that it is entitled to assert a claim in this case. For this reason Defendants, and each of them, through the actions alleged above, have illegally commenced foreclosure under the Note on the Property via a non-judicial foreclosure action supported by false or fraudulent documents. Said unlawful foreclosure action has clouded the title of the Property, which has caused and continues to cause Plaintiff great and irreparable injury in that real property is unique. Therefore Defendants should be enjoined from selling Plaintiff's Property during the pendency of this lawsuit.

### FOURTH CAUSE OF ACTION:
### VIOLATION OF 15 U.S.C. §1641(g)
### (AS AGAINST DEFENDANT FANNIE MAE)

99. Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.     The new subsection (g) added to §131 of TILA by §404 of the **Helping Families Save Their Homes Act of 2009** provides:

---

23

**VERIFIED FIRST AMENDED COMPLAINT**

(g) NOTICE OF NEW CREDITOR-

> **(1) In general** - In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—
>
> **(A)** the identity, address, telephone number of the new creditor;
>
> **(B)** the date of transfer;
>
> **(C)** how to reach an agent or party having authority to act on behalf of the new creditor;
>
> **(D)** the location of the place where transfer of ownership of the debt is recorded; and
>
> **(E)** any other relevant information regarding the new creditor.

Failure to comply with the requirements of this new subsection 131(g) of TILA may result in civil liability for actual damages, legal fees, and statutory damages under §130(a) of TILA.

101.   Plaintiff is informed and believes, and thereon alleges, that Homecomings Financial Network, Inc. was the original lender of the Note.

102.   Plaintiff is informed and believes, and thereon alleges, that the Note was purportedly assigned to Fannie Mae.

103.   Plaintiff is informed and believes, and thereon alleges, that Section 131(g) of TILA applies to FANNIE MAE as the purported and alleged assignee or owner of the debt.

104.   Plaintiff is informed and believes, and thereon alleges, that Section 131(g) of TILA requires FANNIE MAE to perform and comply with the requirements of the statute, otherwise face statutory and civil penalties and damages.

105.   Section 131(g) of TILA requires FANNIE MAE and any other creditor to perform and comply with the requirement of the statue, otherwise face statutory and civil penalties and damages.

106.   FANNIE MAE failed to provide Plaintiff with written notice within 30 days after the date on which it was allegedly assigned the mortgage.

107.   FANNIE MAE failed to provide Plaintiff with written notice indicating the exact date of the purported assignment of the interest in his Note, as required by §131(g)(1)(B).

108.    Plaintiff did not receive notice indicating how to reach an agent or party having authority to act on the new creditor's behalf, as required by § 131(g)(1)(C).

109.    Plaintiff did not receive notice indicating the location of the place where the transfer of ownership of the debt is recorded, as required by § 131(g)(1)(D).

110.    Plaintiff did not receive notice indicating any other relevant information regarding the new creditor, as required by § 131(g)(1)(E).

111.    Plaintiff did not discover the violation of 15 U.S.C § 1641 until he retained counsel and discovered that the Loan had been sold to FANNIE MAE. Plaintiff did not discover that FANNIE MAE claimed to own the Note until he obtained an audit on the property. He could not have with reasonable diligence discovered such facts because he did not receive a copy of the assignment as required by law. Therefore, the statute of limitation on this claim is equitably tolled.

112.    Tbus, FANNIE MAE violated § 131(g) 15 U.S.C. §1641 and is subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages pursuant to 15 U.S.C. §1640. The actual damages included but are not limited to the over calculation and overpayment of interest on Plaintiff's loan, the cost of repairing Plaintiff's credit, costs associated with removing the cloud on property title, and attorneys' fees and costs, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION:
## CANCELLATION OF WRITTEN INSTRUMENT [CA CIVIL CODE §3412]
## (AGAINST ALL DEFENDANTS)

113.    Plaintiff re-alleges and incorporates by reference paragraphs 19 through 32 and 68 through 79, as though fully set forth herein.

114.    On or about October 11, 2002, as alleged hereinabove, Plaintiff executed a series of written instruments, including but not limited to a Note and a Deed.

115.    The Deed of Trust is void and/or voidable for the reasons set forth hereinabove.

25

116.    If left outstanding, the Deed of Trust shall cause serious injury to Plaintiff, including but not limited to damage to his credit as well as obligations on a debt not owed to Defendants.

117.    Plaintiff is, therefore, entitled to have his Deed of Trust (Exhibit "F") adjudged void and/or voidable and cancelled, pursuant to California Civil Code §3412, and the debt declared unsecured.

118.    Based upon current case law, there is no obligation to tender the past amount due in an action such as this to prevent a sale, as opposed to attempts to unwind a sale. *See Silvia-Pearson v. BAC Home Loans Servicing, LP,* No. C11-01491, 2011 WL 2633406 (finding no basis for the tender rule where plaintiff challenges a pending foreclosure). *See also Tang v. Bank of America, N.A.* No . SACV-11-2048 DOC (DTBx), 2012 WL 960373, at *6 (C.D. Cal. Mar. 19, 2012) ["applying the tender rule to pending foreclosures would prevent any examination of irregularities in the foreclosure process, thus immunizing even deliberate disregard for statutory requirements"]; *Riggins v. Bank of America, N.A.* No. SACV-12-00033 DOC (MLGx). Therefore, there should be no bond or tender ordered.

119.    There is also no obligation to tender where, as here, an exception to the tender rule applies. *Lona v. Citibank, N.A.,* 2011 WL 6391584.

120.    Plaintiff is exempt from the tender requirement because the Trust Deed is void on its face.

121.    Plaintiff is exempt from the tender requirement because his claims constitute a set-off against his debt, in that any money paid to the servicer that was not delivered to the true creditor would constitute an unjust enrichment by Defendants who unlawfully received payment under the void Deed.

122.    It would be inequitable to require tender where Defendants stand to benefit from their own wrong. Tender is inequitable as it would affirm the Trust Deed which is void on its face.

**VERIFIED FIRST AMENDED COMPLAINT**

**SIXTH CAUSE OF ACTION:**
**UNFAIR BUSINESS PRACTICES IN VIOLATION OF CA BUSINESS &**
**PROFESSIONS CODE §17200 ET SEQ AND CA PENAL CODE §§115.5 & 532(f)(a)(4)**
**(AGAINST ALL DEFENDANTS)**

123.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

124.  Plaintiff is informed and believe, and thereon alleges, that Defendants, and each of them, engaged in unlawful, unfair or fraudulent business acts or practices and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of California Business and Professions Code §17200 and the Unfair and Deceptive Acts and Practices statutes.

125.    The above specified Defendants, and each of them, as part of their business practices, fraudulently and knowingly procured or offered false or fraudulently prepared documents to fabricate the missing gaps in the chain of title or to falsely demonstrate compliance with the PSA, California Codes and Regulations related to non-judicial foreclosure and allowed these documents to be filed, registered, or recorded in California in violation of California *Penal Code* §115.5.  The members of the public are likely to be deceived by this unlawful, oppressive and fraudulent business practices.

126.    Plaintiff alleges that Defendants, and each of them, cannot establish proper transfer and/or endorsement of the Promissory Note and proper assignment of the Deed of Trust; therefore, none of the Defendants have perfected any claim of title or security interest in the Home.  Defendants, and each of them, do not have the ability to establish that the mortgages that secured the indebtedness, or Note, were legally or properly acquired.  Defendants do not have the right to foreclose on the Home and the purported power of sale by the Defendants, and each of them, does not apply; therefore, their attempts to foreclose are unlawful.

127.    Plaintiff is informed and believes and thereon alleges that after the origination and funding of his Loan, it was sold or transferred to investors of the SERIES 1 TRUST. FANNIE MAE never recorded its claim of ownership in the Home prior to the Closing Date of the Trust.

27

FANNIE MAE also failed to disclose its ownership interest in the Home in violation of 15 USC 1641(g).

128.    Plaintiff is informed and believes, and therefore alleges that Defendant GMAC is the entity which is attempting to exercise the power of sale within the DOT. GMAC could not have obtained any interest in the Deed pursuant to an assignment from MERS because the loan was sold to investors ten years prior. MERS does not purport to act on behalf of said investors but rather acts on behalf of the original lender who sold its interest ten years prior. Therefore, on information and belief, at the time Defendants commenced foreclosure proceedings, they had no legal or equitable interest in the Note and DOT.

129.    Defendants falsely represented to Plaintiff that GMAC was the creditor of his Loan. Later, they falsely represented that GMAC owned his Loan. It is unclear to Plaintiff on whose behalf GMAC collected payments.

130.    Plaintiff is informed and believes and thereon alleges that if GMAC is the lawful creditor and owner of his loan, then GMAC is in violation of 15 USC 1641(g) as it failed to comply with the disclosure requirements under that statute.

131.    Plaintiff is informed and believe, and thereon alleges that Defendant MERS at all relevant times had knowledge that its interest in the Deed was invalid yet MERS still caused to be recorded the false documents with the county recorder in violation of California *Penal Code* §115.5(a). Further, the assignment recorded is signed by an individual purporting to be the "Assistant Secretary" of MERS. Plaintiff believes and thereupon alleges that this individual did not have the authority or capacity to sign on behalf of MERS to cause such substitutions or assignments. As such, Plaintiff is informed and believes, and thereon alleges that certain misrepresentations, including sworn statements, were made to the notary public to cause the notary public to perform an improper notarial act on a document in violation of California *Penal Code* §115.5(b).

132.     In addition, as specified hereinabove, Defendants altered the Trust Deed without *the knowledge or consent* of the Plaintiff or of the Notary. Defendants not only altered the legal description of the Property, they changed the date of the Grant Deed and forged the initials of the Notary. The Deed of Trust in this case gives the appearance of being a certified copy of the original recorded Deed. However, the purported certification of the Deed is defective; it states only "I hereby certify that this is a true and exact copy of the Original."

133.     Defendant ETS recorded the Notice of Default on April 28, 2010. In the NOD, MERS purports to be the Beneficiary under Plaintiff's Deed of Trust. As of that date, MERS had no interest in the Deed of Trust.

134.     On February 9, 2012, MERS recorded the Assignment of the Deed which purports to assign all beneficial interest to GMAC Mortgage. This Assignment is created to fill gaps in the chain of title and an effort by Defendants to conceal FANNIE MAE as the creditor. The recording of the belated and misleading Assignment constitutes an unlawful business practice.

135.     On March 1, 2012, Defendant ETS recorded another Notice of Default in which GMAC appears to be the Beneficiary. Because the Assignment to GMAC is invalid, the notice constitutes a misrepresentation of GMAC's interest in the loan.

136.     The business practices of the above specified Defendants, and each of them, were unlawful, deceptive, misleading and fraudulent and violate California law as alleged herein above. Further, the above-specified Defendants, and each of them, knew that their business practices were unlawful, deceptive, misleading and fraudulent at the time they were so engaged.

137.     Plaintiff is informed and believe, and thereon alleges, that Defendants knowingly recorded fraudulent documents with the Ventura County Recorder's Office with the intent to defraud Plaintiff in violation of CA *Penal Code* §532(f)(a)(4) and to institute wrongful foreclosure proceedings against their Home.

138.     Pursuant to Sections 17200 et seq. of the California *Business and Professions Code*, unfair business practices include any unlawful, unfair, misleading or fraudulent business practice. The fraudulent and unlawful conduct of the above specified Defendants, and each of them, as alleged herein, constituted unlawful, unfair and/or fraudulent business practices within the provisions of §§17200 et seq of the California *Business and Professions Code.*

139.     As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Plaintiff has incurred damages in that the Plaintiff's Home is now subject to foreclosure at the hands of the above specified Defendants, and each of them, all by reason of which Plaintiff has been damaged in at least the sum of the jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional amounts, according to proof at the time of trial.

140.     As a further direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, Plaintiff is entitled to an order or preliminary injunction prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Home.

## JURY DEMAND

141.     Plaintiff requests a jury for all triable issues.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, will ask for the following for each Cause of Action to be awarded:

1.     For Compensatory, Special and General Damages in an amount to be determined by proof at trial;

2.     For Punitive Damages in an amount to be determined by the Court;

3.     For Restitution as allowed by law;

4.     For Attorney's Fees and Costs of this action;

5.   For Declaratory Relief, including but not limited to the following Decrees of this Court that:

    a.   Plaintiff is the prevailing party;

    b.   All Grant Deeds altered by Defendants to be declared void due to the alteration and revisions of the Deeds without the consent or knowledge of the Plaintiff;

    c.   Defendants have no enforceable secured or unsecured claim against the Home;

    d.   No other party, whether known or unknown, has an enforceable secured or unsecured claim against the Home;

6.   For Injunctive Relief including but not limited to;

    a.   Preliminary and Permanent Injunction enjoining any and all Trustee Sales which may be scheduled by the Defendants herein;

    b.   An Order prohibiting Defendants, and each of them, from filing an unlawful detainer action or any other action against the Plaintiff;

7.   For Quiet Title against all Defendants whereby legal title and possession of the Property is transferred to the Plaintiff;

8.   For Cancellation of the DEED OF TRUST pursuant to California Civil Code §3412 herein;

9.   For any prejudgment or other interest according to law;

10.   For civil penalties pursuant to statute, restitution, and injunctive relief;

11.   Any other and further relief that the Court considers just and proper.


DATED: October 25, 2012                LAW OFFICES OF PATRICIA RODRIGUEZ

                                        Patricia Rodriguez, Esq.
                                        Attorney for Plaintiff
                                        Peter Zeppeiro

**VERIFIED FIRST AMENDED COMPLAINT**

1

## VERIFICATION

2

3      I, Peter Zeppeiro, am the Plaintiff in this action. I am informed and believe and on that
4
ground alleges that matters stated herein are true.
5
       I declare under penalty of perjury under the laws of the State of California that the
6
foregoing is true and correct.
7

8      Executed on _Oct. 24 2012_ in _Camarillo_, California.

9

10

11                                                _____
                                                  Peter Zeppeiro
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34
**VERIFIED FIRST AMENDED COMPLAINT**

1

## CERTIFICATE OF SERVICE

I am employed in the county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: 739 E. Walnut St., Suite 204, Pasadena, CA 91101.

I hereby certify that on this 25th day of October 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or by mail to those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

Executed this 25th day of October 2012 under penalty of perjury.

Venice Gamble

33
**VERIFIED FIRST AMENDED COMPLAINT**

Exhibit J

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|

| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. |
|---|---|

| Present: The Honorable | Audrey B. Collins, United States District Judge |
|---|---|

| Angela Bridges | None Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:**      ORDER GRANTING Motion to Dismiss (In Chambers)

Pending before the Court is Defendants Federal National Mortgage Association ("Fannie Mae") and Mortgage Electronic Registration Systems, Inc.'s ("MERS") (together "Defendants'") Motion to Dismiss First Amended Complaint ("FAC"), filed on November 13, 2012.  (Docket No. 18.)  Plaintiff Peter Zeppeiro opposed on November 26, 2012 and Defendants replied on December 3, 2012.  The Court previously found this matter appropriate for resolution without oral argument and vacated the hearing date.  (Docket No. 24.)  For the reasons below, the Court GRANTS the motion and DISMISSES the claims against MERS and Fannie Mae WITH PREJUDICE.

## BACKGROUND

Like many distressed homeowners, Plaintiff has filed this case to stave off foreclosure of his home after he failed to pay his mortgage.  In his original complaint, Plaintiff asserted a host of claims to stop the foreclosure sale and obtain damages: (1) quiet title (against all Defendants); (2) breach of contract (against Homecomings Financial LLC and GMAC Mortgage LLC ("GMAC")); (3) lack of standing to foreclose (against GMAC, Executive Trustee Services LLC ("ETS"), and MERS); (4) violation of California Civil Code section 2932.5 (against GMAC and MERS); (5) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g) (against Fannie Mae); (6) cancellation of written instrument under California Civil Code section 3412 (against all Defendants); (7) violation of California Business and Professions Code section 17200 (against all Defendants); and (8) intentional infliction of emotional distress (against all Defendants).  MERS and Fannie Mae moved to dismiss the claims against them (which amounted to all but the breach of contract claim).[1]  The Court granted the motion, and dismissed some claims with prejudice and granted leave to amend others.  (Docket No. 16.)[2]

---

[1]Defendants GMAC, Homecomings Financial LLC, and ETS filed a Notice of Bankruptcy on August 30, 2012, which stayed all proceedings against them, so the Court did not decide any issues related to those Defendants.  The petition remains pending so the Court again does not address any issues related to those Defendants.

[2]To the extent Plaintiff has attempted to replead claims that were dismissed with prejudice, they are barred and the Court will not address them again.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|
| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. | | |

Plaintiff filed the FAC on October 26, 2012, in response to the Court's Order.  The factual underpinning of the FAC remains unchanged.  On March 16, 1995, Jovita Zeppeiro obtained title to the property at issue as a "married woman as her sole and separate property." (FAC ¶ 19.)  On September 6, 2002, she conveyed title to Plaintiff as "a married man as his sole and separate property" in a Grant Deed that Plaintiff had notarized.  (Id. ¶ 20.)  Plaintiff alleges that he was told by Homecomings Financial that this Grant Deed had to be revised, so on October 15, 2002, it presented Plaintiff with a new draft deed that conveyed title from "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants" to "Peter Zeppeiro, a married man as his sole and separate property," although Plaintiff alleges that title was never vested as joint tenants.  (Id. ¶¶ 21–22, Ex. D.)

The Deed of Trust was dated October 11, 2002 and recorded on October 24, 2002.  (Id. ¶ 23, Ex. F.)  Plaintiff alleges that the Deed of Trust did not initially contain a legal description of the property and that, at some point after it was signed, Defendants added a legal description without his knowledge, and that description identified the wrong property.  (Id. ¶¶ 23–24.)  Plaintiff claims he did not know about this alteration, although he signed the Deed of Trust, which indicated that the legal description was attached.  (Id. ¶ 24.)

Plaintiff alleges that the Grant Deed was altered when it was delivered to escrow to reflect a notarization date of October 11, 2002 when it was notarized on October 15; Plaintiff claims this was done to make the Grant Deed predate the Deed of Trust, dated October 11.  (Id. ¶ 25.)  Plaintiff claims that the notary's initials on the Grant Deed confirming the date change were forged based on a 2005 declaration and a 2005 letter from the notary.  (Id. ¶ 25, Exs. L, M.)  Plaintiff further alleges that at some point after the Grant Deed was recorded, the Grant Deed was altered to strike out "Peter Zeppeiro, a Married Man as His Sole and Separate Property" and was replaced with "Jovita Zeppeiro and Peter Zeppeiro, wife and husband as Joint Tenants."  (Id. ¶ 27.)  That altered Grant Deed was then recorded on November 12, 2002, three weeks after escrow closed.  (Id. ¶ 28.)

Homecomings Financial was listed as the original lender, with American Title as the original trustee and MERS as the original beneficiary and nominee under the Deed of Trust.  (Id. ¶ 31.)  Like many residential loans, Plaintiff's note was transferred to Fannie Mae for placement in a securitized trust pursuant to a "Pooling and Servicing Agreement" ("PSA"), and Plaintiff alleges various flaws in that process allegedly rendering the transfer of his deed of trust invalid.  (Id. ¶¶ 34–68.)

On April 28, 2010, MERS recorded a substitution of trustee for ETS.  (Id., Ex. I.)  On the same date, ETS recorded a Notice of Default and Election to Sell.  (Id., Ex. H.)  And on July 30, 2010, ETS recorded a Notice of Trustee's Sale set for August 26, 2010.  (Id., Ex. J.)  The sale did not go forward on that date.

On February 2, 2012, MERS assigned the Deed of Trust to GMAC (Def. Request for Judicial

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|
| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. | | |

Notice ("RJN")[3], Ex. 3); on February 16, 2012, GMAC named ETS as trustee (id., Ex. 4); and on March 1, 2012, a Notice of Default was recorded against the property (id., Ex. 5). All of these documents were recorded. On July 5, 2012, Plaintiff recorded a Notice of Pendency of Action against the property in light of this case. (Id., Ex. 6.) As of the date of the pending motion, the property has not been sold.

As new allegations in the FAC, Plaintiff claims that he executed a Quitclaim Deed to Mary and Douglas Zeppeiro, which was recorded on October 30, 2002. (FAC, Ex. G.) Then, on May 17, 2012, Mary and Douglas Zeppeiro executed a Quitclaim Deed, granting Plaintiff a one-third interest in the property. (Id., Ex. K.)

Based on these facts, Plaintiff realleges the following claims in the FAC: (1) quiet title (against all Defendants); (2) breach of contract (against Homecomings Financial and GMAC); (3) lack of standing to foreclose (against GMAC and ETS); (4) violation of TILA, 15 U.S.C. § 1641(g) (against Fannie Mae); (5) cancellation of written instrument under California Civil Code section 3412 (against all Defendants); and (6) violation of California Business and Professions Code section 17200 (against all Defendants). Fannie Mae and MERS have again moved to dismiss the claims brought against them.[4]

### LEGAL STANDARD

A complaint survives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," which does not require "detailed factual allegations," but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009). A claim must be "plausible on its face," which means that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In other words, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations and alterations omitted). Allegations of fact are taken as true and construed in the light most favorable to the nonmoving party. See Newdow v. Lefevre, 598 F.3d 638, 642 (9th Cir. 2010).

In analyzing the sufficiency of the complaint, the Court must first look at the requirements of the causes of action alleged. See Iqbal, 556 U.S. at 675. The Court may then identify and disregard any legal conclusions, which are not subject to the requirement that the Court must accept as true all of the allegations contained in the complaint. Id. at 678. The Court must then decide whether well-pleaded factual allegations, when assumed true, "plausibly give rise to an entitlement to relief." Id. at 679. In

---

[3]The Court GRANTS Defendants' unopposed Request for Judicial Notice. See Fed. R. Civ. P. 201.

[4]Because Plaintiff's breach of contract and lack of standing claims were not brought against Fannie Mae or MERS, the Court does not address them herein.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|
| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. | | |

doing so, the Court may not consider material beyond the pleadings, but may consider judicially noticeable documents, documents attached to the complaint, or documents to which the complaint refers extensively or which form the basis of the plaintiff's claims in the complaint.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

### DISCUSSION

**A.    Quiet Title**

As the Court previously explained, under California Civil Code section 760.020(a), a party may seek to establish title in a property as against adverse claims, so long as the Complaint is verified and sets out certain information required by statute.  See § 761.020.  However, in order for a mortgagor to quiet title against a mortgagee, the mortgagor must pay the amount he or she owes on the debt.  See Hamilton v. Bank of Blue Valley, 746 F. Supp. 2d 1160, 1170 (E.D. Cal. 2010).  There are four exceptions to this "tender" requirement: (1) the action attacks the validity of the underlying debt; (2) the mortgagor has a counter-claim or setoff against the mortgagee; (3) requiring tender would be inequitable; and (4) the trustee's deed is void on its face.  Lona v. Citibank, N.A., 202 Cal. App. 4th 89, 112–13 (2011).

Plaintiff attempts to invoke the "void" exception by arguing that he is entitled to quiet title because the September 6 and October 15 Grant Deeds and the October 24 Deed of Trust were altered without his knowledge, rendering them void.  But that does not render the underlying Deed of Trust void; rather, even if he succeeded on this claim, he would still owe the balance on his mortgage once title was settled, which he does not dispute.  See Manantan v. Nat'l City Mortg., No. C-11-00216 CW, 2011 WL 3267706, at *5 (N.D. Cal. July 28, 2011) (requiring tender on quiet title claim based on alleged fraud in loan transaction because the "alleged fraud may void the transaction between Plaintiff and Defendants, but it would not allow Plaintiff to gain quiet title and keep the money she borrowed.").  These facts once again do not state an exception to the tender rule and this claim must be dismissed.

**B.    TILA, 15 U.S.C. § 1641(g)**

Plaintiff again alleges that Fannie Mae violated § 1641(g) of TILA because his loan was transferred at some point to Fannie Mae, but Fannie Mae did not notify him of the transfer within 30 days as required by § 1641(g).  This claim still fails because Plaintiff has not alleged when the transfer occurred or why Fannie Mae is even subject to § 1641(g), especially given that Plaintiff also alleges that any transfer to Fannie Mae was invalid.  (FAC ¶ 37.)  Moreover, Plaintiff has not alleged that he detrimentally relied on any failure to disclose the transfer.  See Derusseau v. Bank of Am., N.A., No. 11 CV 1766 MMA (JMA), 2012 WL 1059928, at *4 (S.D. Cal. Mar. 28, 2012) (dismissing similar allegations for failing to identify the date of the transfer or that plaintiff detrimentally relied on the failure to disclose).  This claim must be dismissed.

**C.    Cancellation of Written Instrument, Cal. Civ. Code § 3412**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|
| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. | | |

Plaintiff again seeks cancellation of his Deed of Trust pursuant to California Civil Code section 3412. Cancellation here is subject to the tender requirement, see Fleming v. Kagan, 189 Cal. App. 2d 791, 796 (1961), and Plaintiff has not alleged that he can tender the amount outstanding on his loan or that a valid exception applies.

Moreover, a cancellation claim is subject to a five-year statute of limitations. See Robertson v. Super. Ct., 90 Cal. App. 4th 1319, 1328 (2001). As alleged in the FAC, Plaintiff signed the Deed of Trust in October 2002, so his cancellation claim expired in October 2007.

Plaintiff seems to suggest that the statute of limitations should be tolled because he did not discover his injury until later. "'A plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.'" E-Fab, Inc. v. Accountants, Inc. Servs., 153 Cal. App. 4th 1308, 1319 (2007) (emphasis in original). Plaintiff alleges no facts to suggest that the discovery rule applies to his claim; indeed, he does not even acknowledge the delay in the FAC, despite the Court raising the issue on the prior motion to dismiss. To the contrary, Plaintiff likely knew about the alleged fraud as far back as 2005 in light of the June 2005 letter to Plaintiff's father from the notary who claimed that there were several problems with the 2002 Grant Deed. On that basis, the five-year statute of limitations expired in 2010, but Plaintiff did not file this lawsuit until June 2012. This claim must therefore be dismissed.

### D.    Bus. & Prof. Code § 17200

Plaintiff's section 17200 claim is based on the same allegations as in his original Complaint regarding flaws in the securitization process. (FAC ¶¶ 125–37.) The Court need not delve into Plaintiff's factual allegations a second time because they fail to state a violation of section 17200 for the reasons the Court explained in the Order dismissing Plaintiff's original complaint. See, e.g., Lane v. Vitek Real Estate Indus. Group, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (rejecting argument that securitization deprives MERS and trustees of authority to foreclose on the Deed of Trust).[5]

---

[5]The Court previously dismissed this claim with prejudice to the extent that it was based on fraudulent alterations to the Grant Deed and Deed of Trust in 2002 because that claim was barred by a four-year statute of limitations. Cal. Bus. & Prof. Code § 17208. The Court found that the discovery rule did not apply to section 17200, citing Snapp & Associates Insurance Services, Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 891 (2002). The California Supreme Court subsequently disapproved of Snapp, holding that common law limitations rules, including the discovery rule, apply to section 17200 claims. Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185 (2013). In any case, Plaintiff has not alleged any facts that would support tolling the limitations period. Rather, as noted above, the FAC makes clear that Plaintiff likely knew about any alleged fraud by 2005, so his claim is untimely even if measured from 2005.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 12-5357 ABC (RZx) | Date | February 13, 2013 |
|---|---|---|---|
| Title | Peter Zeppeiro v. GMAC Mortgage, LLC, et al. | | |

### CONCLUSION

The Court GRANTS Defendants' motion and DISMISSES all Plaintiff's claims brought against MERS and Fannie Mae WITH PREJUDICE because Plaintiff has already had an opportunity to amend. See Cafasso v. Gen. Dynamics C4 Sys., 637 F.3d 1047, 1058 (9th Cir. 2011).

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer                AB

Exhibit K

RODRIGUEZ LAW GROUP, INC.
Patricia Rodriguez, Esq., SBN 270639
1961 W. Huntington Drive, Suite 201
Pasadena, CA 91801
Telephone: (626) 888-5206
Facsimile: (626) 282-0522

Attorneys for Plaintiff
PETER ZEPPEIRO

VENTURA
SUPERIOR COURT
FILED

DEC 03 2013

MICHAEL D. PLANET
Executive Officer and Clerk
BY _Ina Muckey_, Deputy
**Ina Muckey**

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF VENTURA

| | |
|---|---|
| PETER ZEPPEIRO, an Individual; | Case No. 56-2013-00445530-CU-OR-VTA |
| Plaintiff, | **VERIFIED COMPLAINT:** |
| v. | **(1) WRONGFUL FORECLOSURE;** |
| GREEN TREE SERVICING, LLC; NORTHWEST TRUSTEE SERVICES, INC. and DOES 1 to 10 inclusive | **(2) VIOLATION OF CAL. CIV. CODE §2924.11;** |
| | **(3) VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200** |
| Defendants. | **REQUEST FOR JURY TRIAL** |

File by Fax

1

VERIFIED COMPLAINT

PETER ZEPPEIRO, an Individual, alleges as follows:

## PARTIES

1.     Plaintiff PETER ZEPPEIRO ("Plaintiff") is a resident of Camarillo, Ventura County, California.  Plaintiff has his primary residence within the aforementioned county.

2.     Plaintiff is informed and believes, and thereon alleges that Defendant GREEN TREE SERVICING, LLC ("GREEN TREE") is a business entity, authorized to do business in California, with an entity address of 1400 Landmark Towers, 354 St. Peter St, Saint Paul, Minnesota.  Based upon information and belief, the Plaintiff alleges that GREE TREE SERVICING, LLC. is the Servicer of the loan.

3.     Plaintiff is informed and believes and upon such information and belief alleges that Defendant NORTHWEST TRUSTEE SERVICES, INC. ("NORTHWEST") is a corporation authorized to do business in the state of California.  Plaintiff is informed and believes that NORTHWEST is in the business of conducting non-judicial foreclosures in California and acted as the foreclosure trustee herein.

4.     The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title or any cloud on Plaintiff's title thereto" are hereinafter sometimes referred to as the "unknown defendants" and are unknown to the Plaintiff.  These unknown defendants and each of them claim or appear to claim some right, title, estate, lien, or interest in the property described herein, adverse to Plaintiff's title.  Their claims, and each of them, constitute a cloud on Plaintiff's title to the property.

5.     Defendants sued herein as DOES 1 through 10 are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants is indebted to the Plaintiff as hereinafter alleged.

6.     The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and

2

VERIFIED COMPLAINT

severally, not only named Defendants, but all Defendants designated as well.

7.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants were agents, employees, servants, alter egos, superiors, successors in interest, and/or the joint venturers of their co-defendants and in doing the things alleged herein, were acting within the course and scope of such agency, employment and/or joint venture and, consequently, each Defendant named herein are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

8.     Defendants, and each of them, knowingly and willfully engaged in a common course of conduct to accomplish the wrongs complained of herein.  In taking action, as alleged herein, to substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

9.     The purpose and effect of the common enterprise complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent activities. Defendants accomplished their common enterprise by engaging in unlawful dual tracking by initiating foreclosure proceedings on Plaintiff's HOME while at the same time reviewing Plaintiff for a loss mitigation loan modification.   Each Defendant was a direct, necessary and substantial participant in the common enterprise complained of herein, and was aware of its overall contribution to and furtherance thereof.

10.    Defendant's wrongful acts include, inter alia, initiation of the unlawful foreclosure Plaintiff's Property by Defendants, despite Plaintiff's open and active loss mitigation efforts.

## JURISDICTION

11.    At all times relevant to this action, PETER ZEPPEIRO has owned the property known as 6393 Calle Bodega, Camarillo, CA. 93012 ("Home" or "Property").

12.    The transactions and events that are the subject matter of this Complaint all

3

VERIFIED COMPLAINT

occurred within the County of Ventura, State of California.

## GENERAL ALLEGATIONS

13.     On or about October 15, 2002, Plaintiff entered into a loan transaction with Homecomings Financial Network, Inc. to finance the residential property that is commonly known as 6393 Calle Bodega, Camarillo, CA. 93012.

14.     The servicer of the Loan changed a number of times until on February 1, 2013, Defendant GREEN TREE took over the servicing rights of the loan from GMAC Mortgage.

15.     On February 19, 2013, GREEN TREE provided Plaintiff with notification that the servicing rights have been transferred from GMAC to GREEN TREE.

16.     In March of 2013, Plaintiff requested he be reviewed for a loan modification with GREEN TREE.

17.     Plaintiff was provided with a loan modification packet from GREEN TREE to fill out and provide in order to commence the loan modification review process.

18.     In or around April 2013, Plaintiff submitted a full and complete modification packet to GREEN TREE (see Exhibit "A"), which officially commenced loss mitigation options and triggered the newly enacted Senate Bill 900.

19.     Plaintiff, through his attorneys, continued to follow up on his loan modification review on a weekly basis in order to ensure all documents have been provided and GREEN TREE had everything they needed to fully review Plaintiff in good faith.

20.     On or about October 24, 2013, Defendant NORTHWEST TRUSTEE SERVICES, INC. and GREE TREE SERVICING, INC. caused a "Notice of Default and Election to Sell Under Deed of Trust" to be recorded in the Ventura County Recorder's Office in direct violation of California Civil Code Section 2924.11. (See Exhibit "B").

21.     On October 24, 2013, GREEN TREE SERVICING, LLC. sent a notification to Plaintiff advising him that "Green Tree Servicing LLC had initiated foreclosure proceedings...by causing a Notice of Default, the first step in the foreclosure process, to be recorded in the Recorder's Office of the county where that property is located." (See Exhibit "C").

4

**VERIFIED COMPLAINT**

22.     GREEN TREE SERVICING, LLC. engaged in dual tracking by initiating foreclosure proceedings against Plaintiff while being fully cognizant of the fact Plaintiff was in an open and active loss mitigation loan modification review.

23. California Civil Code section 2924.11 is an addition to the civil code from a newly enacted law entitled "The Homeowner's Bill of Rights" or Senate Bill 900. Senate Bill 900 (hereinafter "SB 900") was crafted by the California Senate with a specific intent.

24.     California Civil Code Section 2924.11 (a) strictly prohibits Defendants' actions of dual tracking and states in pertinent part:

> "If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative."

25. Pursuant to California Civil Code 2920.5(b), which states, "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option," the Plaintiff has been in the process of a loan modification application to seek relief and assistance on bringing him current on his mortgage and gaining an affordable monthly payment on his mortgage, in lieu of and as an alternative to foreclosure.

26. Senate Bill 900, Sections 1(b) and 1(c) states,

> "(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

5

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options."

27.     Furthermore, California Civil Code section 2924(a)(6) makes it clear and evident that the legislature's intent was to make sure that:

"no entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." CCP 2924(a)(6)

28.     GREEN TREE had active and constructive knowledge of the California Civil Code as it related to foreclosure and related materials, and specifically CCP 2924 which specifically prohibits dual tracking, the exact unlawful business practices GREE TREE was engaging in.

## FIRST CAUSE OF ACTION

### (WRONGFUL FORECLOSURE against All Defendants)

29.     The Plaintiff incorporates herein by reference the allegation made in paragraphs 1 through 28 inclusive, as though fully set forth herein.

30.     Plaintiff is informed and believes and thereon alleges that Defendants had active and constructive knowledge that there was an ongoing alternative to foreclosure by way of a loan modification. Pursuant to Senate Bill 900, Section 1(b), which states in pertinent part: "It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options."

31.     Plaintiff, through his attorneys adequately notified the Defendants, who

6

VERIFIED COMPLAINT

acknowledged the alternative process to foreclosure by the receipt and initial review of the Plaintiff's full and complete loan modification application; however, despite the knowledge of the pending loan modification application, Defendants proceeded to initiate foreclosure proceedings on Plaintiff's HOME and caused a Notice of Default to be recorded in direct violation of the Civil Code.  Moreover, Defendants are readily familiar with the California Civil Code and the newly enacted law Senate Bill 900, and have willfully violated the law.

32.     Plaintiff further alleges that the Defendants knew that Plaintiff was in the process of and had submitted a full and complete loan modification application as well as all supporting and supplemental documentation for review, as an alternative to foreclosure.

33.     Pursuant to California Civil Code 2920.5(b), which states "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option," the Plaintiff is in the process of a loan modification as alternative to foreclosure.

34.     Based on information and belief, the Plaintiff thereon alleges that the Defendants had active, actual and constructive knowledge of the California Civil Code as it relates to foreclosure related materials, and specifically, CCP 2923.7(a) which states, "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact."  Here, though Defendants did give the Plaintiff a single point of contact, the Defendants made no effort to comply with their obligations and refrain from foreclosing on Plaintiff's Home pending the loss mitigation loan modification review process.

35.     The Defendants have an obligation to completely review the Plaintiff for all foreclosure prevention alternatives, including the loan modification application option that the Plaintiff has and is pursuing.

36.     Through the initiation of the foreclosure proceedings and the recordation of the Notice of Default, Defendants have breached their obligation to the Plaintiff to review, in good faith, all foreclosure alternatives as required by the California Civil Code 2923, 2924, et seq

7

**VERIFIED COMPLAINT**

37.     The Defendants should not be able to further their agenda in profiting at all costs, and though in the past, Courts have found that violations of the Civil Code relating to foreclosures are "harmless errors," as even the smallest violation of the civil code renders devastating results, as in this case, where the Plaintiff stands to become homeless due to the Defendants actions and violations.

38.     As a result of the above-described breaches and wrongful conduct by Defendants, Plaintiff has suffered general and special damages in an amount according to proof at trial, but not less than $5,000,000.

**SECOND CAUSE OF ACTION**

**(VIOLATION OF CIVIL CODE § 2429.11 against All Defendants)**

39.     The Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 38, inclusive, as though fully set forth herein.

40.     Plaintiff is informed and believes and thereon alleges that Defendants had active and constructive knowledge that there was an ongoing alternative to foreclosure by way of a loan modification application, and multiple communications through counsel prior to submission.

41.     California Civil Code Section 2924.11 states:

> "(d) A mortgagee, beneficiary, or authorized agent shall record a rescission to a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative."

42.     The Defendants had knowledge and notice that the Plaintiff was seeking a permanent foreclosure prevention alternative by way of a loan modification application as the Defendants were noticed by the Plaintiff's attorney.

43.     California Civil Code section 2924.11 is an addition to civil code from a newly enacted law entitled "The Homeowner's Bill of Rights" or Senate Bill 900. Senate Bill 900 ("SB900") was crafted by the California Senate with a specific intent.

44.     Senate Bill 900, Sections 1(b) and 1(c) states,

8

**VERIFIED COMPLAINT**

"(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the results of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options."

45.     It is clear and evident that the legislature's intent was to afford options and opportunities to all homeowners, including "a first lien loan modification or another available loss mitigation option" CCP 2920.5(b). Pursuant to this section, a loan modification that would prevent a foreclosure would satisfy the definition as stated in CCP 2920.5(b). The Plaintiff was and is in the active process of review for an alternative to foreclosure by way of a loan modification application.

46.     As a direct and proximate result of the violation of CCP 2924.11 and Senate Bill 900 by the Defendants as set forth above, the Plaintiff has suffered, and continue to suffer, general and special damages in an amount to be determined at trial, but not less than $5,000,000.

## THIRD CAUSE OF ACTION
### UNFAIR BUSINESS PRACTICES IN VIOLATION OF CA BUSINESS & PROFESSIONS CODE §17200
### (AGAINST ALL DEFENDANTS)

47.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

48.     *California Business & Professions Code* § 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of § 17200.

49.     Specifically, as fully set forth above, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties and related matters by, among other things,

*a.*     Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

*b.*     Executing and recording false and misleading documents;

*c.*     Executing and recording documents without the legal authority to do so;

*d.*     Engaging in dual tracking by initiating foreclosure proceedings on Plaintiff's HOME while at the same time reviewing Plaintiff for a loss mitigation loan modification;

50.     Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of *California Business & Professions Code* §17200, et seq.

51.     Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

52.     The foregoing acts and practices have caused substantial harm to California consumers, including the Plaintiff.

53.     The harm to Plaintiff and to members of the general public outweighs the utility of Defendants' policy and practices. Consequently, their policy and practices constitute an

10

VERIFIED COMPLAINT

1   unlawful business act or practice within the meaning of *California Business and Professions*

2   *Code* §17200.  Further, the foregoing conduct threatens an incipient violation of a consumer

3   law, or violates the policy or spirit of such law or otherwise significantly threatens or harms

4   competition.

5        54.    As a direct and proximate result of the unfair business practices of the above

6   specified Defendants, and each of them, as herein alleged, Plaintiff has incurred damages in that

7   Plaintiff's Property is now subject to foreclosure at the hands of the above specified Defendants,

8   and each of them, all by reason of which Plaintiff has been damaged in at least the sum of the

9   jurisdictional amount of this Court, plus interest, attorney's fees and costs, and additional

    amounts, according to proof at the time of trial.

10       55.    As a further direct and proximate result of the unfair business practices of the

11  above specified Defendants, and each of them, Plaintiff is entitled to an order prohibiting said

12  Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any

13  interest whatsoever in the Property.

14

15

16                              **PRAYER FOR RELIEF**

17       Wherefore, the Plaintiff prays for judgment against the Defendants and each of them,

18  jointly and severally, as follows:

19       1.    For a declaration of the rights and duties of the parties, specifically that the

20  scheduled foreclosure of the Property is wrongful.

21       2.    For a declaration that Plaintiff is the true and rightful owners of the Property.

22       3.    For issuance of an Order canceling the Notice of Default and any known or

23  unknown instruments thereof.

24       4.    To vacate any TDUS that may result from a trustee sale.

25       5.    To vacate and set aside any foreclosure sale.

26       6.    To enjoin the conducting of any Trustee's Sale.

27       7.    For compensatory, special and general damages in an amount according to proof

                                    11

1   at trial, but not less than $5,000,000, against all Defendants.

2       8.      For punitive damages in an amount to be determined by the Court against all

3   Defendants.

4       9.      Pursuant to Business and Professions Code section 17203, that all Defendants,

5   their successors, agents, representatives, employees, and all persons who act in concert with

6   them be permanently enjoined from committing any acts of unfair competition in violation of

7   section 17200, including, but not limited to, the violations alleged herein.

8       10.     For civil penalties pursuant to statute, restitution, injunctive relief and reasonable

9   attorney's fees according to proof.

10      11.     For reasonable attorney's fees and costs.

11      12.     For reasonable costs of suit and such other and further relief as the Court deems

12  proper.

13

14  DATED:   December 2, 2013              RODRIGUEZ LAW GROUP, INC.

15                                          By: _____

16                                          Patricia Rodriguez, Esq.
                                            Attorneys for Plaintiff
17                                          PETER ZEPPEIRO

18

19

20

21

22

23

24

25

26

27

                                    12

                            VERIFIED COMPLAINT

## VERIFICATION

State of California            )
                               )
County of Los Angeles          )

     I, PETER ZEPPEIRO, am the Plaintiff in this action. I have read the foregoing Complaint. I am informed and believe and on that ground allege that matters stated therein are true.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on December __02__, 2013, Ventura County, California.

Rodriguez Law Group, Inc.

_____
Peter Zeppeiro
Plaintiff

13

VERIFIED COMPLAINT

# EXHIBIT A

04/02/2013

From Peter Zeppeiro

6393 Calle Bodega

Camarillo, CA. 93012

PH# 805 857-0375

To whom it may concern, Loan Number 0414881870-3

In my lo modification packet I have enclosed the following :

Form 710

Form 4506T

Form 710 A

Paystubs

Dissolution judgment showing child support  see page 3 line 21.

IRS form 1065 showing closing of business

Lawsuit showing theft and diversion of money owed to Peter Zeppeiro

Thank you, Peter Zeppeiro

## UNIFORM BORROWER ASSISTANCE FORM

If you are experiencing a temporary or long-term hardship and need help, you must complete and submit this form along with other required documentation to be considered for available solutions. On this page, you must disclose information about (1) you and your intentions to either keep or transition out of your home; (2) the property's status; (3) real estate taxes; (4) homeowner's insurance premiums; (5) bankruptcy; (6) your credit counseling agency; and (7) other liens, if any, on your property.

On Page 2 you must disclose information about all of your income, expenses and assets. Page 2 also lists the required income documentation that you must submit in support of your request for assistance. Then on Page 3, you must complete the Hardship Affidavit in which you disclose the nature of your hardship. The Hardship Affidavit informs you of the required documentation that you must submit in support of your hardship claim.

NOTICE: In addition, when you sign and date this form, you will make important certifications, representations and agreements, including certifying that all of the information in this Borrower Assistance Form is accurate and truthful and any identified hardship has contributed to your submission of this request for mortgage relief.

REMINDER: The Borrower Response Package you need to return consists of: (1) this completed, signed and dated Borrower Assistance Form; (2) completed and signed IRS Form 4506T-EZ; (3) required income documentation, and (4) required hardship documentation.

Loan I.D. Number 0414681870-3 _____ (usually found on your monthly mortgage statement)

| I want to: | ☐ Keep the Property | ☐ Sell the Property |

The property is currently: ☑ My Primary Residence  ☐ A Second Home  ☐ An Investment Property

The property is currently: ☐ Owner Occupied  ☐ Renter occupied  ☐ Vacant

| BORROWER | CO-BORROWER |
|---|---|
| BORROWER'S NAME<br>Peter Zeppello | CO-BORROWER'S NAME |
| SOCIAL SECURITY NUMBER | DATE OF BIRTH<br>07/26/1961 | SOCIAL SECURITY NUMBER | DATE OF BIRTH |
| HOME PHONE NUMBER WITH AREA CODE | HOME PHONE NUMBER WITH AREA CODE |
| CELL OR WORK NUMBER WITH AREA CODE<br>805 857-0375 | CELL OR WORK NUMBER WITH AREA CODE |
| MAILING ADDRESS<br>6393 Calle Bodega | |
| PROPERTY ADDRESS (IF SAME AS MAILING ADDRESS, JUST WRITE SAME)<br>SAME | EMAIL ADDRESS |

Is the property listed for sale? ☐ Yes ☑ No
If yes, what was the listing date? _____
If property has been listed for sale, have you received an offer on the property? ☐ Yes ☐ No
Date of offer: _____ Amount of Offer: $_____
Agent's Name: _____
Agent's Phone Number: _____
For Sale by Owner? ☐ Yes ☐ No

Have you contacted a credit-counseling agency for help? ☐ Yes ☐ No
If yes, please complete the counselor contact information below:
Counselor's Name: _____
Agency's Name: _____
Counselor's Phone Number: _____
Counselor's Email Address: _____

Do you have condominium or homeowner association (HOA) fees? ☐ Yes ☑ No
Total monthly amount: $_____
Name and address that fees are paid to: _____

| Have you filed for bankruptcy? | ☐ Yes | ☑ No | Filing Date: _____ |
| If yes: | ☐ Chapter 7 | ☐ Chapter 13 | |
| Has your bankruptcy been discharged? ☐ Yes | ☐ No | Bankruptcy case number: _____ |

# UNIFORM BORROWER ASSISTANCE FORM

| Monthly Household Income | | Monthly Household Expenses/Debt | | Household Assets (associated with the property and/or borrower(s) | |
|---|---|---|---|---|---|
| Monthly Gross wages | $ 7222.8 | First Mortgage Payment | $ 1750 | Checking Account(s) | $ 1,000.00 |
| Overtime | $ 1000 | Second Mortgage Payment | $ 1000 | Checking Account(s) | $ 500.00 |
| Child Support / Alimony* | $ | Homeowner's insurance | $ 100 | Savings / Money Market | $ 200.00 |
| Non-taxable social security/SSDI | $ | Property Taxes | $ 300 | CDs | $ |
| Taxable SS benefits or other monthly income from annuities or retirement plans | $ | Credit Cards / Installment Loan(s) (total minimum payment per month) | $ 1000 | Stocks / Bonds | $ |
| Tips, commissions, bonus and self-employed income | $ | Alimony, child support payments | $ 1150 | Other Cash on Hand | $ 50.00 |
| Rents Received | $ | Car Lease Payments | $ | Other Real Estate (estimated value) | $ |
| Unemployment Income | $ | HOA/Condo Fees/Property Maintenance | $ 160 | Other _____ | $ |
| Food Stamps/Welfare | $ | Mortgage Payments on other properties | $ | | $ |
| Other _____ | $ 800 | Other _____ | $ 400 | | $ |
| Total (Gross Income) | $ 106,273.60 | Total Debt/Expenses | $ 5850.00 | Total Assets | $ 1750 |

*Notice: Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered for repaying this loan.

| Lien Holder's Name | Balance / Interest Rate | Loan Number |
|---|---|---|
| Homecomings Fin. Network | 280,000  5.5% void Deeds | 0414881870-3 |

### Required Income Documentation

| ☑ Do you earn a wage? | ☐ Are you self-employed? |
|---|---|
| For each borrower who is a salaried employee or hourly wage earner, include the most recent pay stub that reflects at least 30 days of year-to-date earnings for each borrower. | For each borrower who receives self-employed income, include a complete, signed individual federal income tax return and, as applicable, the business tax return AND either the most recent signed and dated quarterly or year-to-date profit/loss statement that reflects activity for the most recent three months; OR copies of bank statements for the business account for the last two months evidencing continuation of business activity |

☐ Do you have any additional sources of income? Provide for each borrower as applicable:
"Other Earned Income" such as bonuses, commissions, housing allowance, tips, or overtime:
  ☐ Reliable third-party documentation describing the amount and nature of the income (e.g., employment contract or printouts documenting tip income).
Social Security, disability or death benefits, pension, public assistance, or adoption assistance:
  ☐ Documentation showing the amount and frequency of the benefits, such as letters, exhibits, disability policy or benefits statement from the provider, and
  ☐ Documentation showing the receipt of payment, such as copies of the two most recent bank statements showing deposit amounts.
Rental income:
  ☐ Copy of the most recent filed federal tax return with all schedules, including Schedule E—Supplement Income and Loss. Rental income for qualifying purposes will be 75% of the gross rent reduced by the monthly debt service on the property, if applicable; or
  ☐ If rental income is not reported on Schedule E— Supplemental Income and Loss, provide a copy of the current lease agreement with either bank statements or cancelled rent checks demonstrating receipt of rent.
Investment income:
  ☐ Copies of the two most recent investment statements or bank statements supporting receipt of this income.
Alimony, child support, or separation maintenance payments as qualifying income:*
  ☐ Copy of divorce decree, separation agreement, or other written legal agreement filed with a court, or court decree that states the amount of the alimony, child support, or separation maintenance payments and the period of time over which the payments will be received, and
  ☐ Copies of your two most recent bank statements or other third-party documents showing receipt of payment.
*Notice: Alimony, child support, or separate maintenance income need not be revealed if you do not choose to have it considered for repaying this loan.

**UNIFORM BORROWER ASSISTANCE FORM**

| HARDSHIP AFFIDAVIT |
|---|
| (provide a written explanation with this request describing the specific nature of your hardship) |

I am requesting review of my current financial situation to determine whether I qualify for temporary or permanent mortgage relief options.

Date Hardship Began is: 2008

I believe that my situation is:
- ☐ Short-term (under 6 months)
- ☐ Medium-term (6 – 12 months)
- ☑ Long-term or Permanent Hardship (greater than 12 months)

I am having difficulty making my monthly payment because of reasons set forth below:
*(Please check all that apply and submit required documentation demonstrating your hardship)*

| If Your Hardship is: | Then the Required Hardship Documentation is: |
|---|---|
| ☐ Unemployment | ☐ No hardship documentation required |
| ☐ Underemployment | ☐ No hardship documentation required, as long as you have submitted the income documentation that supports the income described in the Required Income Documentation section above |
| ☐ Income reduction (e.g., elimination of overtime, reduction in regular working hours, or a reduction in base pay) | ☐ No hardship documentation required, as long as you have submitted the income documentation that supports the income described in the Required Income Documentation section above |
| ☐ Divorce or legal separation; Separation of Borrowers unrelated by marriage, civil union or similar domestic partnership under applicable law | ☐ Divorce decree signed by the court; OR<br>☐ Separation agreement signed by the court; OR<br>☐ Current credit report evidencing divorce, separation, or non-occupying borrower has a different address; OR<br>☐ Recorded quitclaim deed evidencing that the non-occupying Borrower or co-Borrower has relinquished all rights to the property |
| ☐ Death of a borrower or death of either the primary or secondary wage earner in the household | ☐ Death certificate; OR<br>☐ Obituary or newspaper article reporting the death |
| ☐ Long-term or permanent disability; Serious illness of a borrower/co-borrower or dependent family member | ☐ Doctor's certificate of illness or disability; OR<br>☐ Medical bills; OR<br>☐ Proof of monthly insurance benefits or government assistance (if applicable) |
| ☐ Disaster (natural or man-made) adversely impacting the property or Borrower's place of employment | ☐ Insurance claim; OR<br>☐ Federal Emergency Management Agency grant or Small Business Administration loan; OR<br>☐ Borrower or Employer property located in a federally declared disaster area |
| ☐ Distant employment transfer | ☐ No hardship documentation required |
| ☑ Business Failure | ☐ Tax return from the previous year (including all schedules) AND<br>☐ Proof of business failure supported by one of the following:<br>  • Bankruptcy filing for the business; or<br>  • Two months recent bank statements for the business account evidencing cessation of business activity; or<br>  • Most recent signed and dated quarterly or year-to-date profit and loss statement |

**UNIFORM BORROWER ASSISTANCE FORM**

**Borrower/Co-Borrower Acknowledgement and Agreement**

1. I certify that all of the information in this Borrower Assistance Form is truthful and the hardship(s) identified above has contributed to submission of this request for mortgage relief.
2. I understand and acknowledge that the Servicer, owner or guarantor of my mortgage, or their agent(s) may investigate the accuracy of my statements, may require me to provide additional supporting documentation, and that knowingly submitting false information may violate Federal and other applicable law.
3. I understand the Servicer will obtain a current credit report on all borrowers obligated on the Note.
4. I understand that if I have intentionally defaulted on my existing mortgage, engaged in fraud or misrepresented any fact(s) in connection with this request for mortgage relief or if I do not provide all required documentation, the Servicer may cancel any mortgage relief granted and may pursue foreclosure on my home and/or pursue any available legal remedies.
5. I certify that my property has not received a condemnation notice.
6. I certify that I am willing to provide all requested documents and to respond to all Servicer communications in a timely manner. I understand that time is of the essence.
7. I understand that the Servicer will use this information to evaluate my eligibility for available relief options and foreclosure alternatives, but the Servicer is not obligated to offer me assistance based solely on the representations in this document or other documentation submitted in connection with my request.
8. If I am eligible for a trial period plan, repayment plan, or forbearance plan, and I accept and agree to all terms of such plan, I also agree that the terms of this Acknowledgment and Agreement are incorporated into such plan by reference as if set forth in such plan in full. My first timely payment following my Servicer's determination and notification of my eligibility or prequalification for a trial period plan, repayment plan, or forbearance plan (when applicable) will serve as acceptance of the terms set forth in the notice sent to me that sets forth the terms and conditions of the trial period plan, repayment plan, or forbearance plan.
9. I agree that when the Servicer accepts and posts a payment during the term of any repayment plan, trial period plan, or forbearance plan it will be without prejudice to, and will not be deemed a waiver of, the acceleration of my loan or foreclosure action and related activities and shall not constitute a cure of my default under my loan unless such payments are sufficient to completely cure my entire default under my loan.
10. I agree that any prior waiver as to my payment of escrow items to the Servicer in connection with my loan has been revoked.
11. If I qualify for and enter into a repayment plan, forbearance plan, and trial period plan, I agree to the establishment of an escrow account and the payment of escrow items if an escrow account never existed on my loan.
12. I understand that the Servicer will collect and record personal information that I submit in this Borrower Response Package and during the evaluation process, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, and information about my account balances and activity. I understand and consent to the Servicer's disclosure of my personal information and the terms of any relief or foreclosure alternative that I receive to any investor, insurer, guarantor, or servicer that owns, insures, guarantees, or services my first lien or subordinate lien (if applicable) mortgage loan(s) or to any HUD-certified housing counselor.
13. If I am eligible for foreclosure prevention relief under the federal Making Home Affordable Program, I understand and consent to the disclosure of my personal information and the terms of any Making Home Affordable Agreement by the Servicer to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Homeowner Affordability and Stability Plan, and (c) companies that perform support services in conjunction with Making Home Affordable.
14. I consent to being contacted concerning this request for mortgage assistance at any cellular or mobile telephone number I have provided to the Lender. This includes text messages and telephone calls to my cellular or mobile telephone.

| _____ | _____ | _____ | _____ |
| Borrower Signature | Date | Co-Borrower Signature | Date |

# Form **4506-T**

(Rev. January 2008)

Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ Do not sign this form unless all applicable lines have been completed.
Read the instructions on page 2.

▶ Request may be rejected if the form is incomplete, illegible, or any required line was blank at the time of signature.

OMB No. 1545-1872

Tip: Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use Form 4506, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| Peter Zeppeiro | |
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |
| Alina P Zeppeiro | |

3  Current name, address (including apt., room, or suite no.), city, state, and ZIP code

6393 Calle Bodega   Camarillo   CA  93012

4  Previous address shown on the last return filed if different from line 3

5  If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.

## LPS Verification Bureau, Inc. 247 SW 8th St., Suite 147 Miami, FL 33130

**Caution:** *DO NOT SIGN this form if a third party requires you to complete Form 4506-T, and lines 6 and 9 are blank.*

6  Transcript requested. Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶

  a  **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . ☐

  b  **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days . ☐

  c  **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . . ☐

7  **Verification of Nonfiling,** which is proof from the IRS that you did not file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

8  **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2006, filed in 2007, will not be available from the IRS until 2008. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

9  Year or period requested. Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

|  /  /  |  /  /  |  /  /  |  /  /  |

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, either husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

|  | | Telephone number of taxpayer on line 1a or 2a |
|---|---|---|
| **Sign Here** | ▶ _____  Signature (see instructions)     Date  04/02/20~~ | 805 857 6393 |
| | Title (if line 1a above is a corporation, partnership, estate, or trust) | |
| | ▶ _____  Spouse's signature          Date  04/02/20~~ | |

For Privacy Act and Paperwork Reduction Act Notice, see page 2.  Cat. No. 37667N  Form **4506-T** (Rev. 1-2008)

## General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in, or the state your business was in, when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

If you are requesting more than one transcript or other product and the chart below shows two different RAIVS teams, send your request to the team based on the address of your most recent return.

**Note.** You can also call 1-800-829-1040 to request a transcript or get more information.

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501  978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362  770-455-2335 |
| Kentucky, Louisiana, Mississippi, Tennessee, Texas, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team Stop 6716 AUSC Austin, TX 73301  512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Iowa, Kansas, Minnesota, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Utah, Washington, Wisconsin, Wyoming | RAIVS Team Stop 37106 Fresno, CA 93888  559-456-5876 |
| Arkansas, Connecticut, Illinois, Indiana, Michigan, Missouri, New Jersey, Ohio, Pennsylvania, West Virginia | RAIVS Team Stop 8705-841 Kansas City, MO 64999  816-292-6102 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
|---|---|
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409  801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250  859-669-3592 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer. Documentation. For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require us to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: Learning about the law or the form, 10 min.; Preparing the form, 12 min.; and Copying, assembling, and sending the form to the IRS, 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

# Home Affordable Modification Program
## Government Monitoring Data Form

### Information for Government Monitoring Purposes
The following information is requested by the federal government in order to monitor compliance with federal statutes that prohibit discrimination in housing. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender or servicer may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, the lender or servicer is required to note the information on the basis of visual observation or surname if you have made this request for a loan modification in person.   If you do not wish to furnish the information, please check the box below.

| BORROWER | CO-BORROWER |
|---|---|
| ☐ I do not wish to furnish this information | ☐ I do not wish to furnish this information |
| *Ethnicity:* ☐ Hispanic or Latino<br>☑ Not Hispanic or Latino | *Ethnicity:* ☐ Hispanic or Latino<br>☐ Not Hispanic or Latino |
| *Race:* ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☑ White | *Race:* ☐ American Indian or Alaska Native<br>☐ Asian<br>☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander<br>☐ White |
| *Sex:* ☐ Female<br>☑ Male | *Sex:* ☐ Female<br>☐ Male |

| To be completed by Servicer | Name/Address of Interviewer's Employer |
|---|---|
| This request was taken by:<br>☐ Face-to-face interview<br>☐ Mail<br>☐ Telephone<br>☐ Internet | Servicer/Interviewer's Name (print or type) & ID Number<br><br>Servicer/Interviewer's Signature<br><br>Servicer/Interviewer's Phone Number(Include area code) | |
| Loan Number: 3577 11775 1 | Servicer/Interviewer's Fax Number(include area code) | Servicer/Interviewer's email address |

# EXHIBIT B

requested by title court

Recording requested by:

When recorded mail to:
NORTHWEST TRUSTEE SERVICES, INC.
1241 E. Dyer Road, Suite 250
Santa Ana, CA 92705
APN 169-0-203-245
File No. 7042.29574
Property: 6393 CALLE BODEGA, CAMARILLO, CA

20131024-00177050-0 1/4
Ventura County Clerk and Recorder
MARK A. LUNN
10/24/2013 08:00:00 AM
764959 $34.00 VA

Title Order No. 100257445
MIN No. 100062604148818703

## IMPORTANT NOTICE
## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

*ATTENTION RECORDER:* THE FOLLOWING REFERENCE TO AN ATTACHED SUMMARY IS APPLICABLE TO THE NOTICE PROVIDED TO THE TRUSTOR ONLY.

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION.** You may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice). This amount is $278,825.73 as of 10/22/2013, and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

File No: 7042.29574
NOTICE OF DEFAULT AND ELECTION TO SELL

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

        Green Tree Servicing LLC
        C/O Northwest Trustee Services, Inc.
        1241 E. Dyer Road, Suite 250, Santa Ana, CA 92705
        Telephone (714) 277-4868
        Pay-Off Request Line (866) 387-NWTS

      If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

      **NOTICE IS HEREBY GIVEN:** That the undersigned is either the original Trustee, the duly appointed substituted trustee or acting as agent for the trustee or beneficiary under a Deed of Trust dated 10/11/2002, executed by **PETER ZEPPEIRO, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,** as Trustor(s), to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR HOMECOMINGS FINANCIAL NETWORK, INC.,** as Beneficiary, recorded 10/24/2002, as Instrument No. **2002-0260124,** of Official Records in the Office of the Recorder of VENTURA County, California, describing land therein as more fully described in said Deed of Trust.

Said obligations including (1) NOTE(S) FOR THE ORIGINAL sum of **$300,700.00;** that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**The unpaid principal balance of $260,899.23 which became all due and payable on 11/01/2009, together with interest due thereon from 10/01/2009 pursuant to the terms as set forth in said Note and Deed of Trust, advances, assessments and attorney fees. Nothing in this notice shall be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms of the loan documents.**

A copy of CA Civil Code Section §2923.55 or §2923.5 declaration is attached hereto and incorporated herein by reference.

**File No: 7042.29574**
NOTICE OF DEFAULT AND ELECTION TO SELL

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated:  10/22/2013          Northwest Trustee Services, Inc., as Trustee

By:

Jerry Steinhaus, Authorized Signatory

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

If you have received a discharge of the debt referenced herein in a bankruptcy proceeding, this notice does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

## Declaration of Mortgage Servicer Pursuant to Civil Code § 2923.55(c)

Borrower(s):  Zeppelro, Peter
Property Address:  6393 CALLE BODEGA
CAMARILLO, CA  93012
T.S. No.:  7042.29574

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

☐ The mortgage servicer has contacted the borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

☒ Despite the exercise of due diligence pursuant to California Civil Code § 2923.55(f), the mortgage servicer has been unable to contact the borrower "to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

☐ No contact was required by the mortgage servicer because the individual(s) did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

☐ The requirements of Cal. Civil Code § 2923.55 do not apply because the loan is not secured by a first mortgage or first deed of trust that secures a loan, or that encumbers real property, described in Civil Code § 2924.15(a).

I certify that this declaration is accurate, complete and supported by competent and reliable evidence, which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 10/11/2013

Green Tree Servicing LLC, Mortgage Servicer

By:  Gretchen Waggener
Foreclosure Supervisor

# EXHIBIT C

# green tree

Green Tree Servicing LLC
PO Box 6172
Rapid City, SD 57709-6172

October 24, 2013

Peter Zeppeiro
739 E WALNUT ST
PASADENA, CA 91101

Re:  Green Tree Servicing LLC ("Green Tree")
     Account Number:       7042.29574
     Property Address:     6393 CALLE BODEGA
                           CAMARILLO CA 93012

Dear Borrowers:

Please be advised that due to the default on the terms and/or conditions of the above-referenced account, Green Tree Servicing LLC has initiated foreclosure proceedings on the referenced property by causing a Notice of Default, the first formal step in the foreclosure process, to be recorded in the Recorder's Office of the county where that property is located.

Even though the foreclosure process has started, you may still be evaluated for all of the foreclosure prevention alternatives Green Tree offers. You will need to submit an application form and documentation if you want to be evaluated for Green Tree's foreclosure prevention alternatives. You can receive a copy of this application form by submitting an on-line form found at www.GTservicing.com, calling 1-800-643-0202, or writing to:



                    Green Tree Servicing
              Attention: Loss Mitigation, T214
                   7360 S. Kyrene Road
                    Tempe, AZ 85283
                  Fax: (480) 383-0539

If you are considering or have a pending appeal of an earlier denial of a loan modification application, you may submit, within 30 days after the date of this letter, a new loan modification application instead of proceeding with your appeal.

Please contact us at 1-800-643-0202 if you have any additional questions.

Sincerely,

Green Tree
800-643-0202
Monday - Friday 7 AM to 8 PM, and Saturday 7 AM to 1 PM CST

This communication is from a debt collector. It is an attempt to collect a debt, and any information obtained will be used for that purpose.

California Post NOD Letter, 06/21/2013                                                    LTR-1708

Exhibit L

1  RODRIGUEZ LAW GROUP, INC.
   Patricia Rodriguez, Esq., SBN 270639
2  1961 Huntington Drive, Suite 201
   Pasadena, CA 91801
3  Telephone: (626) 888-5206
   Facsimile:  (626) 282-0522
4

5  Attorneys for Plaintiff
   PETER ZEPPEIRO
6

7              UNITED STATES DISTRICT COURT

8           CENTRAL DISTRICT OF CALIFORNIA

9  PETER ZEPPEIRO, an Individual;        )  Case No. 2:14-cv-01336-MMM-JC
                                         )
10                Plaintiff,             )  SECOND AMENDED COMPLAINT:
                                         )
11       v.                              )
                                         )  (1) VIOLATION OF CAL. CIV. CODE
12 GREEN TREE SERVICING, LLC;            )  §2924(a)(6);
   NORTHWEST TRUSTEE SERVICES, INC.      )
13 and DOES 1 to 10 inclusive            )  (2) VIOLATION OF BUSINESS &
                                         )  PROFESSIONS CODE § 17200
14                                       )
                                         )
15                Defendants.            )  REQUEST FOR JURY TRIAL
                                         )
16                                       )
                                         )
17                                       )
                                         )
18                                       )
                                         )
19 _____)

20

21

22

23

24

25

26

27

                                   1

                    SECOND AMENDED COMPLAINT

PETER ZEPPEIRO, an Individual, alleges as follows:

**PARTIES**

1.      Plaintiff PETER ZEPPEIRO ("Plaintiff") is a resident of Camarillo, Ventura County, California.  Plaintiff has his primary residence within the aforementioned county.

2.      Plaintiff is informed and believes, and thereon alleges that Defendant GREEN TREE SERVICING, LLC ("GREEN TREE") is a business entity, authorized to do business in California, with an entity address of 1400 Landmark Towers, 354 St. Peter St, Saint Paul, Minnesota.  Based upon information and belief, the Plaintiff alleges that GREEN TREE SERVICING, LLC. is the Servicer of the loan and is purporting itself out to be the entity with beneficial and ownership interest in Plaintiff's Loan.

3.      Plaintiff is informed and believes and upon such information and belief alleges that Defendant NORTHWEST TRUSTEE SERVICES, INC. ("NORTHWEST") is a corporation authorized to do business in the state of California.  Plaintiff is informed and believes that NORTHWEST is in the business of conducting non-judicial foreclosures in California and acted as the foreclosure trustee herein.

4.      The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiff's title or any cloud on Plaintiff's title thereto" are hereinafter sometimes referred to as the "unknown defendants" and are unknown to the Plaintiff.  These unknown defendants and each of them claim or appear to claim some right, title, estate, lien, or interest in the property described herein, adverse to Plaintiff's title.  Their claims, and each of them, constitute a cloud on Plaintiff's title to the property.

5.      Defendants sued herein as DOES 1 through 10 are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants is indebted to the Plaintiff as hereinafter alleged.

6.      The use of the term "Defendants" in any of the allegations in this Complaint,

2

SECOND AMENDED COMPLAINT

unless specifically otherwise set forth, is intended to include and charge both jointly and severally, not only named Defendants, but all Defendants designated as well.

7.     Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants were agents, employees, servants, alter egos, superiors, successors in interest, and/or the joint venturers of their co-defendants and in doing the things alleged herein, were acting within the course and scope of such agency, employment and/or joint venture and, consequently, each Defendant named herein are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

8.     Defendants, and each of them, knowingly and willfully engaged in a common course of conduct to accomplish the wrongs complained of herein.  In taking action, as alleged herein, to substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

9.     The purpose and effect of the common enterprise complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent activities. Defendants accomplished their common enterprise by engaging in unlawful dual tracking by initiating foreclosure proceedings on Plaintiff's HOME while at the same time reviewing Plaintiff for a loss mitigation loan modification.  Each Defendant was a direct, necessary and substantial participant in the common enterprise complained of herein, and was aware of its overall contribution to and furtherance thereof.

10.     Defendant's wrongful acts include, inter alia, initiation of the unlawful foreclosure Plaintiff's Property by Defendants, despite Plaintiff's open and active loss mitigation efforts.

### JURISDICTION

11.     At all times relevant to this action, PETER ZEPPEIRO has owned the property known as 6393 Calle Bodega, Camarillo, CA. 93012 ("Home" or "Property").

3

12.   The transactions and events that are the subject matter of this Complaint all occurred within the County of Ventura, State of California.

**GENERAL ALLEGATIONS**

13.   On or about October 15, 2002, Plaintiff entered into a loan transaction with Homecomings Financial Network, Inc. to finance the residential property that is commonly known as 6393 Calle Bodega, Camarillo, CA. 93012.

14.   The servicer of the Loan changed a number of times until on February 1, 2013, Defendant GREEN TREE took over the servicing rights of the loan from GMAC Mortgage.

15.   On February 19, 2013, GREEN TREE provided Plaintiff with notification that the servicing rights have been transferred from GMAC to GREEN TREE.

16.   Plaintiff is informed and believes and based thereon alleges that GREEN TREE was purporting itself out to be the entity with beneficial and ownership interest in Plaintiff's Loan.

17.   In March of 2013, Plaintiff requested he be reviewed for a loan modification with GREEN TREE.

18.   Plaintiff was provided with a loan modification packet from GREEN TREE to fill out and provide in order to commence the loan modification review process.

19.   In or around April 2013, Plaintiff submitted a full and complete modification packet to GREEN TREE, which officially commenced loss mitigation options and triggered the newly enacted Senate Bill 900.

20.   Plaintiff, through his attorneys, continued to follow up on his loan modification review on a weekly basis in order to ensure all documents have been provided and GREEN TREE had everything they needed to fully review Plaintiff in good faith.

21.   On or about October 24, 2013, Defendant NORTHWEST TRUSTEE SERVICES, INC. and GREE TREE SERVICING, INC. caused a "Notice of Default and Election to Sell Under Deed of Trust" to be recorded in the Ventura County Recorder's Office in direct violation of California Civil Code Section 2924.11.

4

22.     On October 24, 2013, GREEN TREE SERVICING, LLC. sent a notification to Plaintiff advising him that "Green Tree Servicing LLC had initiated foreclosure proceedings...by causing a Notice of Default, the first step in the foreclosure process, to be recorded in the Recorder's Office of the county where that property is located."

23.     GREEN TREE SERVICING, LLC. engaged in dual tracking by initiating foreclosure proceedings against Plaintiff while being fully cognizant of the fact Plaintiff was in an open and active loss mitigation loan modification review.

24. California Civil Code section 2924.11 is an addition to the civil code from a newly enacted law entitled "The Homeowner's Bill of Rights" or Senate Bill 900. Senate Bill 900 (hereinafter "SB 900") was crafted by the California Senate with a specific intent.

25.     California Civil Code Section 2924.11 (a) strictly prohibits Defendants' actions of dual tracking and states in pertinent part:

> "If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative."

26. Pursuant to California Civil Code 2920.5(b), which states, "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option," the Plaintiff has been in the process of a loan modification application to seek relief and assistance on bringing him current on his mortgage and gaining an affordable monthly payment on his mortgage, in lieu of and as an alternative to foreclosure.

27. Senate Bill 900, Sections 1(b) and 1(c) states,

"(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful

5

opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options."

28.     Furthermore, California Civil Code section 2924(a)(6) makes it clear and evident that the legislature's intent was to make sure that:

> "no entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest." CCP 2924(a)(6)

29.     GREEN TREE had active and constructive knowledge of the California Civil Code as it related to foreclosure and related materials, and specifically CCP 2924 which specifically prohibits dual tracking, the exact unlawful business practices GREE TREE was engaging in.

## FIRST CAUSE OF ACTION: OF CIVIL CODE OF PROCEDURE § 2924(a)(6)
### (AGAINST ALL DEFENDANTS)

30.     The Plaintiff incorporates herein by reference the allegation made in paragraphs 1 through 28 inclusive, as though fully set forth herein.

31.     Since the founding of this nation, each county in the United States has maintained records of who owns the land within that county.

32.     Most states track changes in ownership of land, including mortgages and deeds of trust, by maintaining records indexed through the names of grantors and grantees.

33.     These grantor-grantee indexes allow individuals and businesses contemplating the purchase or financing of land to investigate-or hire a title insurer to investigate-whether a seller

6

SECOND AMENDED COMPLAINT

1  or mortgagor actually owns the land being offered for sale or mortgage.

2      34.    Communities traditionally have elected their county recorders or registers of deeds;

3  these elections provide an important democratic check and balance in the preservation of

4  property rights.

5      35.    A public, enduring, authoritative, and transparent record of all land ownership

6  provides a vital information infrastructure that has proven indispensable in facilitating not only

7  mortgage finance, but virtually all forms of commerce.

8      36.    County real property records are the oldest and most stable metric tracking the

9  "American dream" of family homeownership.

10     37.    California Civil Code section 2924(a)(6) states "no entity shall record or cause a

11 notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder

12 of the beneficial interest under the mortgage or deed of trust, the original trustee or the

13 substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial

14 interest."

15     38.    It further states: No agent of the holder of the beneficial interest under the

16 mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may

17 record a notice of default or otherwise commence the foreclosure process except when acting

18 within the scope of authority designated by the holder of the beneficial interest."

19     39.    California Civil Code 2924(a)(6) states that for an entity to properly record a

20 notice of default, that entity must be entitled to enforce both the Note and the Deed of Trust.

21     40.    To be the "holder of the beneficial interest" the note and the Deed of Trust must

22 remain together.

23     41.    Mortgage bankers (especially those using MERS) wrote millions of mortgage

24 loans that did not specify the actual mortgagee.

25     42.    The courts have held as can be noted in Allen v. Allen, 51 N.W. 473, 474 (Minn.

26 1892) that "legal title to real property cannot be established by parol," to convey a mortgage that

27 does not include a foreclosure right is to convey nothing at all.

7

43.     Moreover, allowing the creation of a mortgage separate from the note will expose mortgagors to a constant threat of double liability because the holder of the promissory note and a different owner of the mortgage may both show up at different times demanding payment.

44.     Also California Senate Bill 900 declares "the purpose of the [bill] that as part of non-judicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure."

45.     The express intent of California Senate Bill 900 is to prevent "the recordation of the notice of sale or conducting of the trustee sale until the borrower has been provided a written determination regarding the borrower's eligibility for a foreclosure prevention alternative.

46.     If the modification is denied then the servicer must send the borrower a notice identifying the reasons for the denial.

47.     Plaintiff was never formally denied nor was Plaintiff provided an appeal period.

48.     Plaintiff was never provided with a meaningful opportunity to obtain available loss mitigation options due to the bad faith tactics by the Defendants.

49.     The foreclosing entity NORTHWEST, was not acting on behalf of the original beneficiary nor is it the original substituted foreclosure trustee.

50.     Overall, Plaintiff has sought the assistance of GREEN TREE to resolve his default and obtain a payment that he could actually afford.

51.     GREEN TREE purported itself out to be the entity with beneficial and ownership interest in Plaintiff's Deed and Note, and the entity from which Plaintiff can attain good faith loss mitigation alternatives.

52.     However, GREEN TREE refused to offer any financial relief to the Plaintiff by a good faith modification of the loan or any other default resolution.

53.     GREEN TREE failed to adhere to its obligation at reviewing Plaintiff, under the auspices of the civil code and after agreeing to the review, in good faith and in compliance with all statutory obligations.

8

54.     Plaintiff alleges that such refusal by Defendants to offer any default resolution was not only done in bad faith and denial of contractual benefits, but also in violation of California Public Policy and Law (California Foreclosure Prevention Act, California Senate Bill 900 and California Civil Code Section 2924).

55.     Plaintiff alleges that these securities were duly registered with the Securities and Exchange Commission ("SEC") on a registration statement.

56.     Plaintiff further believes and upon such belief alleges that the Note in this matter was not duly endorsed, transferred and delivered to the Trust prior to the Closing Date of the Trust, as set forth in the Pooling and Servicing Agreement.

57.     Plaintiff is informed and believes and thereon alleges that Defendants had active and constructive knowledge that there was an ongoing alternative to foreclosure by way of a loan modification.  Pursuant to Senate Bill 900, Section 1(b), which states in pertinent part: *"It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options."*

58.     Plaintiff, through his attorneys adequately notified the Defendants, who acknowledged the alternative process to foreclosure by the receipt and initial review of the Plaintiff's full and complete loan modification application; however, despite the knowledge of the pending loan modification application, Defendants proceeded to initiate foreclosure proceedings on Plaintiff's HOME and caused a Notice of Default to be recorded in direct violation of the Civil Code.  Moreover, Defendants are readily familiar with the California Civil Code and the newly enacted law Senate Bill 900, and have willfully violated the law.

59.     Plaintiff further alleges that the Defendants knew that Plaintiff was in the process of and had submitted a full and complete loan modification application as well as all supporting and supplemental documentation for review, as an alternative to foreclosure.

9

60.    Pursuant to California Civil Code 2920.5(b), which states "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option," the Plaintiff is in the process of a loan modification as alternative to foreclosure.

61.    Based on information and belief, the Plaintiff thereon alleges that the Defendants had active, actual and constructive knowledge of the California Civil Code as it relates to foreclosure related materials, and specifically, CCP 2923.7(a) which states, "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Here, Plaintiff alleges a single point of contact was never provided to him as the Defendants made no effort to comply with their obligations regarding a good faith loan modification review process.  Plaintiff further alleges that even after requesting that a single point of contact be provided, Defendants failed to provide one, in direct violation of CCP 2923.7.

62.    The Defendants have an obligation to completely review the Plaintiff in good faith for all foreclosure prevention alternatives, including the loan modification application option that the Plaintiff was and is pursuing.

63.    Through the initiation of the foreclosure proceedings during the active modification process, their bad faith tactics during the review process and the recordation of the Notice of Default, Defendants have breached their obligation to the Plaintiff under Civil Code 2924(a)(6).

64.    As a proximate result of Defendants' actions, Plaintiff has suffered in the form of ruination of his credit, ruination of any equity in the Home, emotional distress as a result of the constant threat of foreclosure as well as the inability to engage in viable good faith loss mitigation options.

65.    As a result of the above-described breaches and wrongful conduct by Defendants, Plaintiff has suffered general and special damages in an amount according to proof at trial, but not less than $5,000,000.

10

**SECOND CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES IN VIOLATION OF CA BUSINESS &**
**PROFESSIONS CODE §17200**
**(AGAINST ALL DEFENDANTS)**

66.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

67.     *California Business & Professions Code* § 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of § 17200.

68.     Specifically, as fully set forth above, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties and related matters by, among other things,

    *a.*     Executing and recording documents without the legal authority to do so;

    *b.*     Engaging in dual tracking by initiating foreclosure proceedings on Plaintiff's HOME while at the same time reviewing Plaintiff for a loss mitigation loan modification.

    *c.*     Engaging in bad faith tactics during the review process by failing to establish a qualified single point of contact upon Plaintiff's request pursuant to Civil Code §2923.7.

    *d.*     Engaging in bad faith tactics by refusing to provide Plaintiff a resolution to the loan modification review process either by denying or approving Plaintiff's Loan Modification Application.

    *e.*     By further refusing to send a written notice identifying with specificity the reasons for any denial in violation of *Civil Code § 2429.11* or refusing to sent a written acknowledgment of a resolution of the loss mitigation process.

    *f.*     Failing to comply with Civil Code §2924.17 and provide an accurate and truthful declaration attached to the Notice of Default supported by competent and reliable evidence even after one was requested by Plaintiff.

11

g. Failing to comply with Civil Code §2923.5 and contact Plaintiff in person or via telephone to assess the Plaintiff's financial situation and explore options for the Plaintiff to avoid foreclosure.

Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of *California Business & Professions Code* §17200, et seq.

69.     Plaintiff alleges that Defendants' misconduct, as alleged herein, gave Defendants an unfair competitive advantage over their competitors and Plaintiff. The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

70.     The foregoing acts and practices have caused substantial harm to California consumers, including the Plaintiff.

71.     Plaintiff, to this day, still has not received any correspondence regarding an update on his loan modification application.  Plaintiff does not know whether Defendants denied him a loan modification and if so, what the basis for that denial was.  Plaintiff has been left to ponder and guess as to the status of his loss mitigation loan modification review.

72.     Plaintiff has been proactive in seeking out foreclosure preventative measures in order to work with Defendants and avoid the foreclosure of his Home.  However, due to Defendants' bad faith tactics, Plaintiff has been left in the dark as to Defendant's' intentions.

73.     It is clear and evident that the legislature's intent was to afford options and opportunities to all homeowners, including "a first lien loan modification or another available loss mitigation option" CCP 2920.5(b).  Pursuant to this section, a loan modification that would prevent a foreclosure would satisfy the definition as stated in CCP 2920.5(b).  The Plaintiff was and is in the active process of review for an alternative to foreclosure by way of a loan modification application.

74.     Plaintiff further alleges upon information and belief that Defendants have not provided any information or documentation regarding the status of his loan modification

12

application. Defendants have neither approved Plaintiff for a loan modification nor denied Plaintiff for a loan modification.

75.     The harm to Plaintiff and to members of the general public outweighs the utility of Defendants' policy and practices. Consequently, their policy and practices constitute an unlawful business act or practice within the meaning of *California Business and Professions Code* §17200. Further, the foregoing conduct threatens an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

76.     As a direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, as herein alleged, Plaintiff has incurred damages in that Plaintiff has been unable to attain a good faith review for any loss mitigation options, including a loan modification. Furthermore, Plaintiff has suffered a diminution of his credit stemming from Defendants' unwillingness to work with Plaintiff in order to resolve any purported default. While the Property has not been sold in a foreclosure sale as of yet, the likelihood of a Trustee Sale conducted by Defendants is imminent so long as Plaintiff does not get the opportunity to seek foreclosure preventative alternatives through the assistance of Defendants.

77.     Plaintiff is not requesting he be provided with a free home, rent free. Plaintiff has simply requested Defendants work with him and provide a good faith modification review in order for Plaintiff to be afforded with the opportunity to remain in him Home and make timely, monthly payments based on modified terms.

78..     Plaintiff has complied with everything GREEN TREE has requested in regards to the loss mitigation review process. However, it is GREEN TREE's unwillingness to comply with its statutory obligations that has made the likelihood of a foreclosure imminent here.

79.     As a further direct and proximate result of the unfair business practices of the above specified Defendants, and each of them, Plaintiff is entitled to an order prohibiting said Defendants, and each of them, from selling or attempting to sell, or causing to be sold, any interest whatsoever in the Property.

13

SECOND AMENDED COMPLAINT

## PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.     For a declaration of the rights and duties of the parties, specifically that the scheduled foreclosure of the Property is wrongful.

2.     For a declaration that Plaintiff is the true and rightful owner of the Property.

3.     For issuance of an Order canceling the Notice of Default and any known or unknown instruments thereof.

4.     To vacate any TDUS that may result from a trustee sale.

5.     To vacate and set aside any foreclosure sale.

6.     To enjoin the conducting of any Trustee's Sale.

7.     For compensatory, special and general damages in an amount according to proof at trial, but not less than $5,000,000, against all Defendants.

8.     For punitive damages in an amount to be determined by the Court against all Defendants.

9.     Pursuant to Business and Professions Code section 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of section 17200, including, but not limited to, the violations alleged herein.

10.    For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

SECOND AMENDED COMPLAINT

11.    For reasonable attorney's fees and costs.

12.    For reasonable costs of suit and such other and further relief as the Court deems proper.


DATED:    October 30, 2014                    RODRIGUEZ LAW GROUP, INC.


                                               By: _____
                                               Patricia Rodriguez, Esq.
                                               Attorneys for Plaintiff
                                               PETER ZEPPEIRO

15

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California, I am over the age of 18 and not a party to the within action; my business address is 1961 Huntington Dr., Suite 201 Alhambra, CA. 91801. My Email address is prod@attorneyprod.com.

On October 30, 2014, I served the foregoing documents described as:

**SECOND AMENED COMPLAINT** on all interested parties in this action.

**David M. Liu**
**Severson & Werson;**
19100 Von Karman Avenue, Suite 700
Irvine, California 92612
Fax: (949) 442-7118
Email: dml@severson.com

**Charls E. Katz**
**Northwest Trustee Services, Inc.**
13555 SE 36th St., Suite 100
Bellevue, WA. 98006

(X) FEDERAL ONLY: I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the United States of America that the foregoing it true and correct.

Executed on, October 30, 2014 at Rodriguez Law Group, Inc. in Alhambra, California.

/s/   Sevag Simonian_____

Sevag Simonian

16

SECOND AMENDED COMPLAINT

Exhibit M

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PETER ZEPPEIRO,                              )   CASE NO. CV 14-01336 MMM (JCx)
                                             )
          Plaintiff,                         )
                                             )
          vs.                                )   JUDGMENT FOR DEFENDANTS
                                             )
GREEN TREE SERVICING, LLC;                   )
NORTHWEST TRUSTEE SERVICES,                  )
INC. and DOES 1 to 10 inclusive,             )
                                             )
          Defendants.                        )
                                             )

On April 14, 2015, the court granted defendant Green Tree Servicing, LLC's motion to dismiss the second amended complaint with prejudice.  Consequently,

IT IS ORDERED AND ADJUDGED

1.       That plaintiff Peter Zeppeiro take nothing by way of his complaint; and

4.       That the action be, and it hereby is, dismissed.

DATED: April 15, 2015

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE